**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

**SHANON S. RILEY,**

**Plaintiff,**

**v.** **No. __________________________**

**HEATHER JORDAN, in her individual and official capacities as the Director of the New Mexico Workers' Compensation Administration,**

**Defendant.**

**COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES UNDER 42 U.S.C. § 1983 FOR CIVIL RIGHTS VIOLATIONS**

Plaintiff Shanon S. Riley, by and through her counsel of record, Kennedy, Hernandez & Harrison, P.C., brings this Complaint against Defendant Heather Jordan, for injunctive relief and damages under 42 U.S.C. § 1983 for civil rights violations of due process under color of state law.

**JURISDICTION AND VENUE**

1. This Court has subject matter jurisdiction over this lawsuit under 28 U.S.C. § 1331. This case presents a civil action arising under the Constitution, laws, or treaties of the United States.

2. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because all or a substantial part of the events or omissions giving rise to these claims occurred in this district.

## PARTIES

3. Plaintiff was a resident of Bernalillo County, New Mexico at all times relevant to this action.

4. Plaintiff was a duly appointed Workers' Compensation Judge (WCJ) pursuant to New Mexico law, regulation, and procedure.

5. Upon information and belief, at all relevant times, Defendant Heather Jordan was the Director of the New Mexico Workers' Compensation Administration (WCA) and acting within the scope of her duties.

## FACTUAL ALLEGATIONS

6. On August 20, 2011, Plaintiff was appointed to an initial one-year term as a WCJ pursuant to NMSA 1978, Section 52-5-2(B).

7. Following review by the Director of the WCA, Plaintiff was appointed to subsequent five-year terms as established by Section 52-5-2(B).

8. Plaintiff was reappointed to five-year terms in August of 2012, August of 2017, and August of 2022.

9. As a WCJ, Plaintiff was required to conform to substantially all Canons of the New Mexico Code of Judicial Conduct. *See* § 52-5-2(C).

10. WCA policy and procedure requires all WCJs to account for a minimum of forty hours a week in the State of New Mexico payroll system (SHARE) by either working that time or entering leave. So long as these requisites are met, WCJs have considerable discretion in setting their schedules. While WCJs are required to log a minimum of forty hours per week, they are not awarded overtime nor are they awarded comp time for working longer hours. It is not uncommon for a WCJ to work in excess of forty hours per week.

11. As the head of her division (Adjudication), Plaintiff was tasked with many administrative responsibilities.

12. On November 4, 2024, Plaintiff took a vacation day for which she entered eight hours of leave. But in order to fulfill her duties that morning, Plaintiff performed WCA work while on leave.

13. On November 5, 2024 (Election Day), after returning from vacation, Plaintiff submitted a pre-approval request for two hours of administrative leave for the purpose of voting. That afternoon, Plaintiff left work to vote. She was driven home by a colleague to obtain her vehicle. She then drove to a polling location and discovered there was a line. As Plaintiff was feeling ill, she decided to forgo voting and returned home.

14. The following day, November 6, 2024, was a very busy day at the office. On her way home from work, Plaintiff realized that, among other matters, she needed to make corrections to her timesheet in SHARE. She intended to do so first thing the following morning.

15. However, on November 7, 2024, the Albuquerque WCA office was closed due to heavy snowfall the night before. In addition to other administrative duties, Plaintiff was responsible for informing Adjudication staff that the Albuquerque WCA office was closed, ensuring that time was entered in SHARE for Adjudication employees, changing time entries for the day to account for the office closure, and approving employee time for the pay period. Plaintiff had until noon on November 7 to submit her approval, otherwise Adjudication employees would not have received pay for that period.

16. As the result of the office closure, Plaintiff did not have access to her computer or email, making her tasks that morning extremely difficult. Ultimately, Plaintiff completed her payroll obligations, but given her technological difficulties, administrative responsibilities, and

time constraints, Plaintiff simply forgot to substitute or remove the two hours of administrative voting leave that she had previously entered.

17. At the time, Plaintiff had accrued over 200 hours of annual leave and over 240 hours of sick leave. Furthermore, Plaintiff entered eight hours of annual leave on November 4, 2024, despite having worked almost half of that time, and she worked the majority of the day on November 5, 2024.

18. Had Plaintiff remembered to amend the two hours of administrative leave on the morning of November 7, 2024, she could have substituted that time for annual leave or sick leave. Alternatively, Plaintiff could have removed the administrative voting leave from her timesheet altogether, as she had already fulfilled the time required by the terms of her employment.

19. On November 12, 2024, New Mexico Governor Michelle Lujan Grisham appointed Defendant to serve as the Director of the WCA.

20. The very next day, November 13, 2024, Plaintiff was fulfilling her duties as a WCJ when Defendant and another WCA employee entered Plaintiff's office and asked if she voted on Election Day. Plaintiff responded that she had left work and attempted to vote but ultimately did not do so.

21. To Plaintiff's surprise, Defendant immediately delivered Plaintiff a written notice, signed by Defendant, informing Plaintiff that "effective immediately, your employment as a Worker's [*sic*] Compensation Judge for the Workers [*sic*] Compensation Administration is terminated."

22. The letter stated that Plaintiff was "a Governor Exempt employee . . . required to follow the Governor's Code of Conduct."

23. The letter alleged that Plaintiff violated the Code of Judicial Conduct when she "entered two (2) hours of Voting leave for purposes of voting" on her timesheet but did not in fact vote.

24. Plaintiff asked Defendant whether there was anyone she could speak with to explain the situation. Defendant stated that, although Plaintiff could try, the decision had already been made.

25. On November 13 and 14, 2024, Plaintiff called the Office of the Governor of the State of New Mexico (Governor's Office) to request an opportunity to explain the events surrounding her failure to change her timesheet. On both occasions, Plaintiff's request was denied.

26. Under New Mexico law, the exclusive grounds for Plaintiff's dismissal as a WCJ prior to the expiration of her term are violations of the Code of Judicial Conduct. *See* § 52-5-2(C).

27. Prior to dismissal for a violation, a complaint must be submitted to the State Personnel Board. *Id.*

28. The procedural requirements for filing a complaint and conducting a hearing are provided for in the New Mexico Administrative Code. *See* 1.7.12.25 NMAC.

29. Upon receipt of the complaint, the Board's duly appointed hearing officer "shall serve a copy of the complaint on the [WCJ] by certified mail." 1.7.12.25(C) NMAC.

30. During a hearing, a WCJ "shall have the right and reasonable opportunity to defend against the charges by introduction of evidence, to be represented by counsel and to examine and cross-examine witnesses." 1.7.12.25(G)(4) NMAC.

31. Following a hearing, the State Personnel Board must consider the hearing officer's report and hearing record before making a finding "as to whether there was a violation of the code

of judicial conduct." 1.7.12.25(K) NMAC. The State Personnel Board then shares its findings with the WCA director. *Id.*

32. On November 20, 2024, Plaintiff filed a Notice of Appeal of Termination with the State Personnel Board regarding her dismissal from the WCA, explaining that she did not receive a copy of a complaint, nor was she aware of any record, evidence introduced, hearing officer's ruling, or findings from the State Personnel Board concerning her alleged violation of the Code of Judicial Conduct.

33. On November 25, 2024, Judge Haught of the State Personnel Board issued an Order of Dismissal based on Plaintiff's Notice of Appeal of Termination. The Order stated, "[t]his forum is not aware of a complaint to the Board, which was filed against the Appellant." As no complaint had been filed, the appeal was dismissed for lack of jurisdiction.

34. As of the date of this filing, Director Jordan has neither filed a complaint with the State Personnel Board nor reinstated Plaintiff to her previous position as a WCJ with the WCA.

35. The WCA has a history of terminating WCJs without following the procedures required by New Mexico law. For instance, in *Fuller v. Varela*, No. 1:03-cv-00311-WJ-RHS (D.N.M. 2003), the District of New Mexico considered a consolidated case brought by two WCJs who were terminated without reason and without a hearing. *See also Harmon v. Varela*, No. 1:03-cv-00370-WJ-ACT (D.N.M. 2003). The court granted preliminary injunctions reinstating both wrongfully terminated WCJs.

**COUNT I: CONSTITUTIONAL VIOLATIONS OF PLAINTIFF'S PROCEDURAL DUE PROCESS AGAINST DEFENDANT JORDAN IN HER INDIVIDUAL CAPACITY**

36. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

37. Plaintiff has a clearly established right and a legitimate claim of entitlement under New Mexico law to complete her five-year statutory term pursuant to Section 52-5-2(B).

38. New Mexico law conferred upon Plaintiff a property interest in her position that she expected could not be terminated or taken away except as provided in Section 52-5-2(C). *See also Fuller*, No. 1:03-cv-00311-WJ-RHS.

39. Plaintiff's property interest in her position is protected by the Due Process Clause under the Fourteenth Amendment of the United States Constitution.

40. Plaintiff reasonably expected that Defendant Jordan would abide by New Mexico's statutes, regulations, and rules governing the WCA.

41. Defendant Jordan was required to file a complaint with the State Personnel Board and allow the Board to conduct a hearing and make findings prior to terminating Plaintiff for alleged violations of the Code of Judicial Conduct. *See* § 52-5-2(C); 1.17.12.25 NMAC.

42. Defendant Jordan acted under color of state law, as her ability to dismiss Plaintiff was a power possessed by virtue of state law.

43. Defendant Jordan's dismissal of Plaintiff, under color of state law, without filing a complaint or providing the State Personnel Board an opportunity to conduct a hearing and make findings, deprived Plaintiff of her property interest in continued employment as a WCJ without due process of law.

44. Defendant Jordan undertook her course of action with deliberate indifference to Plaintiff's civil rights.

45. Defendant Jordan is liable for her acts and omissions described above pursuant to 42 U.S.C. § 1983.

46. Defendant's acts and omissions resulted in harm to Plaintiff, including job loss, loss of past and future wages, loss of past and future employment benefits, humiliation, emotional and

mental pain and suffering, stress, uncertainty, frustration, and concomitant mental, emotional, and financial damages.

WHEREFORE, Plaintiff seeks compensatory damages, punitive damages, attorneys' fees, and costs under 42 U.S.C. § 1983.

**COUNT II: CONSTITUTIONAL VIOLATIONS OF PLAINTIFF'S SUBSTANTIVE DUE PROCESS AGAINST DEFENDANT JORDAN IN HER INDIVIDUAL CAPACITY**

47. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

48. The substantive component of the Fourteenth Amendment's Due Process Clause protects against arbitrary deprivations of individual property rights. *See County of Sacramento v. Lewis*, 523 U.S. 833, 845–47 (1998); *Camuglia v. City of Albuquerque*, 448 F.3d 1214, 1222–23 (10th Cir. 2006).

49. On her second day as Director of the WCA, Defendant Jordan terminated Plaintiff's protected property interest in her continued employment as a WCJ merely because Plaintiff forgot to amend her timesheet.

50. Defendant Jordan alleged that Plaintiff's oversight compromised her judicial duties "to promote integrity" and "avoid impropriety and the appearance of impropriety."

51. The Code of Judicial Conduct defines "Impropriety" as "conduct that violates the law, court rules, . . . and conduct that reflects adversely on the judge's honesty, impartiality, temperament, or fitness to serve as a judge." Rule 21-003(K), NMRA.

52. The Code of Judicial Conduct defines the "Appearance of impropriety" as "conduct that would create in reasonable minds a perception that the judge violated the Code or engaged in other conduct that reflects adversely on the judge's honesty, impartiality, temperament, or fitness to serve as a judge." Rule 21-003(B), NMRA.

53. The Code of Judicial Conduct defines "Integrity" as "probity, fairness, uprightness, and soundness of character." Rule 21-003(M), NMRA.

54. Plaintiff's inadvertent oversight was a minor mistake. It did not compromise her judicial duties to "promote integrity" or "avoid impropriety and the appearance of impropriety."

55. Instead, Defendant Jordan used the Code of Judicial Conduct as pretext to terminate Plaintiff.

56. Defendant Jordan's arbitrary termination of Plaintiff's protected property interest in her continued employment was so extreme and outrageous that it shocks the conscience.

57. Defendant Jordan deprived Plaintiff of her Substantive Due Process protections guaranteed by the Fourteenth Amendment's Due Process Clause.

58. Defendant Jordan is liable for her acts and omissions described above pursuant to 42 U.S.C. § 1983.

59. Defendant's acts and omissions resulted in harm to Plaintiff, including job loss, loss of past and future wages, loss of past and future employment benefits, humiliation, emotional and mental pain and suffering, stress, uncertainty, frustration, and concomitant mental, emotional, and financial damages.

WHEREFORE, Plaintiff seeks compensatory damages, punitive damages, attorneys' fees, and costs under 42 U.S.C. § 1983.

**COUNT III: PRELIMINARY INJUNCTIVE RELIEF AGAINST DEFENDANT JORDAN IN HER OFFICIAL CAPACITY**

60. Plaintiff incorporates all prior paragraphs as though fully set forth herein.

61. A district court may order an injunction or other appropriate prospective relief to prevent the deprivation of constitutional rights, restore due process, and ensure the lawful protection of public officials' statutory interests.

62. Plaintiff has demonstrated a substantial likelihood of success on the merits given her entitlement to continued employment under state law and the factual evidence of her dismissal without the processes established by the New Mexico statutes, New Mexico administrative code, and federal law.

63. If an injunction is not issued, Plaintiff would suffer irreparable harm, including the permanent loss of her employment as a WCJ, the loss of associated benefits and income from employment, permanent damage to her professional reputation, and most importantly, the deprivation of her Due Process rights secured by the Fourteenth Amendment to the U.S. Constitution.

64. A remedy of damages alone would not compensate Plaintiff for the harm suffered, because such a remedy would not reinstate Plaintiff's employment, repair Plaintiff's damaged professional reputation, or address the violation of Plaintiff's due process rights.

65. The balance of equities favors Plaintiff because the aforementioned harm to Plaintiff significantly outweighs any potential harm to the WCA if the injunction is granted. Plaintiff suffers the grave loss of her employment and associated benefits, irreparable damage to her professional reputation, and deprivation of her constitutional rights, while the Defendant would face only minor consequences. Defendant would be forced to reinstate an experienced, qualified, and proficient WCJ and withdraw her severe sanction against Plaintiff for Plaintiff's reasonable (and minor) mistake in failing to amend her timesheet. Furthermore, Defendant suffered no harm from Plaintiff's entry of two hours of administrative voting leave since, excluding that leave, Plaintiff's actual work performed and entry of annual leave, on November 4, and November 5, 2024, exceeded the sixteen hours required under the terms of her employment.

66. An order compelling Defendant to reinstate Plaintiff in her former position as a WCJ with the WCA serves the public interest by upholding Plaintiff's statutory and constitutional rights, ensuring due process, and maintaining public confidence in the judicial system and New Mexico's administrative procedures for employee discipline. As Plaintiff has pending cases to adjudicate, an order of reinstatement would obviate the need for Plaintiff's successor or colleagues to shoulder the burden of Plaintiff's cases. This would improve the WCA's efficiency to the benefit of the public interest.

67. Pending resolution on the merits, Plaintiff seeks a preliminary injunction to temporarily reinstate Plaintiff to her position and to prevent ongoing harm caused by her unlawful dismissal. *See Meiners v. University of Kansas*, 359 F.3d 1222, 1232–33 (10th Cir. 2004) ("Reinstatement of employment is a form of prospective equitable relief that is within the doctrine of *Ex parte Young*.").

WHEREFORE, Plaintiff seeks preliminary injunctive relief directing Defendant to immediately reinstate Plaintiff to her former position as a Workers' Compensation Judge with the New Mexico Workers' Compensation Administration.

**COUNT IV: PERMANENT INJUNCTIVE RELIEF AGAINST DEFENDANT JORDAN IN HER OFFICIAL CAPACITY**

68. Plaintiff incorporates all prior paragraphs as though fully set forth herein.

69. The standard for a permanent injunction is essentially the same as the standard for a preliminary injunction, with the exception that the plaintiff must show actual success on the merits rather than a substantial likelihood of success. *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12 (1987); *Ute Indian Tribe of the Uintah & Ouray Reservation v. Lawrence*, 22 F.4th 892, 908 (10th Cir. 2022) ("The only measurable difference between the two is that a

permanent injunction requires showing actual success on the merits, whereas a preliminary injunction requires showing a substantial likelihood of success on the merits." (cleaned up)).

70. As demonstrated in Count III, Plaintiff has established the requisite showing for preliminary injunctive relief.

71. Accordingly, upon a showing of actual success on the merits, Plaintiff seeks a permanent injunction as part of final relief to restore Plaintiff to her position as a Workers' Compensation Judge and ensure compliance with constitutional due process requirements.

WHEREFORE, Plaintiff seeks permanent injunctive relief directing Defendant to immediately reinstate Plaintiff to her former position as a Workers' Compensation Judge with the New Mexico Workers' Compensation Administration.

Respectfully submitted,

KENNEDY, HERNANDEZ & HARRISON, P.C.

*/s/ Jeffrey D. Vescovi*
Jessica M. Hernandez
Paul J. Kennedy
Elizabeth A. Harrison
Jeffrey D. Vescovi
201 Twelfth Street Northwest
Albuquerque, New Mexico 87102
(505) 842-8662

*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

**SHANON S. RILEY,**

**Plaintiff,**

**v.** **No. ________________________**

**HEATHER JORDAN, in her individual and official capacities as the Director of the New Mexico Workers' Compensation Administration,**

**Defendant.**

**VERIFICATION**

STATE OF NEW MEXICO )
) ss.
COUNTY OF BERNALILLO )

I, SHANON S. RILEY, being first duly sworn upon oath, deposes and says:

I am the Plaintiff in the above-entitled cause. I have read, know, and understand the contents of the foregoing Complaint for Injunctive Relief and Damages Under 42 U.S.C. § 1983 for Civil Rights Violations, and the statements made therein are true and correct to the best of my knowledge.

Shanon S. Riley
SHANON RILEY

SUBSCRIBED AND SWORN TO before me this 14 day of January 2025, by Shanon S. Riley.

ANDREA VICTORIA GOODWIN
Notary Public
State of New Mexico
Comm. # 1123269
My Comm. Exp. Sep 19, 2026

Andrea Victoria Goodwin
Notary Public

My Commission Expires:

Sept 19, 2026