IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**SHANON S. RILEY,**

      **Plaintiff,**

v.                                             No. _____

**HEATHER JORDAN, in her individual
and official capacities as the Director
of the New Mexico Workers'
Compensation Administration,**

      **Defendant.**

## MOTION FOR PRELIMINARY INJUNCTION

Plaintiff Shanon S. Riley, by and through her counsel of record, Kennedy, Hernandez & Harrison, P.C., and pursuant to Federal Rule of Civil Procedure 65(a), hereby respectfully moves this Court for an order granting a preliminary injunction to reinstate Plaintiff to her position as a Workers' Compensation Judge pending resolution of this case on the merits.

## FACTUAL AND PROCEDURAL BACKGROUND

On August 20, 2011, Plaintiff was appointed to an initial one-year term as a Workers' Compensation Judge (WCJ) for the New Mexico Workers' Compensation Administration (WCA). After her first year, and following review by the Director of the WCA, Plaintiff was appointed to subsequent five-year terms as established by NMSA 1978, Section 52-5-2(B). Plaintiff was reappointed to a five-year term in August of 2012, August of 2017, and again in August of 2022. Under Section 52-5-2(C), a WCJ must comply with substantially all canons of the New Mexico Code of Judicial Conduct. "Violation of those canons shall be **exclusive** grounds for dismissal" prior to the expiration of the WCJ's term. *Id.* (emphasis added).

On Election Day, November 5, 2024, Plaintiff submitted a pre-approval request for two hours of administrative leave for the purpose of voting. Later that day, she was driven home by a colleague to obtain her vehicle, drove to a polling location, and found that there was a line. Because Plaintiff was feeling ill, she decided to forgo voting and returned home.

On her way home from work the following day, November 6, 2024, Plaintiff realized that, in addition to other matters, she needed to make corrections to her timesheet. Plaintiff intended to make these corrections the following morning on November 7, 2024. At the time, Plaintiff had over 200 hours of annual leave and over 240 hours of sick leave which she could have used to substitute the two hours of administrative voting leave. Alternatively, Plaintiff could have simply removed the two hours of administrative voting leave altogether, as she had already worked a significant number of hours that day.

Unfortunately, the WCA office was closed on November 7 due to inclement weather. As a result of the closure, Plaintiff's numerous administrative responsibilities, and lack of technological resources at home, Plaintiff simply forgot to edit her timesheet.

On November 12, 2024, Governor Michelle Lujan Grisham appointed Defendant Heather Jordan as the new Director of the WCA. The very next day, November 13, 2024, the Defendant and another WCA employee walked into Plaintiff's office and asked whether she voted on Election Day. Plaintiff responded that she had left work and attempted to vote but ultimately did not do so. Defendant then handed Plaintiff a letter—signed by the Defendant—immediately terminating Plaintiff's employment. The letter alleged that Plaintiff violated the Code of Judicial Conduct by entering two hours of voting leave into her timesheet and failing to vote. According to the letter, "[s]uch conduct is a violation of the code of judicial conduct, which requires you to promote integrity and to 'avoid impropriety and the appearance of impropriety.'" Plaintiff asked Defendant

if there was anyone she could speak to regarding her termination. Defendant explained that Plaintiff could try to contact someone, but the decision regarding Plaintiff's termination had already been made. On November 13 and 14, 2024, Plaintiff called the Office of the Governor of the State of New Mexico (Governor's Office), to request an opportunity to speak with someone and explain the events surrounding her timesheet error. On both occasions, Plaintiff's request was denied.

On November 20, 2024, Plaintiff filed an appeal of her termination with the New Mexico State Personnel Board (the "Board"). In her letter of appeal, Plaintiff noted that she was not provided a copy of the complaint filed with the Board, she was not given an opportunity to respond to whether her conduct justified dismissal, and she was not aware of "any record that was kept, any evidence that was introduced, any hearing officer's ruling," or any of the Board's findings.

This lack of procedure was contrary to the provisions of the New Mexico Administrative Code. For instance, upon receiving a complaint, the Board's duly appointed hearing officer "shall serve a copy of the complaint on the [Workers' Compensation Judge] by certified mail." 1.7.12.25(C) NMAC. During a hearing conducted by the Board, the WCJ "shall have the right and reasonable opportunity to defend against the charges by introduction of evidence, to be represented by counsel and to examine and cross-examine witnesses." 1.7.12.25(G)(4) NMAC. And after the hearing is conducted, the Board must consider the hearing officer's report and hearing record before making a finding "as to whether there was a violation of the code of judicial conduct." 1.7.12.25(K) NMAC. The Board then shares its findings with the WCA director. *Id.* Defendant failed to comply with any of these procedures. With no complaint to review, the Board had no choice but to dismiss the appeal for lack of jurisdiction.

**LEGAL ARGUMENT**

To obtain a preliminary injunction, the movant must demonstrate that "(1) it is substantially likely to succeed on the merits; (2) it will suffer irreparable injury if the injunction is denied; (3) its threatened injury outweighs the injury the opposing party will suffer under the injunction; and (4) the injunction would not be adverse to the public interest." *Beltronics USA, Inc. v. Midwest Inventory Distribution, LLC*, 562 F.3d 1067, 1070 (10th Cir. 2009). If, however, the movant seeks a disfavored preliminary injunction, the movant must make a "heightened showing of the four factors." *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1209 (10th Cir. 2009). Here, Plaintiff seeks a disfavored, mandatory preliminary injunction—"one which requires the nonmoving party to take affirmative action"—that is, the preliminary reinstatement of Plaintiff pending resolution of the case on the merits. *Little v. Jones*, 607 F.3d 1245, 1251 (10th Cir. 2010). Thus, Plaintiff must make a heightened showing for each factor.

**1. Substantial Likelihood of Success on the Merits**

    **a.**     **Plaintiff held a constitutionally protected property interest in her continued employment with the WCA.**

The Fourteenth Amendment prohibits state actors from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Thus, to prevail on a procedural due process claim, a plaintiff must first establish that the defendant deprived the plaintiff of a protected property interest. *Teigen v. Renfrow*, 511 F.3d 1072, 1078 (10th Cir. 2007). The property interest must arise from the plaintiff's "legitimate claim of entitlement" to the benefit, rather than an abstract desire or expectation. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). Generally, state law creates the protected property interest, and "federal constitutional law determines whether the interest rises to the level of a legitimate claim of entitlement protected by the Due Process Clause." *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 757 (2005).

4

The Supreme Court and Tenth Circuit have consistently held that a state employee obtains a protected property interest in continued employment where state law limits the grounds for termination to just cause. For example, in *Cleveland Bd. of Educ. v. Loudermill*, the Supreme Court concluded that state employees had a property interest in continued employment where Ohio law entitled state employees to retain their positions "during good behavior and efficient service" and permitted dismissal of these employees only when they committed "misfeasance, malfeasance, or nonfeasance in office[.]" 470 U.S. 532, 538–39 (1985); *see also Perry v. Sindermann*, 408 U.S. 593, 600 (1972) (finding professor had a protected property interest in continued employment where faculty handbook provided de facto tenure so long as professor's "teaching services are satisfactory and as long as he displays a cooperative attitude toward his co-workers"). Similarly, the Tenth Circuit held that state employees had a protected property interest in continued employment where the Colorado Constitution limited the state's ability to dismiss employees to instances of "failure to comply with standards of efficient service . . . willful misconduct . . . or final conviction of a felony[.]" *Tiegen*, 511 F.3d at 1079; *see also Hennigh v. City of Shawnee*, 155 F.3d 1249, 1253 (10th Cir. 1998) ("This court has held that if state statutes or regulations place substantive restrictions on a government actor's ability to make personnel decisions, then the employee has a protected property interest.").

Here too, state law *clearly* limited Plaintiff's dismissal to violations of the Code of Judicial Conduct. Under Section 52-5-2, "[v]iolation of those canons shall be *exclusive* grounds for dismissal prior to the expiration of the term." Even if an alleged violation occurred, the New Mexico Administrative Code entitled Plaintiff to elaborate hearing procedures, further narrowing the possible bases for termination and securing Plaintiff's right in her continued employment. The "constitutional purpose" of procedure "is to protect a substantive interest to which the individual

5

has a legitimate claim of entitlement." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *see also Teigen*, 511 F.3d at 1072 ("[D]etailed and extensive procedural requirements may be relevant as to whether a separate substantive property interest exists[.]"). Thus, Plaintiff had a protected property interest in continued employment with the WCA. By terminating Plaintiff, Defendant deprived her of her constitutionally protected legitimate claim of entitlement to continue working as a WCJ.

          **b.**    **Defendant terminated Plaintiff's property interest without affording Plaintiff notice and an opportunity to be heard.**

"An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Loudermill*, 470 U.S. at 542. While "procedural due process often requires confrontation and cross-examination of those whose word deprive a person of his [or her] livelihood[,]" *Willner v. Comm. on Character*, 373 U.S. 96, 103 (1963), "[t]he essential requirements of due process . . . are notice and an opportunity to respond[,]" *Loudermill*, 470 U.S. at 546. Thus, a "tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Id.*

Although Plaintiff received written notice of the charges against her, she did not receive an explanation of the WCA's evidence or an opportunity to present her side of the story. Defendant's termination letter set out the basic facts—that Plaintiff entered two hours of voting leave into her timesheet and failed to vote—and alleged that Plaintiff violated the Code of Judicial Conduct. But the letter completely failed to explain in any detail why Plaintiff's conduct failed to "promote integrity" or avoid the appearance of impropriety. Had Plaintiff been provided an opportunity to respond to the allegations, she could have explained why she chose not to vote and that her failure to correct her timesheet was a simple mistake—not a violation of the Code of Judicial Conduct.

Despite the elaborate administrative procedures laid out by the New Mexico Administrative Code for the termination of WCJs, not a single procedure was followed to terminate Plaintiff. Thus, in addition to terminating Plaintiff's protected property interest in her continued employment with the WCA, there is no question that Defendant clearly failed to provide Plaintiff with notice and an opportunity to respond.

**2. Irreparable Injury**

"A plaintiff suffers irreparable injury when the court would be unable to grant an effective monetary remedy after a full trial because such damages would be inadequate or difficult to ascertain." *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269 F.3d 1149, 1156 (10th Cir. 2001). "Most courts consider the infringement of a constitutional right enough and require no further showing of irreparable injury." *Free the Nipple-Fort Collins v. City of Fort Collins*, 916 F.3d 792, 805–06 (10th Cir. 2019) (finding that equal protection violation alone constituted irreparable harm); *see also Awad v. Ziriax*, 670 F.3d 1111, 1119 (10th Cir. 2012) (finding First Amendment violation alone constituted irreparable harm); 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2948.1 (3d ed.) ("When an alleged deprivation of a constitutional right is involved, such as the right to free speech or freedom of religion, most courts hold that no further showing of irreparable harm is necessary."). The Tenth Circuit has suggested that in the context of constitutional claims, the first and second preliminary-injunction factors are collapsed, and a Plaintiff who demonstrates a likelihood of success on the merits simultaneously demonstrates irreparable injury. *Free the Nipple-Fort Collins*, 916 F.3d at 792.

Here, as discussed above, Plaintiff has already demonstrated a substantial likelihood of success on her constitutional due process claim. That success alone is sufficient to show that she

faces irreparable injury. Assuming, however, that the Court disagrees, there are additional facts which demonstrate that Plaintiff faces irreparable harm. While damages could easily compensate Plaintiff for her lost wages and benefits, no ascertainable amount of damages can compensate Plaintiff for her lost reputation. *See Dominion Video Satellite*, 269 F.3d at 1156–57 (finding irreparable harm where denial of injunctive relief would have resulted in the plaintiff's loss of reputation, good will, and marketing potential); Wright et al., § 2948.1 ("Injury to reputation or goodwill is not easily measurable in monetary terms, and so often is viewed as irreparable."). If an injunction is not granted, Plaintiff will have to explain her termination to future employers, colleagues, and other members of the bar. This particular harm would be exacerbated by the small size of the New Mexico and Albuquerque legal communities, where reputation has a disproportionate impact on success and employment.[1]

### 3. Balancing the Injuries

Under the third factor, the plaintiff must demonstrate that the irreparable harm flowing from the alleged injury outweighs the harm caused to the defendant by the preliminary injunction. *Free the Nipple-Fort Collins*, 916 F.3d at 806. Given that the injunction sought is disfavored, Plaintiff must make an even stronger "showing that the balance of harms tips in [her] favor." *Id.* Of course, "[w]hen a constitutional right hangs in the balance," as it does here "'even a temporary loss' usually trumps any harm to the defendant." *Id.* (quoting Wright, et al., § 2948.2 & n. 10).

As demonstrated above, Defendant deprived Plaintiff of her constitutional right to procedural due process in violation of the Fourteenth Amendment. That fact alone should trump

---

[1] Additionally, when Plaintiff was terminated, she had several pending cases on her docket which await entry of Compensation Orders following trial. Some of these cases require immediate attention. If the injunction is not granted, Plaintiff will be unable to adjudicate these disputes or fulfill her duties as a WCJ.

any harm to Defendant here. Even assuming, however, that the loss of Plaintiff's constitutional rights alone is insufficient, there is little, if any, harm to the Defendant if the court orders an injunction reinstating Plaintiff. While Plaintiff faces the loss of her livelihood, reputation, caseload, wages, and benefits if an injunction is not granted, Defendant would merely be required to reinstate an otherwise excellent WCJ. Plaintiff has worked for the WCA since 2011—she has nearly fourteen years of experience. Her performance was evaluated at the end of every term, in 2012, 2017, and 2022, and each time, the WCA chose to retain her. Even Plaintiff's termination letter was silent on her performance as a WCJ.

It seems that Defendant's only reason for terminating Plaintiff was her failure to vote in accordance with her entry of two hours of voting leave. Under the circumstances of this case, this reasonable and trivial error does not amount to a violation of the Code of Judicial Conduct nor is it the type of poor performance or misconduct that could seriously injure the Defendant or the WCA if Plaintiff was reinstated, especially when weighed against Plaintiff's experience, tenure, and performance.

### 4. The Public Interest

Under the final factor, the party seeking a preliminary injunction must demonstrate that the injunction would not be adverse to the public interest. *Beltronics USA, Inc.*, 562 F.3d at 1070. Here, there is no question that Plaintiff meets this factor, because it is "always in the public interest to prevent the violation of a party's constitutional rights." *Free the Nipple-Fort Collins*, 916 F.3d at 807 (quoting *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998)); *Awad*, 670 F.3d at 1133. The injunction here also serves to maintain public confidence in the WCA and in the state's administrative disciplinary procedures. The injunction would also increase the efficiency of the WCA. Rather than re-assigning Plaintiff's cases to a new WCJ, who will need time to study

9

and resolve each matter, the injunction will allow Plaintiff to quickly resolve those cases she is already familiar with.

## CONCLUSION

For the reasons argued above, Plaintiff respectfully moves this Court for an order granting a preliminary injunction to reinstate Plaintiff to her position as a Workers' Compensation Judge pending resolution of this case on the merits.

Respectfully submitted,

KENNEDY, HERNANDEZ & HARRISON, P.C.

*/s/ Jeffrey D. Vescovi*
Jessica M. Hernandez
Paul J. Kennedy
Elizabeth A. Harrison
Jeffrey D. Vescovi
201 Twelfth Street Northwest
Albuquerque, New Mexico 87102
(505) 842-8662

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

SHANON S. RILEY,

          Plaintiff,

v.    No. _____

HEATHER JORDAN, in her individual
and official capacities as the Director
of the New Mexico Workers'
Compensation Administration,

          Defendant.

## VERIFICATION

| | |
|---|---|
| STATE OF NEW MEXICO | ) |
| | ) ss. |
| COUNTY OF BERNALILLO | ) |

    I, SHANON S. RILEY, being first duly sworn upon oath, deposes and says:

    I am the Plaintiff in the above-entitled cause. I have read, know, and understand the contents of the foregoing Motion for Preliminary Injunction, and the statements made therein are true and correct to the best of my knowledge.

_____
SHANON RILEY

    SUBSCRIBED AND SWORN TO before me this 14 day of January 2025, by Shanon S. Riley.

_____
Notary Public

ANDREA VICTORIA GOODWIN
Notary Public
State of New Mexico
Comm. # 1123269
My Comm. Exp. Sep 19, 2026

My Commission Expires:

Sept 19, 2026