IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

SHANNON S. RILEY,

      Plaintiff,

vs.    No. 1:25-cv-00044-KWR-KK

HEATHER JORDAN *in her individual
and official capacities as the
Director of the New Mexico Workers'
Compensation Administration*,

      Defendant.

## MEMORANDUM ORDER AND OPINION GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

THIS MATTER comes before the Court based on Plaintiff's Motion for Preliminary Injunction and the associated briefing (**doc. 2; doc. 8, doc. 10**). Having considered the parties' briefing and applicable law, finds that Plaintiff's Motion is **well taken** and is therefore **GRANTED**.

## BACKGROUND

Plaintiff served as a Workers' Compensation Judge (WCJ) for the New Mexico Worker's Compensation Administration (WCA) from her appointment on August 20, 2011, to her termination on November 13, 2024. **Doc. 2 at 1–2**. This action arises from the events leading to her termination, beginning on November 5, 2024. *Id.*

On Election Day, November 5, 2024, Plaintiff submitted a pre-approval request for two hours of administrative leave for the purpose of voting. *Id.* **at 2**. While she arrived at the polls, Plaintiff ultimately did not vote because there was a line and because she was sick. *Id.* Plaintiff was aware that she needed to make corrections to her timesheet and intended to make the corrections. the following morning on November 7, 2024. *Id.* Prior to the commencement of this action, Plaintiff had over 200 hours of annual leave and over 240 hours of sick leave, which she

1

could have substituted, or alleges that she alternatively could have removed the two hours of as she had already worked a significant number of hours that day. *Id.* The WCA office was closed on November 7 due to inclement weather, and Plaintiff did not have access to her laptop. *Id.* She alleges that as a result of these events, she "simply forgot to edit her timesheet." *Id.*

On November 12, 2024, Governor Michelle Lujan Grisham appointed Defendant Heather Jordan as the new Director of the WCA. *Id.* Defendant fired Plaintiff on November 13, 2024, alleging that she had committed time fraud and had thus violated the Code of Judicial Conduct by entering two hours of voting leave into her timesheet and failing to vote. According to the letter, "[s]uch conduct is a violation of the code of judicial conduct, which requires you to promote integrity and to 'avoid impropriety and the appearance of impropriety.'" *Id.*

Plaintiff filed suit on January 14, 2024, seeking injunctive relief and damages under 42 U.S.C. §1983 for civil rights violations, including being deprived of her property interest in her employment without due process of law. **Doc. 1**. At the time of the initial lawsuit, Defendant had not submitted a complaint about the events to the State Personnel board. **Doc. 7 at 2**. On February 4, 2025, the Workers' Compensation Administration subsequently submitted a complaint to the State Personnel Board, in accordance with Section 52-5-2(C) and New Mexico Administrative Code, 1.7.12.25. *Id.* On March 4, 2025, the Board granted Plaintiff's motion and filed an Order of Dismissal dismissing the WCA's complaint for lack of jurisdiction. **Doc. 14-1**.

Defendant offered Plaintiff a modified form of reinstatement on February 6, 2025. **Doc. 7-2**. The offer involved being reinstated to her former position as a Workers' Compensation Judge and placed on paid administrative leave pending the outcome of the State Personnel Board proceedings. *Id.* It also departed from Plaintiff's original employment in that it made her an at-will employee serving at the pleasure of the Governor, rather than subject to firing only for

violations of the judicial code of conduct. *Id.*; **doc. 10 at 2**. Plaintiff rejected the modified offer on February 14, 2025. **Doc. 10-1.** Plaintiff asserted that it varied substantively from her original employment and that its restrictions on communication violated her First Amendment right to freedom of speech.

Defendant gave Plaintiff an updated offer of reinstatement on February 26, 2025, that would still place her on administrative leave until the completion of proceedings but changed the at-will employee language to render Plaintiff able to be fired only in cases of violations of the code of judicial misconduct. **Doc. 18-1**. Plaintiff rejected the offer on the grounds that it continued to violate her First Amendment right to freedom of speech and still did not restore the status quo. **Doc. 18-2**. Defendant now contends that Plaintiff's second rejection renders her responsible for her ongoing unemployment and moots her cause of action. **Doc. 15 at 1**. Plaintiff maintains that she is entitled to a preliminary injunction and that the Court should not grant Defendant's motion to dismiss. **Doc. 12 at 1**.

## LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy, the exception rather than the rule." *Mrs. Fields Franchising, LLC v. MFGPC*, 941 F.3d 1221, 1232 (10th Cir. 2019) (quoting *Free the Nipple–Fort Collins v. City of Fort Collins, Colo.*, 916 F.3d 792, 797 (10th Cir. 2019)). "[B]ecause a preliminary injunction is an extraordinary remedy, the movant's right to relief must be clear and unequivocal." *Fundamentalist Church of Jesus Christ of Latter–Day Saints v. Horne*, 698 F.3d 1295, 1301 (10th Cir.2012) (citations omitted).

To obtain a preliminary injunction, Plaintiff must show: "(1) a substantial likelihood of prevailing on the merits; (2) irreparable harm unless the injunction is issued; (3) that the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4)

that the injunction, if issued, will not adversely affect the public interest." *Dine Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1281 (10th Cir. 2016) (quoting *Davis v. Mineta*, 302 F.3d 1104, 1111 (10th Cir. 2002)).

Courts disfavor preliminary injunctions that "exhibit any of three characteristics: (1) it mandates action (rather than prohibiting it), (2) it changes the status quo, or (3) it grants all the relief that the moving party could expect from a trial win." *Mrs. Fields Franchising, LLC*, 941 F.3d at 1232 (quoting *Free the Nipple-Fort Collins*, 916 F.3d at 797). Because Plaintiff's request mandates action, she faces "a heavier burden on the likelihood-of-success-on-the-merits and the balance-of-harms factors." *Id.*

## ANALYSIS

Plaintiff has demonstrated that she is entitled to a preliminary injunction, even when considering the higher burden she must bear in seeking an affirmative injunction.

Courts disfavor preliminary injunctions that (1) mandate action (rather than prohibiting it), (2) change the status quo, or (3) grant all the relief that the moving party could expect from a trial win." *Mrs. Fields Franchising, LLC*, 941 F.3d at 1232 (quoting *Free the Nipple-Fort Collins*, 916 F.3d at 797). The Supreme Court has affirmatively stated that purpose of a preliminary injunction is "to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). The goal is to preserve the status quo until the Court can more completely resolve the issue on its merits. *Id.* To determine the status quo, the Court looks to the "last peaceable uncontested status existing between the parties before the dispute developed[.]" *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1260 (10th Cir. 2005) (quoting 11A Charles Alan Wright et al., Federal Practice and Procedure § 2948, at 136 (2d ed.1995)). "[I]t is defined by the reality of the existing status and relationships between the parties, regardless of

whether the existing status and relationships may ultimately be found to be in accord or not in accord with the parties' legal rights." *Id.* at 1259. The Court's findings of fact and conclusions of law when granting a preliminary injunction are not binding at a trial on the merits. *Camenisch*, 451 U.S. at 395.

Plaintiff's requested preliminary injunction would likely return the parties to their last peaceable position prior to this conflict arising.[1] Plaintiff seeks to return to her position as a WCJ (without being on paid administrative leave), resume hearing cases, serve the rest of her appointment, and to engage with her colleagues. **Doc. 1 at ¶67**. That would be the last peaceable uncontested status existing between the parties before this dispute developed— Plaintiff was not on administrative leave or barred from speaking with her colleagues before Defendant fired her. *Schrier*, 427 F.3d at 1260. "Thus, in reality, Plaintiff seeks to preserve the status quo," which is the very purpose of a preliminary injunction. *Porter v. Allbaugh*, No. 18-CV-0472-JED-FHM, 2019 WL 2167415, at *6 (N.D. Okla. May 17, 2019); *Camenisch*, 451 U.S. at 395. However, because Plaintiff's requested injunction mandates action—that is, reinstating an already-fired party— the Court still applies some elevated level of scrutiny to Plaintiff's likelihood of success on the merits and the balancing of harms factors. *Mrs. Fields Franchising, LLC*, 941 F.3d at 1232.

---

[1] It is worth noting that the Tenth Circuit has recently noted that "An injunction is mandatory when it requires defendants to do something they were not doing during the most recent peaceable status quo—that is, the last uncontested period preceding the injunction." *Pryor v. Sch. Dist. No. 1*, 99 F.4th 1243, 1255 (10th Cir. 2024). Given that the last peaceable period preceding the injunction was prior to Plaintiff's firing, one could argue that requiring Defendant to restore Plaintiff to her position does not "disturb the last peaceable status quo." *Id.*; *see Schrier v. Univ. Of Co.*, 427 F.3d 1253, 1260 (10th Cir. 2005) ("In the instant case, the "last peaceable uncontested status existing between the parties before the dispute developed," . . . was on October 9, 2002, when Dr. Schrier was still serving as Chair of the Department of Medicine, a position he had held in excess of twenty-six years."). However, because Plaintiff's Motion survives the higher burden of affirmative injunctions, it is unnecessary to delve deeper into whether Plaintiff has sought a mandatory or a prohibitive injunction.

> A. *Plaintiff has demonstrated a substantial likelihood of success on her procedural due process claim.*

One of the two factors the Court must weight particularly heavily is Plaintiff's likelihood of success on the merits. "All courts agree that plaintiff must present a prima facie case but need not show a certainty of winning." *Logan v. Pub. Emps. Ret. Ass'n*, 163 F. Supp. 3d 1007, 1033 (D.N.M. 2016) (internal citations omitted).

Here, Plaintiff presents two claims: deprivation of her right to procedural due process and deprivation of her right to substantive due process. Both claims arise under 42 U.S.C. § 1983. §1983 claims mandate that a person be acting under color of state law. 42 U.S.C. § 1983 (covering the conduct of "[e]very person who, *under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia*, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws."). The parties stipulated that Defendant was a state actor and that she acted under color of state law. **Doc. 14 at 3**. The Court will therefore find that Plaintiff has satisfied this requirement for a § 1983 claim and look only to whether she has alleged a prima facie case for both of her due process claims. The Court finds that Plaintiff has demonstrated likelihood of success on her procedural due process claim, but not on her substantive due process claim.

>> a. *Procedural due process*

Plaintiff has alleged a prima facie case of a violation of her procedural due process rights because she received no pretermination notice or process.

The Tenth Circuit requires a two-step inquiry in determining whether an individual's procedural due process rights were violated. First, the Court asks whether the individual possesses a protected property or liberty interest to which due process is applicable. *Camuglia v. City of*

6

*Albuquerque*, 448 F.3d 1214, 1219 (10th Cir. 2006); *ETP Rio Rancho Park, LLC v. Grisham*, 522 F. Supp. 3d 966, 1018 (D.N.M. 2021). If the party does possess such an interest, the court then asks if the individual was afforded the appropriate level of process. *Camuglia*, 448 F.3d at 1219. "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Salazar*, 776 F. Supp. 2d at 1238.

"That [Plaintiff] satisfies the first prong, whether [she] possessed a protected interest, is beyond dispute." *Garcia v. City of Albuquerque,* 232 F.3d 760, 769 (10th Cir. 2000). Public employees who can be discharged only for cause retain a constitutionally protected property interest in their continued employment and cannot be fired without due process. *Gilbert v. Homar,* 520 U.S. 924, 928–29 (1997); *Hennigh v. City of Shawnee,* 155 F.3d 1249, 1253 (10th Cir. 1998) (The "standard for the existence of a property right in employment is whether the plaintiff has a legitimate expectation of continued employment."). Neither party disputes that Plaintiff was a public employee who could only be fired for cause—that is, violations of the Code of Judicial Conduct. Plaintiff thus retains a constitutionally protected property interest in her ongoing employment and is entitled to due process.

What constitutes adequate procedural due process "is flexible and calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 334, (1976). Generally, [a]n essential principle of due process is that a deprivation of life, liberty, or property "be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (quoting *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313 (1950)). The Supreme Court has emphasized that this "root requirement" is *pretermination* process, meaning "that an individual be given an

opportunity for a hearing *before* [they are] deprived of any significant property interest. *Id.* (citing *Boddie v. Connecticut,* 401 U.S. 371, 379(1971) (emphasis in original); *Bell v. Burson,* 402 U.S. 535, 542 (1971)).

Pretermination due process is necessary due to the "severity of depriving a person of the means of livelihood. *Loudermill*, 470 U.S. at 543. "While a fired worker may find employment elsewhere, doing so will take some time and is likely to be burdened by the questionable circumstances under which [they] left [their] previous job." *Id.* "[The] the only meaningful opportunity to invoke the discretion of the decisionmaker is likely to be before the termination takes effect." *Id.* And "[the] governmental interest in immediate termination does not outweigh these interests," even where an employee poses some significant hazard. *Id.* at 544. Pretermination process poses no significant administrative burden, it prevents disruption and erroneous decisions, and keeps qualified employees usefully employed. *Id.* In situations where an employee poses a hazard, the government has the option of suspension pending pretermination proceedings. *Id.* at 545.

Plaintiff received no such process here. While Defendant attempted to retroactively rectify the situation by filing a complaint with the Personnel Board *after* Plaintiff had already been fired, Plaintiff received no notice or opportunity to respond *prior* to her termination. *Archuleta v. Colorado Dept. of Institutions, Div. of Youth Services*, 936 F.2d 483, 491 (10th Cir. 1991) ("Where the state action is the dismissal of a tenured public employee, the procedural safeguard required by the Constitution typically includes a pre-termination as well as a post-termination hearing."). As a tenured public employee, Plaintiff is entitled to some form of pretermination process, including notice of the charge and an opportunity to respond. This process, laid out in New Mexico state law, involves filing a complaint with the New Mexico Personnel Board and holding hearing

proceedings in which both sides may argue their case. *See Garcia v. City of Albuquerque*, 232 F.3d 760, 770 (10th Cir. 2000) ("Moreover, Garcia was afforded three opportunities to challenge the City's actions before neutral bodies: (1) the initial Board hearing, (2) the state court proceedings, and (3) the final Board hearing. In the circumstances, Garcia received all of the process that he was due."). Plaintiff received no notice or opportunity to be heard, and Defendant concedes as such. **Doc. 14 at ¶6** (Both parties stipulate that "[p]rior to delivering the termination letter, Defendant did not submit a complaint to the State Personnel Board, Defendant did not provide Plaintiff with a hearing, and Defendant did not comply with any other required procedure under the New Mexico Administrative Code in terminating Plaintiff.").

Defendant argues that by submitting a complaint to the Personnel Board after she already terminated Plaintiff, Defendant has rectified any due process concern. Indeed, Defendant argues that Plaintiff has shirked the process she is being given by filing a motion to dismiss for lack of jurisdiction with the Personnel Board. To support her argument, Defendant relies on an Eleventh Circuit case, *McKinney v. Pate*, 20 F.3d 1550 (11th Cir. 1994), which ostensibly supports the argument that one can remedy a due process violation ex post facto by providing an opportunity to be heard after the deprivation has already taken place. But Defendant's reliance on *McKinney* is misplaced for two reasons. First, the Eleventh Circuit is persuasive, but not binding. Tenth Circuit case law seems to clearly require *pretermination* process, and the Court can locate no precedent suggesting that *ex post facto* remedies can make up for a lack of pretermination process. *Garcia*, 232 F.3d at 769 (discussing pretermination process); *Nard v. City Of Oklahoma City*, 153 Fed. Appx. 529, 534 (10th Cir. 2005) ("The undisputed facts demonstrate that Defendant Oklahoma City provided Plaintiff with all of the procedure he was due under the Fourteenth

9

Amendment *prior* to *demoting him*." (emphasis added)); *Archuleta*, 936 F.2d at 490 (discussing at length the pretermination process plaintiff received).

Second, even if *McKinney* did bind this Court, so would its progeny, including *Galbreath v. Hale Cnty., Alabama Comm'n*, 754 F. App'x 820 (11th Cir. 2018). *Galbreath* expressly rejects Defendant's *ex post facto* argument. The Eleventh Circuit found that "where a due process violation is already complete because no hearing was held as required by *Loudermill*, *McKinney* has no application." *Id.* at 828. Where there were *no* pretermination proceedings whatsoever, *McKinney* has no effect. Here, Plaintiff was fired with no notice or opportunity to be heard at a pretermination hearing, as required by *Loudermill*. *Galbreath* is thus significantly more persuasive in demonstrating that Plaintiff suffered a complete due process violation.

Because Plaintiff received no pretermination process, the Court finds that Plaintiff has demonstrated substantial likelihood of success on her procedural due process claim.

      b. *Substantive due process*

Plaintiff has not demonstrated substantial likelihood of success on her substantive due process claim because Defendant's action was not arbitrary or conscience-shocking and because it was rationally connected to a legitimate interest.

It is not clear whether a property interest in continued employment is protected by substantive due process. *Ishoo v. Bd. of Regents Univ. of New Mexico*, No. CV-06-0747 MV/ACT, 2007 WL 9729216, at *15 (D.N.M. Sept. 29, 2007) (citing *Archuleta*, 936 F.2d at 489 n.6). However, even assuming that Plaintiff does have a fundamental property interest in performing the duties and functions of her employment that is subject to substantive due process protection, Plaintiff has not shown substantial likelihood of success on the merits. This is because where a plaintiff has recourse to an "explicit textual source of constitutional protection," *Graham v.*

10

*Connor*, 490 U.S. 386, 395 (1989), a more general claim of substantive due process is not available. *See County of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998). Plaintiff's substantive due process claim essentially restates her procedural due process claim, inserting the standard for substantive due process instead. *Ishoo*, 2007 WL 9729216 at *16.

Even operating as if Plaintiff did have a substantive due process right, she cannot show substantial likelihood on the merits. Assuming a protected property interest, "[S]ubstantive due process requires only that termination of that interest not be arbitrary, capricious, or without a rational basis. . . [the] Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions." *Curtis v. Oklahoma City Pub. Sch. Bd. of Educ.*, 147 F.3d 1200, 1215 (10th Cir. 1998) (internal quotations omitted) (citing *Bishop v. Wood,* 426 U.S. 341, 350 (1976)). The standard for judging substantive due process violations is whether the challenged government action would "shock the conscience of federal judges." *Uhlrig v. Harder*, 64 F.3d 567, 573 (10th Cir. 1995) (internal quotations omitted).

Plaintiff has not demonstrated that Defendant acted in a manner that was wholly arbitrary or conscience-shocking. Even acting ill-advisedly and without affording Plaintiff procedural due process, Defendant did not act with a "a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." *Id.* at 574. Defendant's reasoning for firing Plaintiff was not arbitrary—a possible violation of the Code of Judicial Conduct is a serious charge. While the decision to fire Plaintiff over two hours of mislabeled time seems overblown, it does not surmount the high standard of being completely arbitrary or conscience-shocking.

Moreover, the decision to terminate Plaintiff is rationally related to the interests laid out in the Code of Judicial Conduct. The Code of Conduct is meant to prevent conduct that reflects adversely on the judge's honesty, Rule 21-003(K), NMRA, or create in reasonable minds conduct

that would impugn a judge's credibility or honestly.   Rule 21-003(B), NMRA.  Plaintiff admits that she ultimately submitted a timesheet that did not accurately reflect her time worked and time taken off.  That could create in some reasonable mind an assumption that Plaintiff is dishonest.  Terminating her is thus rationally related to the interest of preventing impropriety.

Plaintiff has thus not demonstrated a likelihood of success on the merits of her substantive due process claim.  However, she has demonstrated a substantial likelihood of success on her procedural due process claim.  The Court will therefore find that this factor counsels towards granting Plaintiff relief.

B.  *Plaintiff has demonstrated she would likely suffer irreparable harm.*

Plaintiff has demonstrated that she would likely suffer irreparable harm unable to be remedied solely by monetary damages.

Plaintiff asserts that she has automatically demonstrated irreparable harm where she has demonstrated a constitutional violation.  The Tenth Circuit has suggested that in the context of constitutional claims, the first and second preliminary injunction factors collapse, and a plaintiff who demonstrates a likelihood of success on the merits simultaneously demonstrates irreparable injury.  *Free the Nipple-Fort Collins*, 916 F.3d at 792.  Because Plaintiff has demonstrated substantial likelihood of success on at least one of her constitutional claims, this alone is sufficient to find the second factor skews in favor of Plaintiff.

Moreover, Plaintiff also asserts that "[i]f an injunction is not granted, Plaintiff will have to explain her termination to future employers, colleagues, and other members of the bar," which is a disproportionately dangerous harm in a small legal community like New Mexico.  **Doc. 2 at 8**.  "A plaintiff suffers irreparable injury when the court would be unable to grant an effective monetary remedy after a full trial because such damages would be inadequate or difficult to

ascertain." *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269 F.3d 1149, 1156 (10th Cir. 2001). The Tenth Circuit has held that "no remedy could repair the damage to . . . reputation and credibility," enabling district courts to grant preliminary injunctions where there is risk of reputational harm. *Id.* at 1156–57. Defendant does not dispute this in any of her pleadings. The Court will therefore take the assertions at face value and find that Plaintiff has demonstrated an additional risk of irreparable harm.

> C. *Defendant is unlikely to suffer any injury, and the injunction is not adverse to the public interest.*

The discernible harm factor also counsels towards granting the preliminary injunction because it is not clear that Defendant would suffer any harm, much less harm that would outweigh Plaintiff's risk of harm. Nor is the preliminary injunction adverse to the public interest.

The final two factors merge where the Government is the opposing party, meaning the Court analyzes the potential harm to Defendant and the harm to the public interest in the same prong. *Chiles v. Salazar*, 116 F.4th 1178, 1199 (10th Cir. 2024), *cert. granted,* No. 24-539, 2025 WL 746313 (U.S. Mar. 10, 2025).

Here, there is a lack of demonstrable harm to Defendant, meaning there is nothing to outweigh Plaintiff's risk of harm. There is no evidence, for example, that Defendant has replaced Plaintiff and that restoring Plaintiff to her position would therefore cost the government hundreds of thousands of dollars. Nor is there any evidence that restoring Plaintiff to her position would somehow cause Defendant reputational harm, or some other harm not easily remedied by money. And Defendant makes no effort to demonstrate harm, leaving the Court to decide this factor solely on Plaintiff's word. Given the absence of ascertainable harm, the Court will find for Plaintiff on this factor. *See Rocky Mountain Gun Owners v. Polis*, 121 F.4th 96, 128 (10th Cir. 2024)

("Balancing Pineda's non-existent harms against the real harms of non-enforcement of SB 23-169 weighs in favor of Governor Polis.").

Likewise, there is nothing in the record demonstrating that the preliminary injunction would be adverse to the public interest. Plaintiff points out several public policy interests that counsel towards relief: maintaining public confidence in the WCA and in the state's administrative disciplinary procedures, increasing the efficiency of the WCA by allowing Plaintiff to quickly resolve those cases she is already familiar with rather than assigning them to new judges. *See Core Progression Franchise LLC v. O'Hare*, No. 21-1151, 2022 WL 1741836, at *4 (10th Cir. May 31, 2022) (finding the fourth factor counsels towards an injunction where there are several public policy interests favoring it); *Rocky Mountain Gun Owners*, 121 F.4th at 128 (same). The public also has a demonstrated interest in preventing civil rights violations. Given that Defendant does not contest this factor at all, the Court will find that the injunction is not only not adverse to the public interest, it is arguably in the public's interest.

The Court will therefore find that the collapsed third and fourth factors counsel towards the preliminary injunction. The Court therefore finds that Plaintiff has met her burden of demonstrating a clear right to relief because she has demonstrated substantial likelihood of success on at least one of her claims and has demonstrated a risk of irreparable harm. The Court will grant her motion for a preliminary injunction.

## CONCLUSION

Preliminary "injunctive relief [is] an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22, 129 S.Ct. 365. Plaintiff has shown that she is entitled to preliminary injunctive relief here. Therefore, the Court will grant Plaintiff's preliminary injunction.

An order granting an injunction must describe in reasonably specific detail what acts are required. *Pryor v. Sch. Dist. No. 1*, 99 F.4th 1243, 1255 (10th Cir. 2024); Fed. R. Civ. P. 65(d)(1)(c). Defendant is specifically required to reinstate Plaintiff to her position as a WCJ as she served prior to her termination pending the resolution of this case on the merits. Doing so restores the status quo at the last peaceable position of the parties, as is the purpose of an injunction.

**IT IS THEREFORE ORDERED THAT** Plaintiff's Motion for Preliminary Injunction **(Doc. 2)** is **GRANTED.**

　　　　　　　　　　　　　　　　　　　　/S/
　　　　　　　　　　　　　　　　　KEA W. RIGGS
　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE