IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

SHANON S. RILEY,

        **Plaintiff,**

v.   No. 1:25-cv-00044-KWR-KK

HEATHER JORDAN, in her individual
and official capacities as the Director
of the New Mexico Workers'
Compensation Administration,

        **Defendant.**

## RESPONSE IN OPPOSITION TO DEFENDANT'S
## EMERGENCY MOTION FOR STAY PENDING APPEAL OR CLARIFICATION

    Plaintiff Shanon S. Riley, by and through her counsel of record, Kennedy, Hernandez & Harrison, P.C., hereby respectfully submits this Response in opposition to Defendant's Emergency Motion for Stay Pending Appeal or Clarification (Doc. 29), filed May 16, 2025 ("Motion for Stay"). Defendant urges this Court to reverse course on its prior ruling and stay the preliminary injunction. For the reasons articulated below, this Court should deny Defendant's motion and preserve the preliminary injunction during the appeal.

    In the event the Court denies Defendant's Motion for Stay, Plaintiff believes Defendant will be in violation of the Court's standing preliminary injunction. On May 9, 2025, the Court issued its Amended Memorandum Opinion and Order Granting Plaintiff's Motion for Preliminary Injunction (Doc. 26) ("Preliminary Injunction Order") and directing Defendant "to reinstate Plaintiff to her position as a WCJ as she served prior to her termination pending the resolution of this case on the merits." Not until May 30, 2025, did Defendant provide Plaintiff with the necessary paperwork for reinstatement. As of June 2, 2025, Plaintiff has not been reinstated, and Plaintiff has not received back pay for the duration of her wrongful unemployment. Plaintiff's counsel has

conferred with Defendant's counsel in good faith on this issue, but it is Plaintiff's understanding that Defendant refuses to assign cases to Plaintiff and refuses to provide back pay until the appeal of the preliminary injunction is resolved. In other words, Plaintiff will be reinstated (at some point) and paid going forward, but she will have no work to do. While Plaintiff understands there may be logistical issues with assigning and reassigning cases, those issues do not override the Court's order to restore the status quo. Defendant must allow Plaintiff to adjudicate cases as she did prior to her termination.

## FACTUAL BACKGROUND

On August 20, 2011, Plaintiff was appointed to an initial one-year term as a Workers' Compensation Judge (WCJ) for the New Mexico Workers' Compensation Administration (WCA). Motion for Preliminary Injunction (Doc. 2), filed Jan. 14, 2025, at 1. After her first year, and following review by the Director of the WCA, Plaintiff was appointed to subsequent five-year terms as established by NMSA 1978, Section 52-5-2(B). *Id.* Plaintiff was reappointed to a five-year term in August of 2012, August of 2017, and again in August of 2022. *Id.*; (Doc. 8-1), filed Feb. 6, 2025, at 3.

On Election Day, November 5, 2024, Plaintiff submitted a pre-approval request for two hours of administrative leave for the purpose of voting. (Doc. 2), at 2. Later that day, she was driven home by a colleague to obtain her vehicle. *Id.* Plaintiff drove to a polling location and found that there was a line. *Id.* Because Plaintiff was feeling ill, she decided to forgo voting and returned home. *Id.* Due to a variety of circumstances, Plaintiff simply forgot to edit her timesheet. *Id.* At the time, Plaintiff had accrued over 200 hours of annual leave and over 240 hours of sick leave

that she could have used to substitute the two hours of administrative voting leave. Joint Status Rep. & Provisional Discovery Plan (Doc. 19), filed Apr. 14, 2025, at 3, ¶ 4.

On November 12, 2024, Governor Michelle Lujan Grisham appointed Defendant Heather Jordan as the new Director of the WCA. (Doc. 2), at 2. The very next day, November 13, 2024, the Defendant and another WCA employee walked into Plaintiff's office and asked whether she voted on Election Day. *Id.* Plaintiff responded that she had left work and attempted to vote but ultimately did not do so. *Id.* Defendant then handed Plaintiff a letter—signed by the Defendant—immediately terminating Plaintiff's employment. *Id.*; (Doc. 19), at 3, ¶ 5; Termination Letter, attached hereto as Exhibit 1. The letter alleged that Plaintiff violated the Code of Judicial Conduct by entering two hours of voting leave into her timesheet and failing to vote. Ex. 1. According to the letter, "[s]uch conduct is a violation of the code of judicial conduct, which requires you to promote integrity and to 'avoid impropriety and the appearance of impropriety.'" *Id.*

Plaintiff asked Defendant if there was anyone she could speak to regarding her termination. (Doc. 2), at 2–3. Defendant explained that Plaintiff could try to contact someone, but the decision regarding Plaintiff's termination had already been made. *Id.* at 3. On November 13 and 14, 2024, Plaintiff called the Office of the Governor of the State of New Mexico to request an opportunity to speak with someone and explain the events surrounding her timesheet error. *Id.* On both occasions, Plaintiff's request was denied. *Id.*

## PROCEDURAL HISTORY

On January 14, 2025, Plaintiff filed this lawsuit alleging procedural and substantive due process violations under 42 U.S.C. § 1983. *See generally* Complaint (Doc. 1). Plaintiff also filed a Motion for Preliminary Injunction seeking reinstatement to her position as a WCJ pending resolution of the case on the merits. (Doc. 2), at 1. On February 6, 2025, the WCA filed a complaint

with the State Personnel Board (the "Board") alleging that Plaintiff's trivial timesheet error amounted to a violation of the Code of Judicial Conduct. *See* (Doc. 8-1), at 1–2. Shortly after the WCA filed the complaint, Defendant sent Plaintiff a letter of reinstatement. (Doc. 8-2), filed Feb. 6, 2025. According to the letter, Plaintiff would be reinstated and immediately placed on paid administrative leave while the Complaint to the Board was pending. *Id.* On February 14, 2025, Plaintiff rejected the letter of reinstatement because it required Plaintiff to give up her property interest in continued employment and violated her First Amendment rights to freedom of speech and association. *See* (Doc. 10-1) & (Doc. 10-2), filed Feb. 18, 2025. The letter also failed to preserve the status quo by fully reinstating Plaintiff. (Doc. 10-2).

After rejecting the WCA's letter of reinstatement, Plaintiff filed a motion to dismiss the pending complaint with the Board on February 17, 2025. (Doc. 14-1), filed Mar. 4, 2025, at 1. On March 4, 2025, the Board found Plaintiff's motion well taken and dismissed the complaint. *Id.* at 2.

On February 28, 2025, Plaintiff received a new letter of reinstatement from Defendant. (Doc. 15), filed Mar. 5, 2025, at 8. Unlike Defendant's previous letter, the new letter no longer contained provisions requiring Plaintiff to become "an at-will exempt employee[,]" and the new letter allowed Plaintiff to speak with NMWCA staff on matters unrelated to her employment. *Id.* Plaintiff considered these changes and rejected the letter of reinstatement. (Doc. 18-1), filed Apr. 8, 2025. On March 7, 2025, Plaintiff's counsel delivered the signed rejection to defense counsel via email, explaining that Defendant's terms of reinstatement continued to violate Plaintiff's freedoms of speech and association and failed to preserve the status quo by fully reinstating Plaintiff to her position as a WCJ. (Doc. 18-2), filed Apr. 8, 2025. Plaintiff's counsel expressed

4

that Plaintiff would continue to pursue preliminary injunctive relief to preserve the status quo and that Plaintiff was entitled to back pay for the time Plaintiff was wrongfully unemployed. *Id.*

On May 9, 2025, this Court issued its Preliminary Injunction Order (Doc. 26). The Court found that Plaintiff was substantially likely to succeed on her procedural due process claim, but that Plaintiff had not demonstrated a likelihood of success on her substantive due process claim. *Id.* at 6–12. Based on the procedural due process violation, the Court also found that Plaintiff had demonstrated irreparable harm, that this harm would outweigh any harm to Defendant, and that the injunction was not adverse to the public interest. *Id.* at 12–14.

On May 19, 2025, Defendant filed her Motion for Stay, arguing that the Court should stay the injunction pending Defendant's appeal to the Tenth Circuit. That same day, Defendant filed a Notice of Appeal (Doc. 31).

## LEGAL ARGUMENT

**A. This Court should exclude from consideration the Declaration of Heather Jordan.**

As an initial matter, this Court should exclude from consideration the Declaration of Heather Jordan (Doc. 34), filed May 27, 2025, because Defendant failed to raise any of the Declaration's evidence or argument in its Response in Opposition to Plaintiff's Motion for Preliminary Injunction, (Doc. 8), filed Feb. 6, 2025, or at any other point before the Court issued its Preliminary Injunction Order. "As with a motion for reconsideration, a motion to stay should not be used to relitigate matters, submit new evidence, or 'raise arguments which could, and should, have been made before the judgment issued.'" *ODonnell v. Harris Cty.*, 260 F. Supp. 3d 810, 815 (S.D. Tex. 2017) (quoting *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 863–64 (5th Cir. 2003)). "A motion for stay pending appeal is not a second bite at the preliminary injunction apple."

5

*Autobar Sys. of N.J. v. Berg Liquor Sys., LLC*, No. 23-3790, 2024 WL 919183, at *3 (D.N.J. Mar. 4, 2024).

Here, Defendant's Declaration states that "[w]hen Plaintiff Shanon Riley's employment with the WCA was terminated, all of her approximate eighty (80) cases were reassigned to other workers' compensation judges." (Doc. 34), at 1–2. Defendant then proceeds to explain established procedural mechanisms within the WCA to illustrate the alleged "prejudice and burdens" that would accompany Plaintiff's reinstatement. *Id.* at 2–3. Defendant also argues that she will be unable to collaborate with Plaintiff in the event Plaintiff is reinstated. *Id.*

The evidence and arguments in the Declaration "could, and should, have been made" before this Court issued its preliminary injunction. *See ODonnell*, 260 F. Supp. 3d at 815. The WCA and Defendant were aware that Plaintiff's cases were reassigned, they were aware of the possibility that the requested relief in the injunction could result in "[m]ultiple reassignments of Plaintiff Shanon Riley's prior cases," and they were aware that Plaintiff's reinstatement could cause conflict between Defendant and Plaintiff. This information was available to Defendant, or at the very least, "potentially available through the exercise of reasonable diligence[.]" *See Int'l Brotherhood of Teamsters, Loc. 211 v. PG Publ'g Co.*, No. 19-1472, 2019 WL 9101872, at *2–3 (W.D. Pa. Dec. 27, 2019) (reviewing motion to stay pending appeal and considering waived any material potentially available through the exercise of reasonable diligence but not raised at the preliminary injunction stage). Yet Defendant excluded these statements from its Response to Plaintiff's Motion for Preliminary Injunction and failed to raise them at any point thereafter.

The Court's Preliminary Injunction Order has already recognized Defendant's lack of supporting evidence in prior briefing. In analyzing the final two preliminary injunction factors, this Court reasoned that "Defendant makes no effort to demonstrate harm" and, regarding the

6

public interest, "Defendant does not contest this factor at all[.]" (Doc. 26), at 13–14. Defendant's failure to raise such arguments and evidence at first blush dooms her ability to raise them now. *Graveline v. Johnson*, No. 18-12354, 2018 WL 4184577, at *3 (E.D. Mich. Aug. 30, 2018) ("In weighing the four factors in consideration of a motion to stay, the Court is not permitted to examine new evidence."); *Maxwell Techs., Inc. v. Nesscap, Inc.*, No. 06cv2311, 2007 WL 9723323, at *3 (S.D. Cal. June 1, 2007) ("[B]ecause the evidence presented in Defendants' declarations was available at the time the preliminary injunction was pending, this Court will not consider the evidence presented" when deciding the motion for a stay.).

### B. The Court should decline to issue a stay here.

In considering whether to stay its previous preliminary injunction pending Defendant's appeal to the Tenth Circuit, this Court must consider

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Nken v. Holder*, 556 U.S. 418, 425–26 (2009). "The party requesting a stay pending appeal must satisfy all four factors to obtain a stay pending appeal." *Moya v. U.S. Eagle Fed. Credit Union*, No. 17cv415, 2017 WL 11503352, at *1 (D.N.M. Dec. 8, 2017). Factors one and two are "the most critical" in this analysis. *Nken*, 556 U.S. at 434.

#### 1. Defendant cannot show she is likely to succeed on the merits of her appeal.

First, Defendant must make a "strong showing" of success on the merits; a mere possibility of relief is insufficient. *Id.* Notably, the Tenth Circuit reviews the grant of a preliminary injunction using the abuse-of-discretion standard. *Wyandotte Nation v. Sebelius*, 443 F.3d 1247, 1252 (10th Cir. 2006). Under this standard, the reviewing court gives "considerable deference" to the district court in recognition that "in many cases there will be a range of possible outcomes the facts and

7

law at issue can fairly support." *Vincent v. Nelson*, 51 F.4th 1200, 1213 (10th Cir. 2022) (citation omitted). The reviewing court "will defer to the district court's judgment so long as it falls within the realm of the[] rationally available choices." *Id.* (citation omitted). Given the low bar here, Defendant has virtually no chance of success on appeal.

In obtaining a preliminary injunction, Plaintiff had to demonstrate that "(1) [she was] substantially likely to succeed on the merits; (2) [she would] suffer irreparable injury if the injunction is denied; (3) [her] threatened injury outweigh[ed] the injury the opposing party [would] suffer under the injunction; and (4) the injunction would not be adverse to the public interest." *Beltronics USA, Inc. v. Midwest Inventory Distribution, LLC*, 562 F.3d 1067, 1070 (10th Cir. 2009). This Court did not abuse its discretion in finding that Plaintiff met all four requirements. Instead, the Court applied established law to find a clear deprivation of Plaintiff's constitutional right to procedural due process.

### a. First Preliminary Injunction Factor

Prior to the expiration of her term, the WCA could only fire Plaintiff for violations of the New Mexico Code of Judicial Conduct. *See* § 52-5-2(C). As this Court recognized, that statutory guarantee conferred upon Plaintiff "a constitutionally protected property interest in her ongoing employment[.]" (Doc. 26), at 7. The Court's conclusion finds overwhelming support in both Supreme Court and Tenth Circuit precedent. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538–39 (1985) (finding protected property interest where Ohio law permitted dismissal of state employees only when they committed "misfeasance, malfeasance, or nonfeasance in office"); *Perry v. Sindermann*, 408 U.S. 593, 600 (1972) (finding professor had a protected property interest in continued employment where faculty handbook provided de facto tenure so long as professor's "teaching services are satisfactory and as long as he displays a cooperative attitude toward his co-

workers"); *Hennigh v. City of Shawnee*, 155 F.3d 1249, 1253 (10th Cir. 1998) ("This court has held that if state statutes or regulations place substantive restrictions on a government actor's ability to make personnel decisions, then the employee has a protected property interest.").

"An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and an opportunity for hearing appropriate to the nature of the case.'" *Loudermill*, 470 U.S. at 542 (quoting *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313 (1950)). As this Court recognized, despite holding a protected property interest in her continued employment, "Plaintiff received no notice or opportunity to be heard[.]" (Doc. 26), at 9. Therefore, the district court rationally concluded that "Plaintiff has demonstrated [a] substantial likelihood of success on her procedural due process claim." *Id.* at 10.

On this point, Defendant's Motion for Stay merely parrots the arguments it made before this Court in the first instance. Once again, Defendant argues that she "offered Plaintiff all the due process to which she was entitled, and her refusal to accept it negates her standing and entitlement to a preliminary injunction." (Doc. 29), at 8. As this Court recognized, however, "[w]here there were no pretermination proceedings whatsoever," post-termination proceedings cannot remedy the constitutional violation. (Doc. 26), at 9–10.

In a footnote, Defendant also argues that her previous stipulation "that 'she did not provide Plaintiff with a hearing' was meant in the sense that she did not provide Plaintiff with the hearing outlined in the New Mexico Administrative Code—not an informal 'hearing' in the general due process sense." (Doc. 29), at 6 n.4. Regardless, whatever hearing procedures Defendant claims occurred were far from adequate. Throughout this litigation, Plaintiff's narrative has remained consistent: Defendant walked into Plaintiff's office and asked Plaintiff if she voted, Plaintiff responded that she attempted to vote but ultimately did not do so, Defendant immediately delivered

9

a letter terminating Plaintiff's employment, and Plaintiff's attempts to explain the situation were denied. *See* (Doc. 1), at 4–5; (Doc. 2), 2–3. Defendant had multiple opportunities to contest or supplement these facts prior to the Court's Order granting Plaintiff's preliminary injunction. Defendant did not do so. *See* (Doc. 26), at 3. Based on the set of facts in the record at the time of its decision, this Court correctly found that Plaintiff did not receive adequate process.

Defendant cites *Roberts v. Winder*, 16 F.4th 1367, 1380 (10th Cir. 2021), and *West v. Grand Cty.*, 967 F.2d 362, 368 (10th Cir. 1992), for the proposition that "her meeting with Plaintiff was sufficient to satisfy pre-deprivation due process." (Doc. 29), at 6 n.4. Both cases are inapposite. In *Roberts*, unlike Ms. Riley, the plaintiff did not have a protected property interest in his position. *Id.* at 1379. Furthermore, in *Roberts*, the plaintiff had the opportunity to send a detailed letter to the defendant "objecting to his removal, reassignment, and pay reduction." *Id.* at 1372. The defendant treated the letter as a grievance and rejected it in a detailed response letter. *Id.* Ms. Riley did not receive this level of process. Similarly, in *West*, the plaintiff "had several pretermination opportunities to discuss her potential termination" with the defendants. 967 F.2d at 368. The court also noted that "[p]laintiff was not fired out of the blue. Plaintiff was not fired for reasons that he did not know. Plaintiff was not fired without being given the opportunity to present his side of the story." *Id.* (internal quotation marks and citation omitted). And the "brief face-to-face meeting" that the plaintiff received was approximately two hours in length. *Id.* Plaintiff did not receive anything remotely close to this level of process.

Defendant also argues that "Plaintiff claimed that she had a due process right to not be placed on paid administrative leave while the State Personnel Board is investigating her for violations of the code of judicial conduct." (Doc. 29), at 9. Plaintiff has never made this claim. Rather, Plaintiff has repeatedly argued that her placement on administrative leave does not

10

preserve the status quo. After all, "the very purpose of a preliminary injunction" is to preserve the status quo, i.e. "the last uncontested period preceding the injunction." (Doc. 26), at 5 & n.1 (quoting *Porter v. Allbaugh*, No. 18-CV-0472, 2019 WL 2167415, at *6 (N.D. Okla. May 17, 2019); *Pryor v. Sch. Dist. No. 1*, 99 F.4th 1243, 1255 (10th Cir. 2024)). Here, the last uncontested period—the status quo—was when Plaintiff presided over an active caseload as a duly enacted WCJ. The preliminary injunction standard, not the due process clause, required that Plaintiff be returned to that position.[1]

Finally, Defendant cites several cases for the proposition that Plaintiff's rejection of the reinstatement letters "breaks any causal connection between Defendant's actions and her purported injury and she, therefore, does not have standing to seek preliminary injunctive relief against Defendant." (Doc. 29), at 10. Neither case stands for Defendant's proposition. In *Pennsylvania v. New Jersey*, the Supreme Court held that "[n]o State can be heard to complain about damage inflicted by its own hand." 426 U.S. 660, 664 (1976). That was a general statement of law where the Court found that the defendant had not "inflicted *any* injury upon the plaintiff[.]" *Id.* Here, however, Defendant clearly injured Plaintiff when she deprived her of adequate process. And in *Dusanek v. Hannon*—unlike this case—there was "no question that the [government entity] and its employees complied with the [entity]'s rules and the state statutes in their procedural treatment of [the plaintiff]." 677 F.2d 538, 542 (7th Cir. 1982). Prior to his termination, the plaintiff in *Dusanek* received multiple medical examinations before his supervisors determined he did not

---

[1] Plaintiff continues to believe that the WCA's reinstatement letters violated her First Amendment freedoms of speech and association. While that claim was undoubtedly one of the reasons for Plaintiff's rejection of the letters, it is irrelevant here. Plaintiff rejected the reinstatement letters because they altered the status quo. As the district court recognized, "Plaintiff was not on administrative leave or barred from speaking with her colleagues before Defendant fired her." (Doc. 26), at 5. Neither party contests this fact. Thus, contrary to Defendant's assertion, it was *not* "incumbent on her to provide this Court with authority to the contrary." *See* (Doc. 29), at 10.

meet the medical standard for teaching. *Id.* at 540–41. Thus, the process afforded in *Dusanek* was far more comprehensive than the process Plaintiff received here.

### b. Remaining Preliminary Injunction Factors

The Court did not abuse its discretion in analyzing the remaining preliminary injunction factors. As for irreparable injury, this Court recognized the holding in *Free the Nipple-Fort Collins v. City of Fort Collins*, that demonstrating a substantial "likelihood of success on the merits simultaneously demonstrates irreparable injury." (Doc. 26), at 12 (citing *Free the Nipple*, 916 F.3d 792, 805–06 (10th Cir. 2019)). As the Court had already found that Plaintiff demonstrated a substantial likelihood of success, it merely applied binding precedent to arrive at the logical conclusion that Plaintiff had simultaneously demonstrated irreparable harm. *Id.* But the Court did not stop there. The Court also recognized (correctly) that Plaintiff would face reputational harm from her unlawful termination, which the Defendant did not dispute. *Id.* at 12–13.

Next, the Court addressed the balance of injuries and the public interest, two factors which merge when the government is the opposing party. *Id.* at 13–14 (quoting *Chiles v. Salazar*, 116 F.4th 1178, 1199 (10th Cir. 2024)). Based, in part, on the absence of evidence in the record that Defendant or the public interest would be harmed by an injunction, the Court correctly concluded that "the collapsed third and fourth factors counsel towards the preliminary injunction." *Id.* at 14.[2] But the Court also noted "several public policy interests that counsel towards relief" including "maintaining public confidence in the WCA and in the state's administrative disciplinary

---

[2] As argued above, any additional evidence presented in Defendant's Motion for Stay or in Defendant's Declaration was not presented to the Court previously and should be excluded from consideration here. *Autobar Sys.*, 2024 WL 919183, at *3 ("A motion for stay pending appeal is not a second bite at the preliminary injunction apple."). And, in light of the first stay factor (likelihood of success), the Tenth Circuit will surely exclude such evidence or additional arguments under its strict waiver rules. *Xlear, Inc. v. Focus Nutrition, LLC*, 893 F.3d 1227, 1234 (10th Cir. 2018) (quotations and alterations omitted) ("Generally, an issue is waived if it was not raised below in the district court.").

procedures," and "increasing the efficiency of the WCA[.]" *Id.* The Court did not abuse its discretion in granting the preliminary injunction reinstating Plaintiff. Accordingly, Defendant cannot show that her appeal to the Tenth Circuit will succeed.

### 2. Defendant cannot show she will be irreparably harmed absent a stay.

Next, the Defendant must show that she will be irreparably injured in the absence of a stay. *Nken*, 556 U.S. at 425–26. Defendant attempts to dramatize the harm she faces if this Court preserves its injunction. According to Defendant, the injunction "*could* delay case resolutions, invite challenges to [Plaintiff's] rulings, and increase the risk of reversible error[.]" (Doc. 29), at 11. But Defendant's parade of horribles is speculative at best. "[S]imply showing some 'possibility of irreparable injury[]' . . . fails to satisfy the second factor." *Nken*, 556 U.S. at 434–35. "Irreparable harm justifying a stay of an injunction must be 'actual and imminent' as opposed to 'speculative' harm, . . . ." *Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmbH*, No. 14-CV-585, 2015 WL 5051769, at *2 (S.D.N.Y. Aug. 26, 2015); *see also Bench Billboard Co. v. City of Covington, Ky.*, No. 06-75, 2012 WL 12974009, at *2 (E.D. Ky. Aug. 30, 2012) (finding no likelihood of irreparable harm for stay pending appeal where harm alleged was speculative and unsubstantiated). Defendant also argues that Plaintiff, if reinstated, will be operating under "a cloud of ethical and legal scrutiny" and that her reinstatement will send "a signal that suspected misconduct does not warrant immediate action." *Id.* Common sense indicates otherwise, especially where Plaintiff had no motive to "steal time" given her ample annual and sick leave. As this Court recognized, "the decision to fire Plaintiff over two hours of mislabeled time seems overblown[.]" (Doc. 26), at 11.

Although the Court should exclude consideration of it entirely, the Declaration of Heather Jordan does not help Defendant. The Declaration merely discusses logistical challenges

accompanying Plaintiff's reinstatement that were totally foreseeable to Defendant. What's more, allowing the government to claim that it is irreparably injured by logistical challenges when it *created* those challenges would incentivize the government to terminate employees without due process and evade accountability by simply declaring that reinstatement would cause irreparable injury.

### 3. The issuance of a stay will substantially injure Plaintiff.

In arguing that the issuance of a stay will not cause substantial injury to Plaintiff, Defendant once again argues that "Plaintiff has no due process right to not be placed on paid administrative [leave] . . . [n]or does she have a first amendment right to be able to talk to other WCA staff about her employment or the investigation[.]" (Doc. 29), at 12. Again, these points are irrelevant. Plaintiff's rejection of paid administrative leave and assertion of a first amendment right concerns the scope of injunctive relief, not a constitutional entitlement. The only constitutional entitlement at issue here is Plaintiff's right to procedural due process, which Plaintiff has yet to receive.

With that in mind, the injury to Plaintiff is substantial. Throughout this litigation, Plaintiff maintained that a preliminary injunction was necessary to prevent irreparable harm to Plaintiff, namely, the violation of Plaintiff's constitutional rights. "Most courts consider the infringement of a constitutional right enough and require no further showing of irreparable injury." *Free the Nipple*, 916 F.3d at 805–06 (finding that equal protection violation alone constituted irreparable harm); *see also Awad v. Ziriax*, 670 F.3d 1111, 1119 (10th Cir. 2012) (finding First Amendment violation alone constituted irreparable harm); 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2948.1 (3d ed.) ("When an alleged deprivation of a constitutional right is involved, such as the right to free speech or freedom of religion, most courts hold that no further showing of irreparable harm is necessary.").

If the Court stays its preliminary injunction, it will enable the Defendant's ongoing violation of Plaintiff's constitutional rights. This is sufficient to show substantial injury. But Plaintiff faces more than just constitutional injury—Plaintiff also faces the loss of her reputation, the loss of her livelihood, and the loss of social benefits that accrue from employment. *See Dominion Video Satellite*, 269 F.3d at 1156–57 (finding irreparable harm where denial of injunctive relief would have resulted in the plaintiff's loss of reputation, good will, and marketing potential); Wright et al., § 2948.1 ("Injury to reputation or goodwill is not easily measurable in monetary terms, and so often is viewed as irreparable."). These losses have only grown more painful with each passing day that Plaintiff has been deprived of her position, and they will continue if this Court stays the preliminary injunction. Although Plaintiff remains confident that the Tenth Circuit will affirm the preliminary injunction, the duration of the appeal—including briefing and the possibility of oral argument—will likely take a significant amount of time. The Court should maintain the injunction during the pendency of the appeal.

### 4. The public interest lies in the vindication of Plaintiff's constitutional rights.

The Tenth Circuit has repeatedly held that "[i]t is always in the public interest to prevent the violation of a party's constitutional rights." *Pryor*, 99 F.4th at 1243 (Carson, J.); *Free the Nipple*, 916 F.3d at 792; *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1147 (10th Cir. 2013), *aff'd sub nom. Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014); *Awad*, 670 F.3d at 1132. Accordingly, in this case, it is in the public interest to deny Defendant's Motion for Stay, which will undeniably delay the continuing violation of Plaintiff's constitutional rights.

Defendant points out that "Plaintiff's entire caseload has already been reassigned to other WCA judges" and that reinstating Plaintiff "only for her to potentially be placed back on paid administrative leave and ultimately terminated" would create confusion and disruption. (Doc. 29),

at 12. As argued above, these points were not raised in Defendant's prior briefing, and this Court should not consider them. And, as argued above, logistical challenges are a foreseeable consequence of any unlawful termination. More importantly, Defendant's argument is concerning. In the absence of an order from this Court or the Tenth Circuit, Defendant has no authority to place Plaintiff on administrative leave prior to resolution of this matter on the merits. *See* (Doc. 26), at 15 ("Defendant is specifically required to reinstate Plaintiff to her position as a WCJ as she served prior to her termination pending the resolution of this case on the merits.").

## CONCLUSION

For the reasons argued above, Plaintiff respectfully requests this Court deny Defendant's Motion to Stay and preserve the Preliminary Injunction (which requires full reinstatement and permits Plaintiff to resolve cases) pending resolution of this case on the merits.

Respectfully submitted,

KENNEDY, HERNANDEZ & HARRISON, P.C.

*/s/ Jeffrey D. Vescovi*
Jessica M. Hernandez
Paul J. Kennedy
Elizabeth A. Harrison
Jeffrey D. Vescovi
201 Twelfth Street Northwest
Albuquerque, New Mexico 87102
(505) 842-8662

*Attorneys for Plaintiff*

I hereby certify that a true copy of the foregoing was served electronically on June 2, 2025, through the CM/ECF system, which caused all parties or counsel of record to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

<u>/s/ Jeffrey D. Vescovi</u>
Jeffrey D. Vescovi