## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**SHANON S. RILEY,**

        **Plaintiff,**

**v.**　　　　　　　　　　　　　　**No. 1:25-cv-00044-KWR-KK**

**HEATHER JORDAN, in her individual
and official capacities as the Director
of the New Mexico Workers'
Compensation Administration,**

        **Defendant.**

### PLAINTIFF'S MOTION FOR PARTIAL
### SUMMARY JUDGMENT AS TO COUNTS I AND IV

    Plaintiff Shanon S. Riley, by and through her counsel of record, Kennedy, Hernandez & Harrison, P.C., respectfully moves the Court to enter final judgment on Plaintiff's claims under 42 U.S.C. § 1983 for procedural due process violations against Defendant Jordan in her individual capacity (Count I) and to order permanent injunctive relief against Defendant Jordan in her official capacity (Count IV).

### STATEMENT OF UNDISPUTED MATERIAL FACTS

    1.    Plaintiff Shanon S. Riley served as a Workers' Compensation Judge (WCJ) for the Workers' Compensation Administration (WCA). *Compare* Complaint (Doc. 1), filed Jan. 14, 2025, at 4, *with* Defendant's Emergency Motion for Stay Pending Appeal or Clarification (Doc. 29), filed May 16, 2025, at 3.

    2.    In August of 2011, Plaintiff was appointed to an initial one-year term as a WCJ. (Doc. 7-1), filed Feb. 6, 2025, at 1.

    3.    Plaintiff was reappointed to subsequent five-year terms in August 2012 and August 2017. *Id.*

4.      Based on a "review of [her] performance," Plaintiff was appointed to her most current five-year term in August of 2022. *Id.* at 3.

5.      On November 5, 2024, Plaintiff took two hours of voting leave to vote in the November 5, 2024, election. *Compare* Motion for Preliminary Injunction (Doc. 2), filed Jan. 14, 2025, at 1–2, *with* (Doc. 29), at 3.

6.      For a variety of reasons, Plaintiff was unable to vote as intended, and she did not edit her timesheet to reflect that she did not vote. *Compare* (Doc. 2), at 2, *with* (Doc. 29), at 3.

7.      At the time, Plaintiff had accrued over 200 hours of annual leave and over 240 hours of sick leave that she could have used to substitute the two hours of administrative voting leave. *See* Joint Status Report and Provisional Discovery Plan (Doc. 19), filed Apr. 14, 2025, at 3, ¶ 4.

8.      On November 13, 2024, Defendant Heather Jordan, Director of the WCA, asked Plaintiff if she voted on Election Day. *Compare* (Doc. 2), at 2, *with* (Doc. 29), at 3.

9.      Plaintiff responded that she did not and that she simply forgot to edit her timesheet. *Compare* (Doc. 2), at 2, *with* (Doc. 29), at 3.

10.     After Plaintiff responded that she did not vote, Defendant handed Plaintiff a letter immediately terminating her employment. *Compare* (Doc. 2), at 2, *with* (Doc. 29), at 3; Termination Letter (Doc. 35-1), filed June 2, 2025.

11.     The letter stated that Plaintiff "entered two (2) hours of Voting leave for purposes of voting" into her timesheet but "did not vote." (Doc. 35-1). According to the letter, "Such conduct is a violation of the code of judicial conduct, which requires [Plaintiff] to promote integrity and to 'avoid impropriety and the appearance of impropriety.'" *Id.*

12.     Prior to delivering the termination letter, Defendant did not submit a complaint to the State Personnel Board, Defendant did not provide Plaintiff with a hearing, and Defendant did

not comply with any other required procedure under the New Mexico Administrative Code. *See* (Doc. 19), at 3, ¶ 6.

## <u>LEGAL ARGUMENT</u>

### I.    Jurisdiction

As a preliminary matter, this Court retains jurisdiction to grant summary judgment, despite Defendant's pending interlocutory appeal. In *Free Speech v. Federal Election Commission*, the Tenth Circuit affirmed the district court's grant of a dispositive motion to dismiss during the pendency of the plaintiff's preliminary injunction appeal. 720 F.3d 788, 792 (10th Cir. 2013). The court reasoned that "[o]rdinarily an interlocutory injunction appeal under [28 U.S.C. §] 1292(a)(1) does not defeat the power of the trial court to proceed further with the case." *Id.* at 791 (quoting 16 C. Wright, A. Miller, E. Cooper, *Federal Practice and Procedure* § 3921.2 (hereinafter "Wright & Miller")). So, "in an appeal from an order granting or denying a preliminary injunction, a district court may nevertheless proceed to determine the action on the merits." *Id.* (quoting *United States v. Price*, 688 F.2d 204, 215 (3d Cir. 1982)); *see also Pueblo of Pojoaque v. State*, 233 F. Supp. 3d 1021, 1089 (D.N.M. 2017) (Browning, J.) (reiterating Tenth Circuit's holding and analysis in *Free Speech*).

While the *Free Speech* court considered a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6), 720 F.3d at 791, several other circuits have also affirmed the district court's ability to grant summary judgment pursuant to Fed. R. Civ. P. 56 during the pendency of a preliminary injunction appeal. *See Moltan Co. v. Eagle-Picher Indus., Inc.*, 55 F.3d 1171, 1174–75 (6th Cir. 1995); *Royal Ins. Co. of Am. v. Quinn-L Capital Corp.*, 3 F.3d 877, 883 (5th Cir. 1993); *N.Y. State Nat. Org. for Women v. Terry*, 886 F.2d 1339, 1349–50 (2d Cir. 1989); *State of Ala. v. U.S. E.P.A.*,

871 F.2d 1548, 1553–54 (11th Cir. 1989). Accordingly, there is overwhelming authority supporting the Court's exercise of jurisdiction over this motion.

## II.     Summary Judgment

Under Federal Rule of Civil Procedure 56(a), to succeed on a motion for summary judgment, the movant must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is material only where it is capable of influencing the outcome of the lawsuit. *Mauldin v. Driscoll*, 136 F.4th 984, 993 (10th Cir. 2025). And a dispute is genuine only where "a rational jury could find in favor of the nonmovant on the evidence presented." *Id.*

### A.  Count I: Constitutional Violations of Plaintiff's Procedural Due Process Against Defendant Jordan in her Individual Capacity

"In order to prevail on a § 1983 claim, a plaintiff must establish that the defendants acted under color of state law and that the defendants' actions deprived the plaintiff of some federal right." *Montgomery v. City of Ardmore*, 365 F.3d 926, 935 (10th Cir. 2004). A defendant acts "under color of state law" when she exercises power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)). "State employment is generally sufficient to render the defendant a state actor." *Id.* (citation omitted). It is undisputed that Defendant was the director of the WCA, *UMF No. 8*, and Defendant used her position as Director to terminate Plaintiff's employment, *UMF Nos. 10–11*. Clearly then, Defendant acted under color of state law, and the only remaining issue is whether Defendant deprived Plaintiff "of some federal right." *Montgomery*, 365 F.3d at 935.

1.    **Plaintiff held a constitutionally protected property interest in her continued employment with the WCA.**

The Fourteenth Amendment prohibits state actors from depriving "any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV, § 1. Thus, to prevail on a procedural due process claim, a plaintiff must first establish that the defendant deprived the plaintiff of a protected property interest. *Teigen v. Renfrow*, 511 F.3d 1072, 1078 (10th Cir. 2007). The property interest must arise from the plaintiff's "legitimate claim of entitlement" to the benefit, rather than an abstract desire or expectation. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). Generally, state law creates the protected property interest, and "federal constitutional law determines whether that interest rises to the level of a legitimate claim of entitlement protected by the Due Process Clause." *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 757 (2005) (internal quotation marks and citation omitted).

The Supreme Court and Tenth Circuit have consistently held that a state employee obtains a protected property interest in continued employment where state law limits the grounds for termination to just cause. For example, in *Cleveland Bd. of Educ. v. Loudermill*, the Supreme Court concluded that state employees had a property interest in continued employment where Ohio law entitled state employees to retain their positions "during good behavior and efficient service" and permitted dismissal of these employees only when they committed "misfeasance, malfeasance, or nonfeasance in office[.]" 470 U.S. 532, 538–39 (1985); *see also Perry v. Sindermann*, 408 U.S. 593, 600 (1972) (finding professor had a protected property interest in continued employment where faculty handbook provided de facto tenure so long as professor's "teaching services are satisfactory and as long as he displays a cooperative attitude toward his co-workers"). Similarly, the Tenth Circuit held that state employees had a protected property interest in continued employment where the Colorado Constitution limited the state's ability to dismiss employees to

5

instances of "failure to comply with standards of efficient service . . . willful misconduct . . . or final conviction of a felony[.]" *Tiegen*, 511 F.3d at 1079; *see also Hennigh v. City of Shawnee*, 155 F.3d 1249, 1253 (10th Cir. 1998) ("This court has held that if state statutes or regulations place substantive restrictions on a government actor's ability to make personnel decisions, then the employee has a protected property interest.").

Here too, state law clearly limited Plaintiff's dismissal to violations of the Code of Judicial Conduct. Under NMSA 1978, Section 52-5-2(C), "[v]iolation of those canons shall be *exclusive* grounds for dismissal prior to the expiration of the term." And even if an alleged violation occurred, Section 52-5-2(C) requires that "[a]ny complaints against a workers' compensation judge shall be filed with the state personnel board, which shall report its findings to the director." Furthermore, the New Mexico Administrative Code entitled Plaintiff to elaborate hearing procedures, including the "right and reasonable opportunity to defend against the charges by introduction of evidence, to be represented by counsel and to examine and cross-examine witnesses." 1.7.12.25(G)(4) NMAC. These procedures narrowed the possible bases for termination and secured Plaintiff's right in her continued employment. The "constitutional purpose" of procedure "is to protect a substantive interest to which the individual has a legitimate claim of entitlement." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *see also Teigen*, 511 F.3d at 1072 ("[D]etailed and extensive procedural requirements may be relevant as to whether a separate substantive property interest exists[.]"). Thus, Plaintiff had a protected property interest in continued employment with the WCA. By terminating Plaintiff, Defendant deprived her of her constitutionally protected legitimate claim of entitlement to continue working as a WCJ.

> **2.    Defendant terminated Plaintiff's property interest without affording Plaintiff notice and an opportunity to be heard.**

"An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Loudermill*, 470 U.S. at 542 (citation omitted). While "procedural due process often requires confrontation and cross-examination of those whose word deprive a person of his [or her] livelihood[,]" *Willner v. Comm. on Character*, 373 U.S. 96, 103 (1963), "[t]he essential requirements of due process . . . are notice and an opportunity to respond[,]" *Loudermill*, 470 U.S. at 546. Thus, a "tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Id.*

Although Defendant's termination letter presented Plaintiff with written notice of the charges against her, Plaintiff did not receive an explanation of the WCA's evidence or an opportunity to present her side of the story. *UMF Nos. 8–12*. Defendant's termination letter alleged that Plaintiff violated the Code of Judicial Conduct, but the letter completely failed to explain in any detail why Plaintiff's conduct failed to "promote integrity" or avoid the appearance of impropriety. *UMF No. 11*; (Doc. 35-1). Had Plaintiff been provided with an opportunity to respond to the allegations, she could have explained in detail why she did not vote and that her failure to correct her timesheet was a simple mistake—not a violation of the Code of Judicial Conduct. Despite the elaborate administrative procedures laid out by the New Mexico Administrative Code for the termination of WCJs, not a single procedure was followed by the WCA to terminate Plaintiff. *UMF No. 12*. In addition to terminating Plaintiff's protected property interest in her continued employment with the WCA, there is no question—and no dispute—that Defendant clearly failed to provide Plaintiff with constitutionally adequate procedure. Accordingly, based on

the undisputed facts and as a matter of law, Defendant violated Plaintiff's right to procedural due

process under the Fourteenth Amendment to the United States Constitution.

### B.  Count IV: Permanent Injunctive Relief Against Defendant Jordan in her Official Capacity

This Court previously granted Plaintiff's Motion for Preliminary Injunction because

Plaintiff showed "(1) a substantial likelihood of prevailing on the merits; (2) irreparable harm

unless the injunction is issued; (3) that the threatened injury outweighs the harm that the

preliminary injunction may cause the opposing party; and (4) that the injunction, if issued, will not

adversely affect the public interest." Amended Memorandum Opinion and Order Granting

Plaintiff's Motion for Preliminary Injunction (Doc. 26), filed May 9, 2025, at 3–4, 6–10, 12–14

(quoting *Dine Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1281 (10th Cir.

2016)).[1] Now, Plaintiff respectfully requests that the Court convert its standing preliminary

injunction into a permanent injunction.

In its Order granting Plaintiff's Preliminary Injunction, this Court noted a recent Tenth

Circuit decision holding that "an injunction is mandatory when it requires defendants to do

something they were not doing during the most recent peaceable status quo—that is, the last

uncontested period preceding the injunction." (Doc. 26), at 5 n.1 (quoting *Pryor v. School Dist.

No. 1*, 99 F.4th 1243, 1255 (10th Cir. 2024) (Carson, J.). The Court reasoned that, based on this

---

[1] Plaintiff believes Defendant is in violation of the Court's standing preliminary injunction. On May 9, 2025, the Court issued its injunction and directed Defendant "to reinstate Plaintiff to her position as a WCJ as she served prior to her termination pending the resolution of this case on the merits." (Doc. 26), at 15. Not until May 30, 2025, did Defendant provide Plaintiff with the necessary paperwork for reinstatement. As of June 2, 2025, Plaintiff has not been reinstated, and Plaintiff has not received back pay for the duration of her wrongful unemployment. Plaintiff's counsel has conferred with Defendant's counsel in good faith on this issue, but it is Plaintiff's understanding that Defendant refuses to assign cases to Plaintiff and refuses to provide back pay until the appeal of the preliminary injunction is resolved. In other words, Plaintiff will be reinstated (at some point) and paid going forward, but she will have no work to do. While Plaintiff understands there may be logistical issues with assigning and reassigning cases, those issues do not override the Court's order to restore the status quo. Defendant must allow Plaintiff to adjudicate cases as she did prior to her termination.

decision, "one could argue that requiring Defendant to restore Plaintiff to her position does not 'disturb the last peaceable status quo.'" *Id.* Admittedly, Plaintiff—in the interest of transparency—initially argued that she was requesting "a disfavored, mandatory preliminary injunction" because the requested injunction "'require[d] the nonmoving party to take affirmative action'—that is, the preliminary reinstatement of Plaintiff pending resolution of the case on the merits." (Doc. 2), at 4 (quoting *Little v. Jones*, 607 F.3d 1245, 1251 (10th Cir. 2010)). Upon consideration of this Court's order and the reasoning in *Pryor*, Plaintiff agrees with this Court that the injunction sought is neither disfavored nor mandatory.

In *Pryor*, a high school football coach was stripped of his coaching position and facility access in retaliation for criticizing the local school district. 99 F.4th at 1248. The coach sued the school district and requested injunctive relief, which the district court granted. *Id.* at 1249. In affirming the district court, the Tenth Circuit rejected the school district's argument that the requested injunction was mandatory because it mandated action by the school district. *Id.* at 1254–55. Instead, the court reasoned that the injunction was not mandatory because it preserved the last peaceable status quo by preventing the school district from taking additional unconstitutional actions. *Id.* at 1255. "[T]he last peaceable status quo existed *before* the Restrictions[.]" *Id.*

Like the plaintiff's requested injunction in *Pryor*, Plaintiff requests an injunction prohibiting unconstitutional actions by Defendant, namely, termination without adequate process. In this case, the last peaceable status quo existed *before* Plaintiff was terminated without due process of law. Therefore, like the coach in *Pryor*, Plaintiff does not request a mandatory injunction but merely attempts to preserve the status quo. This Court should decline to apply the heightened standard of proof for mandatory injunctions.[2] While Plaintiff acknowledges she initially suggested

---

[2] Even if the Court continues to apply the heightened standard, Plaintiff has presented sufficient evidence to succeed under any standard.

application of the erroneous standard, ultimately "a district court must apply the correct law." *United States v. Courtney*, 816 F.3d 681, 686 (10th Cir. 2016); *see also Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 ("When an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law."); *United States v. Alvarez*, 646 F. App'x 619, 620 (10th Cir. 2016) ("The district court has an obligation to apply the correct law . . . .").

### 1.     Plaintiff has shown actual success on the merits.

The standard for a permanent injunction is essentially the same as the standard for a preliminary injunction, with the exception that the plaintiff must show actual success on the merits rather than a substantial likelihood of success. *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12 (1987); *Ute Indian Tribe of the Uintah & Ouray Reservation v. Lawrence*, 22 F.4th 892, 908 (10th Cir. 2022) ("The only measurable difference between the two is that a permanent injunction requires showing actual success on the merits, whereas a preliminary injunction requires showing a substantial likelihood of success on the merits." (cleaned up)). As discussed in the previous section, the undisputed facts show that Plaintiff has proved the existence of a constitutional violation as a matter of law. If this Court agrees, that will be sufficient to show actual success on the merits. The only remaining issues are whether Plaintiff can demonstrate "(2) irreparable harm unless the injunction is issued; (3) that the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) that the injunction, if issued, will not adversely affect the public interest." (Doc. 26), at 3–4 (quoting *Dine Citizens*, 839 F.3d at 1281).

2.    **Plaintiff will face irreparable harm unless the permanent injunction is issued.**

Under the second permanent injunction factor, Plaintiff must prove "irreparable harm unless the injunction is issued[.]" *Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818, 822 (10th Cir. 2007) (quoting *Fisher v. Okla Health Care Auth.*, 335 F.3d 1175, 1180 (10th Cir. 2003)) "A plaintiff suffers irreparable injury when the court would be unable to grant an effective monetary remedy after a full trial because such damages would be inadequate or difficult to ascertain." *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269 F.3d 1149, 1156 (10th Cir. 2001). "Most courts consider the infringement of a constitutional right enough and require no further showing of irreparable injury." *Free the Nipple-Fort Collins v. City of Fort Collins*, 916 F.3d 792, 805–06 (10th Cir. 2019) (finding that equal protection violation alone constituted irreparable harm); *see also Awad v. Ziriax*, 670 F.3d 1111, 1119 (10th Cir. 2012) (finding First Amendment violation alone constituted irreparable harm); 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2948.1 (3d ed.) ("When an alleged deprivation of a constitutional right is involved, such as the right to free speech or freedom of religion, most courts hold that no further showing of irreparable harm is necessary.").

As argued above, Plaintiff has shown actual success on her procedural due process claim. Therefore, the infringement of Plaintiff's constitutional right alone is sufficient to demonstrate irreparable injury. *See Free the Nipple*, 916 F.3d at 805–06. But Plaintiff can also show irreparable harm based on the damage to her reputation and credibility, the loss of her livelihood, and the loss of social benefits that accrue from employment. *See Dominion*, 269 F.3d at 1149 (holding that "no remedy could repair the damage to . . . reputation and credibility."). If an injunction is not granted, Plaintiff will have to explain her termination to future employers, colleagues, and other members of the bar. This particular harm would be exacerbated by the small size of the New Mexico and

11

Albuquerque legal communities, where reputation has a disproportionate impact on success and employment. *See* (Doc. 26), at 13 ("Defendant does not dispute this in any of her pleadings."). But Plaintiff will also lose access to the career she has had for nearly 14 years, along with the tangible and intangible benefits that accompany her career. This includes work-based friendships, the satisfaction of adjudicating cases, and Plaintiff's eligibility for retirement.

### 3. The irreparable harm Plaintiff faces from the alleged injury outweighs the harm caused to Defendant by the permanent injunction.

Under the third factor, Plaintiff must prove that "the threatened injury outweighs the harm that the injunction may cause the opposing party[.]" *Prairie Band*, 476 F.3d at 822 (quoting *Fisher*, 335 F.3d at 1180). "When a constitutional right hangs in the balance," as it does here, "'even a temporary loss [of that right]' usually trumps any harm to the defendant." *Free the Nipple*, 916 F.3d at 806 (quoting Wright & Miller, § 2948.2 & n.11); *see also Pryor*, 99 F.4th at 1254 ("A governmental interest in upholding a mandate that is likely unconstitutional does not outweigh a movant's interest in protecting his constitutional rights."). In *Free the Nipple*, for instance, the plaintiffs showed that the harm accompanying the deprivation of their equal protection right "to bare their breasts in public" outweighed "the City's interest in maintaining a law that was supported by the majority of its citizens and unanimously adopted by its City Council." *Id.* Here too, Plaintiff's ongoing loss of her constitutional right to procedural due process clearly outweighs any interest articulated by the WCA.

Even assuming, however, that the loss of Plaintiff's constitutional rights alone is insufficient, there is little, if any, harm to the Defendant if the court reinstates Plaintiff. While Plaintiff faces the loss of her livelihood, reputation, wages, and benefits if an injunction is not issued, Defendant would merely be required to reinstate an otherwise excellent WCJ. Plaintiff has worked for the WCA since 2011—she has nearly fourteen years of experience. *UMF No. 2*. Her

performance was evaluated at the end of every term, in 2012, 2017, and 2022, and each time, the WCA chose to retain her. *UMF Nos. 3–4*. Even Plaintiff's termination letter was silent on her performance as a WCJ. *See* (Doc. 35-1).

On this issue, the Declaration of Heather Jordan (Doc. 34), filed May 27, 2025, does not help Defendant. The Declaration merely discusses logistical challenges accompanying Plaintiff's reinstatement that were totally foreseeable to Defendant. And Defendant's parade of horribles is speculative at best. *See* (Doc. 34), at 2, ¶ 11 ("To the extent a party has already exercised their peremptory right of recusal, the party *may* be foreclosed from attempting a recusal . . . . The reassignment *could* also *potentially* trigger a party to seek recusal . . . ."), *id.* ¶ 13 ("[P]rejudice to the parties is *likely* to occur . . . ."), *id.* at 3, ¶ 14 ("It will be *near* impossible for both Plaintiff . . . and the undersigned to work collaboratively . . . ."). What's more, allowing the government to claim that it is injured by logistical challenges when it *created* those challenges would incentivize the government to terminate employees without due process and evade accountability by simply declaring that reinstatement would be injurious.

### 4.    A permanent injunction will not adversely affect the public interest.

Under the final permanent injunction factor, Plaintiff must prove that "the injunction, if issued, will not adversely affect the public interest." *Prairie Band*, 476 F.3d at 822 (quoting *Fisher*, 335 F.3d at 1180). The Tenth Circuit has repeatedly held that "[i]t is always in the public interest to prevent the violation of a party's constitutional rights." *Pryor*, 99 F.4th at 1243 (Carson, J.); *Free the Nipple*, 916 F.3d at 792; *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1147 (10th Cir. 2013), *aff'd sub nom. Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014); *Awad*, 670 F.3d at 1132. Accordingly, a permanent injunction will not adversely affect the public interest here.

## CONCLUSION

For the reasons argued above, Plaintiff respectfully moves this Court to enter judgment on Count I in favor of Plaintiff. Upon the Court's entry of judgment as to Count I, Plaintiff respectfully requests that the Court enter a permanent injunction[3] (1) fully reinstating Plaintiff to her position, (2) ordering Defendant's continued compliance with constitutional, statutory, and administrative requirements for the duration of Plaintiff's five-year term of employment as a WCJ, and (3) ordering that Defendant provide back pay to Plaintiff for the period beginning with the first day of Plaintiff's termination through her reinstatement. Plaintiff also requests that the district court retain jurisdiction over this matter in the event that modification of the permanent injunction becomes necessary to further safeguard Plaintiff's constitutional rights and to prevent retaliation.

Respectfully submitted,

KENNEDY, HERNANDEZ & HARRISON, P.C.

*/s/ Jeffrey D. Vescovi*
Jessica M. Hernandez
Paul J. Kennedy
Elizabeth A. Harrison
Jeffrey D. Vescovi
201 Twelfth Street Northwest
Albuquerque, New Mexico 87102
(505) 842-8662

*Attorneys for Plaintiff*

---

[3] If the Court finds that permanent injunctive relief is proper based on the success of Plaintiff's procedural due process claim, Plaintiff is willing to abandon her substantive due process claim if it interferes with or bars the Court's entry of a permanent injunction.

14

I hereby certify that a true copy of the foregoing was served electronically on June 2, 2025, through the CM/ECF system, which caused all parties or counsel of record to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

_/s/ Jeffrey D. Vescovi_
Jeffrey D. Vescovi

15