## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

SHANON S. RILEY,

      *Plaintiff,*

v.                                   No. 1:25-cv-00044-KWR-KK

HEATHER JORDAN, in her individual
and official capacities as the Director
of the New Mexico Workers'
Compensation Administration,

      *Defendant.*

### RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION
### FOR PARTIAL SUMMARY JUDGMENT AS TO COUNTS I AND IV

      Defendant Heather Jordan, in her individual and official capacities, by and through her counsel of record, hereby respectfully submits this Response in Opposition to Plaintiff's Motion for Partial Summary Judgment as to Counts I and IV (Doc. 36).

### Introduction

      Plaintiff came to this Court claiming that she was dismissed without adequate due process. Plaintiff was mistaken. Regardless, Plaintiff is now receiving the very remedy she requested (and could have received it much sooner had she not rejected Defendant's efforts to provide her with the process she demanded at the beginning of this case). The Court should deny Plaintiff's motion for three reasons. First, Plaintiff's claims for injunctive relief against Defendant in her official capacity are barred by sovereign immunity because there is no ongoing violation of federal law now that Plaintiff has been reinstated and will receive the process she wanted. Second, Plaintiff's procedural due process claims fail on the merits because Defendant provided her with adequate

pre-deprivation due process and a meaningful post-deprivation remedy is available. Lastly, Plaintiff's claims against Defendant in her individual capacity are barred by qualified immunity.

## **Response to Plaintiff's Statement of Undisputed Material Facts**

1.    Defendant does not dispute Plaintiff's statement of undisputed material facts in paragraph 1.

2.    Defendant does not dispute Plaintiff's statement of undisputed material facts in paragraph 2.

3.    Defendant does not dispute Plaintiff's statement of undisputed material facts in paragraph 3.

4.    Defendant does not dispute Plaintiff's statement of undisputed material facts in paragraph 4.

5.    Defendant does not dispute Plaintiff's statement of undisputed material facts in paragraph 5.

6.    Defendant does not dispute that Plaintiff did not vote and did not edit her timesheet to reflect that she did not vote. Defendant disputes Plaintiff's explanation for why she did not vote, which has yet to be finally determined. *See generally* Declaration of Heather Jordan, attached as Exhibit A. However, this fact is not material for purposes of the instant motion.

7.    Defendant does not dispute Plaintiff's statement of undisputed material facts in paragraph 7.

8.    Defendant does not dispute Plaintiff's statement of undisputed material facts in paragraph 8.

9.      Defendant does not dispute that Plaintiff eventually admitted she did not vote. Defendant does not recall whether Plaintiff explained that "she simply forgot to edit her timesheet." *See* Exhibit A at ¶ 11. However, Defendant does not dispute this for purposes of this motion.

10.     Defendant does not dispute that she handed Plaintiff a letter terminating her employment immediately. However, Defendant disputes Plaintiff's recollection of the meeting to the extent it differs from hers. *See* Exhibit A at ¶ 11.

11.     Defendant does not dispute Plaintiff's statement of undisputed material facts in paragraph 11.

12.     Defendant does not dispute Plaintiff's statement of undisputed material facts in paragraph 12 to the extent it is referring to procedures associated with the New Mexico Administrative Code. Defendant disputes that she did not provide Plaintiff with a "hearing" in the general sense of the word. Exhibit A at ¶ 11.

**Defendant's Statement of Additional Undisputed Material Facts**

1.      Plaintiff "certified" that the time sheet she submitted showing that she took voting leave was "true and accurate." Exhibit A at ¶ 6.

2.      Plaintiff never amended her time sheet to remove the two hours of voting leave. Exhibit A at ¶ 7.

3.      New Mexico State Personnel Office Interpretive Memorandum 2024-001 (the "Memorandum"), which interprets the State Personnel Board rules and the New Mexico Administrative Code provisions governing the granting of administrative leave for voting, provides that "[e]mployees who are registered voters may absent themselves from work for two hours for the purpose of voting[.]" Exhibit A at ¶ 8.

4.      The Memorandum further states that "[u]se of administrative leave for voting may be audited. Employees who abuse administrative leave for voting may be disciplined, up to and including dismissal." Exhibit A at ¶ 9.

5.      On November 12, 2024, Defendant Heather Jordan, Director of the WCA, was informed that a review of public records showed that Plaintiff did not vote in the November 5, 2024, election. Exhibit A at ¶ 10.

6.      On November 13, 2024, WCA general counsel Michael Holt and Defendant met with Plaintiff and asked her if she voted on Election Day. Plaintiff initially responded that she left Election Day at 3 p.m. to vote. Defendant then asked Plaintiff if she could provide any proof of voting. Plaintiff asked if video footage from the voting location would work. Defendant responded that Plaintiff would have to provide proof from the County Clerk's office. Plaintiff then asked what would happen if she could not show such proof. Defendant informed her that she would be dismissed if she could not provide proof from the County Clerk's office. Plaintiff thought for a second and then told Defendant to go ahead and give her the termination letter. Defendant then handed her the letter, they ended the meeting, and walked her to the exit door without further discussion or questions. *Id.* at ¶ 11; (Doc. 36 at 2 ¶¶ 8-10)

7.      The meeting with Plaintiff lasted approximately fifteen to twenty minutes. Exhibit A at ¶ 13.

8.      On November 20, 2024, Plaintiff filed a notice of appeal of termination with the State Personnel Board regarding her dismissal from the WCA. (Doc. 1 at 6 ¶ 32)

9.      On November 25, 2024, the State Personnel Board issued an order of dismissal. The order stated, "[t]his forum is not aware of a complaint to the Board, which was filed against

the Appellant." As no complaint had been filed, the appeal was dismissed for lack of jurisdiction. (Doc. 1 at 6 ¶ 33)

13.     Plaintiff did not ask Defendant or anyone at the WCA if they would submit a complaint so the State Personnel Board would have jurisdiction prior to filing the instant action. Exhibit A at ¶ 14.

10.     On January 14, 2025, Plaintiff filed the instant action. (Doc. 1)

11.     On February 4, 2025, the WCA submitted a complaint regarding Plaintiff's false reporting of voting leave and corresponding violation of the code of judicial conduct to the State Personnel Board. Exhibit A at ¶ 15.

12.     On February 6, 2025, the WCA offered to reinstate Plaintiff and place her on paid administrative leave pending the outcome of the State Personnel Board proceedings. The offer contained "governor exempt" language typically contained in similar forms that provided: "as an at-will exempt employee, you will serve at the pleasure of the Office of the Governor."  It also specified that Plaintiff was "not to contact any member of the [WCA] staff, other than Cathy Farrell, while [she is] on paid administrative leave." *Id.* at ¶ 16.

13.     On February 14, 2025, Plaintiff rejected Defendant's offer of reinstatement, asserting that it varied substantively from her original employment and that its restrictions on communication violated her First Amendment rights. (Doc. 10-1; Doc. 10-2)

14.     On February 17, 2025, Plaintiff filed a motion to dismiss with the State Personnel Board, requesting that the WCA complaint be dismissed because she is no longer an employee since she rejected the offer of reinstatement. (Doc. 10 at 5 n.2)

14.     On February 26, 2025, the WCA sent Plaintiff an updated offer of reinstatement. The updated offer of reinstatement was substantively identical to the first except that the "at-will"

language was replaced with: "As a Workers Compensation Judge, and pursuant to NMSA 1978, Section 52-5-2(C), you are subject to dismissal prior to the expiration of your term of appointment for violations of the Code of Judicial Conduct, except canon 21-900." The updated offer of reinstatement also clarified that Plaintiff was "not to contact any member of the [WCA] staff, other than Cathy Farrell, while you are on paid administrative leave regarding matters related to your employment or the State Personnel Board investigation." Exhibit A at ¶ 17; (Doc. 15 at 8-12)

15.    On March 4, 2025, the State Personnel Board granted Plaintiff's motion to dismiss on the basis that she is no longer a WCA judge and therefore the Board lacked jurisdiction. (Doc. 14-1)

16.    On March 4, 2025, Plaintiff rejected the updated offer of reinstatement. (Doc. 18-1)

17.    On May 9, 2025, the Court granted Plaintiff's request for a preliminary injunction ordering Defendant to reinstate Plaintiff as a workers' compensation judge (Doc. 26)

18.    Defendant subsequently reinstated Plaintiff per the Court's preliminary injunction. Exhibit A at ¶ 18; (Doc. 38-1)

19.    On June 20, 2025, the WCA re-submitted its complaint regarding Plaintiff's false reporting of voting leave and corresponding violation of the code of judicial conduct to the State Personnel Board to initiate the process set out in 1.7.12.25 NMAC. Exhibit A at ¶ 20.

20.    Defendant will not act on Plaintiff's employment with the WCA or her status of being on paid administrative leave as it relates to the instant dispute until further order of the court or conclusion of the State Personnel Board complaint process. *Id.* at ¶ 21.

## Argument & Authorities

### I.     Standard of review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if, under the governing law, it could have an effect on the outcome of the lawsuit." *Smothers v. Solvay Chems., Inc.*, 740 F.3d 530, 538 (10th Cir. 2014) (cleaned up). "A dispute over a material fact is genuine if a rational jury could find in favor of the nonmoving party on the evidence presented." *Id.* (cleaned up). The court must resolve all reasonable inferences and doubts in the nonmoving party's favor, and construe all evidence in the light most favorable to the nonmoving party. *See Hunt v. Cromartie*, 526 U.S. 541, 550-55 (1999).

### II.     Count IV is moot and barred by sovereign immunity

As an initial matter, Plaintiff's claim for injunctive relief against Defendant in her official capacity in Count IV is moot and barred by sovereign immunity. Generally, a suit against a state official in her official capacity is treated as one against the state itself and barred by sovereign immunity. *See Free Speech Coal., Inc. v. Anderson*, 119 F.4th 732, 736 (10th Cir. 2024). Such a suit can proceed only if it "seeks prospective relief for an ongoing violation of federal law." *Id.* (citing *Ex parte Young*, 209 U.S. 123, 159-60 (1908)). The analysis for determining whether this exception applies "overlaps to a significant degree with the analysis of whether the request for injunctive relief has become moot, thereby depriving the plaintiff standing to obtain injunctive relief." *Stanley v. Gallegos*, 2018 WL 3801247, at *6 (D.N.M. Aug. 9, 2018). "The requirement of standing means that a 'plaintiff cannot maintain a[n] injunctive action unless he or she can demonstrate a good chance of being likewise injured in the future.'" *Id.* (quoting *Facio v. Jones*, 929 F.2d 541, 544 (10th Cir. 1991)). "Put another way, because '[t]he purpose of an injunction is

to prevent future violations[,]' Plaintiff must show that 'there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive. . . . To be considered are the bona fides of the expressed intent to comply, the effectiveness of the discontinuance and, in some cases, the character of the past violations.'" *Id.* (quoting *Roe v. Cheyenne Mountain Conference Resort, Inc.*, 124 F.3d 1221, 1230 (10th Cir. 1997)).

Plaintiff can no longer point to any future harm stemming from her complaint that requires injunctive relief. The crux of Plaintiff's suit is that she was purportedly deprived of due process when Defendant terminated her without going through the State Personnel Board hearing process set out in 1.7.12.25 NMAC. (Doc. 1 at 6-12) To this end, Plaintiff requested an injunction "restor[ing] Plaintiff to her position" and "ensur[ing] compliance with constitutional due process requirements." (Doc. 1 at 12)[1] Both of these things have happened: Plaintiff has been reinstated, and she has been given the opportunity to go through the State Personnel Board process since as early as February 4, 2025. *See* Defendant's Statement of Additional Undisputed Material Facts ("Def. UMF") ¶¶ 18-19 Further, will not act on Plaintiff's employment with the WCA or her status of being on paid administrative leave as it relates to the instant dispute until the conclusion of the State Personnel Board complaint process. *Id.* ¶ 20.

Given the foregoing, Plaintiff cannot show that "there exists some cognizable danger of recurrent violation" that requires injunctive relief, *Roe*, 124 F.3d at 1230, and the Court should grant summary judgment in Defendant's favor for Counts III and IV of the Complaint. *See Prison Legal News v. Fed. Bureau of Prisons*, 944 F.3d 868, 886 (10th Cir. 2019) (finding procedural due process claim moot when the defendant affirmed he would provide procedural protections going

---

[1] Plaintiff now additionally requests an injunction "ordering that Defendant provide backpay to Plaintiff" and requiring compliance with state "statutory[] and administrative requirements." (Doc. 36 at 14) However, as explained below, these are clearly barred by sovereign immunity.

forward); *Romero v. Kaiser*, 2023 WL 2351652, at *2 (N.D. Cal. Mar. 3, 2023) (finding procedural due process claim moot after government provided plaintiff with the hearing that he sought in his claim); *Veal v. Jones*, 349 Fed. Appx. 270, 272 (10th Cir. 2009) (finding procedural due process claim moot when plaintiff received the remedy requested); *Park v. City of San Antonio*, 2006 WL 2519503, at *11 (W.D. Tex. Aug. 16, 2006) ("[W]hile the City did violate Plaintiff's procedural due process rights under the Fourteenth Amendment, it has now corrected the problem. Accordingly, the Court finds that a permanent injunction on this issue is unnecessary."); *Ginorio v. Contreras*, 409 F. Supp. 2d 101, 108 (D.P.R. 2006) (observing that the provision of the requested hearing mooted any need for a preliminary injunction); *cf. Wessel v. City of Albuquerque*, 299 F.3d 1186, 1194 (10th Cir. 2002) (holding that plaintiffs failed to show need for permanent injunction when the government defendant issued a corrected notice and committed itself to include the required information in future notices); *see generally Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1118 (10th Cir. 2010) ("[A]lthough governmental defendants might take action as a direct response to litigation, at any rate, self-correction again provides a secure foundation for mootness so long as it seems genuine." (cleaned up)).

## III.    Count I is barred by qualified immunity

Plaintiff's claim against Defendant in her individual capacity for backpay and damages in Count I is barred by qualified immunity.[2] "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."

---

[2] Plaintiff cannot seek any other relief against Defendant in her individual capacity. *See Brown v. Montoya*, 662 F.3 1152, 1161 n.5 (10th Cir. 2011) ("Section 1983 plaintiffs may sue individual-capacity defendants only for money damages and official-capacity defendants only for injunctive relief." (citing *Hafer v. Melo*, 502 U.S. 21, 27, 30 (1991)).

*Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (cleaned up). "When properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (cleaned up).  "When a defendant pleads qualified immunity, the plaintiff has the heavy burden of establishing: (1) that the defendant's actions violated a federal constitutional or statutory right; and (2) that the right violated was clearly established at the time of the defendant's actions." *Greene v. Barrett*, 174 F.3d 1136, 1142 (10th Cir. 1999). "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right. . . . Ordinarily . . . there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Ullery v. Bradley*, 949 F.3d 1282, 1291 (10th Cir. 2020) (cleaned up). As explained below, Plaintiff fails to meet both prongs of the qualified immunity analysis.[3]

"The Tenth Circuit requires a two-step inquiry in determining whether an individual's procedural due process rights were violated." *Riley v. Jordan*, 2025 WL 1375005, at *4 (D.N.M. May 9, 2025) "First, the Court asks whether the individual possesses a protected property or liberty interest to which due process is applicable." *Id.* (citation omitted) "If the party does possess such an interest, the court then asks if the individual was afforded the appropriate level of process." *Id.* (citation omitted). While the Supreme Court has observed that an employee must ordinarily be provided with "notice and opportunity for hearing appropriate to the nature of the case," it has clarified that "[t]he pretermination hearing . . . need not be elaborate." *Cleveland Bd. of Educ. v.*

---

[3] Plaintiff's failure to meet the first prong of the qualified immunity analysis also necessarily defeats any official capacity claim against Defendant. *See Barrow v. Kansas State Univ.*, 2023 WL 10101935, at *5 (10th Cir. Oct. 25, 2023) (explaining that both an official-capacity claim under *Ex Parte Young* and an individual capacity claim requires the plaintiff to prove a violation of her procedural due process rights).

*Loudermill*, 470 U.S. 532, 542, 545 (1985). "The formality and procedural requisites for the hearing can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings." *Id.* (cleaned up).

Here, Plaintiff claims Defendant violated her procedural due process rights when Defendant terminated her without first going through the State Personnel Board hearing process set out in 1.7.12.25 NMAC. (Doc. 1) However, it is undisputed that, at a minimum: (1) Defendant met with Plaintiff and asked her if she voted; (2) Plaintiff eventually admitted she did not vote and had the opportunity to explain that she allegedly simply forgot to edit her timesheet; (3) Defendant handed Plaintiff a letter informing her that actions constituted a violation of the code of judicial conduct and grounds for her termination; (4) Plaintiff did not ask any further questions or request an opportunity to talk more at that time; (5) Plaintiff has had the opportunity to go through the State Personnel Board hearing process since February 4, 2025—which will provide robust procedural due process protections. *See* UMF ¶¶ 8-11; Def. UMF ¶ 11-13, 15-17. The foregoing constituted sufficient due process under *Loudermill*, as Plaintiff received notice and an opportunity to be heard. *See West v. Grand Cnty.*, 967 F.2d 362, 368 (10th Cir. 1992) ("A brief face-to-face meeting with a supervisor provides sufficient notice and opportunity to respond to satisfy the pretermination due process requirements of *Loudermill*." (citing *Powell v. Mikulecky*, 891 F.2d 1454, 1459 (10th Cir. 1989)).

The Tenth Circuit decision in *Powell*, is particularly instructive. There, a fire department chief heard that a firefighter (and union member) had met with officials from neighboring cities' fire departments and requested that they not respond to any calls for mutual aid until a labor dispute was resolved. 891 F.2d at 1455. Shortly after learning this, he met with the firefighter and asked if he had met with the officials from the neighboring cities' fire departments and asked them to not

provide mutual aid. *Id.* When the firefighter responded in the affirmative, the chief "informed [him] that he was discharged, effective immediately." *Id.* After eventually being reinstated, the firefighter filed a § 1983 action claiming his due process rights were violated. *Id.* at 1456. However, the Tenth Circuit concluded the pretermination procedure accorded with *Loudermill* because the firefighter "received oral notice of the charge against him when [the chief] confronted him face-to-face" and the firefighter "had an opportunity to rebut that charge but chose instead to admit to it." *Powell*, 891 F.2d at 1459. Notably, the Court rejected the firefighter's argument that he was not afforded an opportunity to "explain his side of the story" because "once [he] admitted to asking the other Fire Chiefs not to sign the proposed agreement, an opportunity for further explanation would not have contributed to the prevention of an erroneous termination." *Id.* Given the availability of more a robust post-deprivation hearing, the Court concluded "that the manner in which defendants discharged [the firefighter] did not violate his rights under *Loudermill*." *Powell*, 891 F.2d at 1462.[4]

The instant situation is nearly identical to *Powell*. Like the firefighter in that case, Plaintiff "received oral notice of the charge[s] against [her]" (i.e., falsely certifying that she properly took voting leave) when Defendant "confronted [her] face-to-face." *Powell*, 891 F.2d at 1459. And, just like the firefighter, Plaintiff "had an opportunity to rebut that charge but chose instead to admit to it." *Id.* While Plaintiff may have desired an opportunity to elaborate her side of the story beyond her initial excuse, "an opportunity for further explanation would not have contributed to the

---

[4] While the Court indicated it reached this conclusion because the firefighter failed to meet his burden to demonstrate a violation of a clearly established right, the Tenth Circuit has since indicated this conclusion applies equally to the first element of the qualified immunity analysis. *See Riggins v. Goodman*, 572 F.3d 1101, 1109 (10th Cir. 2009) (observing that the *Powell* Court "concluded that the pretermination process 'accorded with the requirements established in *Loudermill*' when an employee was terminated during a meeting after he was asked and admitted to having had unauthorized communications").

prevention of an erroneous termination" because she admitted to the basic facts constituting the misconduct. *Id.* Like the firefighter in *Powell*, Plaintiff has been given the opportunity to receive post-deprivation due process by going through a robust State Personnel Board hearing process set out in 1.7.12.25 NMAC—which includes, *inter alia*, the right to present evidence and call/cross examine witnesses before a neutral hearing officer.[5] (Doc. 7 at 4-5) Accordingly, "the manner in which [Defendant] discharged [Plaintiff] did not violate [her] rights under *Loudermill*." *Powell*, 891 F.2d at 1462.

Even assuming Defendant did not provide Plaintiff with adequate pre-deprivation due process, the availability of meaningful post-deprivation due process defeats her claim. When a deprivation of property is caused by "'a random, unauthorized act by a state employee, rather than by an established state procedure,' . . . . due process is satisfied so long as 'a meaningful post[-]deprivation remedy for the loss is available.'" *Requena v. Roberts*, 893 F.3d 1195, 1212 (10th Cir. 2018) (quoting *Hudson v. Palmer*, 468 U.S. 517, 532-33 (1984)). While Defendant may have authorized Plaintiff's termination, this decision was not made pursuant to an established state procedure. *See Stengel v. New Mexico Corr. Dept.*, 640 Fed. Appx. 701, 704 (10th Cir. 2016) (applying *Hudson* even when the alleged unconstitutional action was authorized by a deputy warden). Indeed, Plaintiff claims Defendant acted in violation of state law. (Doc. 1 ¶¶ 26-27) Accordingly, Plaintiff cannot state a procedural due process claim unless she can show that there

---

[5] That Defendant did not initiate this process before dismissing Plaintiff is of no moment. Even assuming Plaintiff is correct that New Mexico law required this, "a breach of state procedural requirements is not, in and of itself, a violation of the Due Process Clause." *Atencio v. Bd. of Educ. of Penasco Indep. Sch. Dist. No. 4*, 658 F.2d 774, 779 (10th Cir. 1981). Further, this process is now available to Plaintiff, so it is proper for the Court to consider it in determining whether Plaintiff' due process rights have been violated. *See Winters v. Bd. of Cnty. Com'rs*, 4 F.3d 848, 856 (10th Cir. 1993) ("The deprivation of procedural due process is not complete unless and until the state fails to provide adequate constitutionally essential procedures." (citing *Zinermon v. Burch*, 494 U.S. 113, 126 (1990)).

is no meaningful post-deprivation remedy for her loss. *See Requena*, 893 F.3d at 1212-13 ("[Plaintiff] has alleged the donation of his television was in violation of, rather than according to, established procedure. Therefore, he must plead facts showing that his state post-deprivation remedy was inadequate." (cleaned up)); *see also Moore v. Bd. of Cty. Comm'rs of Cty. of Leavenworth*, 507 F.3d 1257, 1260 (10th Cir. 2007) (concluding that a defendant's conduct was "random and unauthorized" when the "Plaintiffs contend[ed] that [the defendant] intentionally violated Department policy by driving so fast to [an] emergency call").

Here, there is at least one meaningful post-deprivation remedy available to Plaintiff. Defendant has provided Plaintiff with the opportunity to go through the State Personnel Board procedure set out in 1.7.12.25 NMAC since early February.[6] Plaintiff does not allege that this process cannot provide her with a meaningful post-deprivation remedy. (Doc. 1; Doc. 36) Indeed, Plaintiff's continued refusal to go through this process compels this Court to reject any argument that it would be inadequate. *See McGee v. Boren*, 58 Fed. Appx. 436, 438 (10th Cir. 2003) ("If there is a process on the books that appears to provide due process, the plaintiff cannot skip that process and use the federal courts as a means to get back what he wants." (quoting *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000)); *see also Giglio v. Dunn*, 732 F.2d 1133, 1135 (2d Cir.1984) (holding plaintiff's failure to avail self of post-deprivation hearings resulted in waiver of due process claim). Nor has Plaintiff alleged that there are no other post-deprivation measures under state law that can provide a meaningful post-deprivation remedy, such as an action for mandamus.

---

[6] Admittedly, this process was not immediately available to Plaintiff because Defendant did not submit a complaint to the State Personnel Board. However, Plaintiff never asked Defendant to submit a complaint before filing the instant action. *See* Def. UMF ¶ 13. Regardless, Defendant made this process available beginning February 4, 2025. (Doc. 8-1) Plaintiff has neither alleged nor argued that the delay in providing her with the opportunity to go through this process violated her due process rights. (Doc. 1; Doc. 36).

*See generally* Complaint; *Rumford Pharmacy, Inc. v. City of E. Providence*, 970 F.2d 996, 999 (1st Cir. 1992) (dismissal appropriate where appellant claimed unreasonable delay amounted to procedural due process violation but failed to allege that state remedies were insufficient (citing *Zinerman*, 494 U.S. at 126)); *Sherwood v. Marchiori*, 76 F.4th 688, 696 (7th Cir. 2023) ("We have often cited mandamus as an adequate post-deprivation remedy available under state law."). Given the foregoing, Plaintiff's procedural due process claim fails. *See Requena*, 893 F.3d at 1212.

Even supposing Plaintiff could show that Defendant violated her procedural due process rights, she cannot show that Defendant violated a *clearly established* right. For starters, it is unclear whether New Mexico law created a protected property interest in Plaintiff's continued employment under the current circumstances. "Property interests are not created by the Constitution, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Loudermill*, 470 U.S. at 538 (cleaned up). "A public employee has a property interest in his continued employment where state or local law creates a sufficient expectancy of continued employment." *McDonald v. Wise*, 769 F.3d 1202, 1210 (10th Cir. 2014) (cleaned up). "Detailed procedures in a state statute or regulation are not, by themselves, sufficient to create a property interest." *Greene*, 174 F.3d at 1140.

Here, the statute that Plaintiff relies on provides: "Workers' compensation judges shall not be subject to the provisions of the Personnel Act[.]" § 52-5-2(B), indicating they are not entitled to the protections provided by that law. True, the statute also provides an exception to this general exception by referring generally to Subsection C, which provides in relevant part:

> A workers' compensation judge shall be required to conform to all canons of the code of judicial conduct as adopted by the supreme court, except canon 21-900 of that code. Violation of those canons shall be exclusive grounds for dismissal prior to the expiration of his term. Any complaints against a workers' compensation judge shall be filed with the state personnel board, which shall report its findings to the director.

Section 52-5-2(C). However, nothing in this provision clearly requires a hearing before the director can dismiss a workers' compensation judge—especially when the grounds for the dismissal arise from an internal and undisputed issue upon which the director (and ultimate decisionmaker) already has firsthand knowledge, as opposed to a complaint stemming from the workers compensation adjudication process. *Cf. State ex rel. Duran v. Anaya*, 1985-NMSC-044, ¶¶ 10-11, 102 N.M. 609, 698 P.2d 882 (holding that board members did not have a protected property interest entitled them to notice and hearing prior to removal despite statute providing that they may only be removed "for the neglect of any duty required by law, for incompetence or for improper or unethical conduct" because the statute did not expressly require this and they were exempted from the Personnel Act). Under these circumstances, Plaintiff cannot demonstrate that Defendant deprived her of a *clearly* established property interest. *See Derda v. City of Brighton, Colo.*, 53 F.3d 1162, 1166 (10th Cir.1995) (reversing the denial of a motion for summary judgment on qualified immunity when "[i]t is at least unclear whether [the state statute] is intended to confer on employees an interest in continued employment").

Plaintiff likewise cannot show that Defendant clearly failed to provide her with sufficient due process. Defendant indisputably provided Plaintiff with pre-deprivation notice and an opportunity to be heard. While the meeting was relatively short, Plaintiff presents no on point decision from the Supreme Court or the Tenth Circuit showing that it was constitutionally inadequate—other than general statements of law, which are insufficient. (Doc. 36 at 7-8); *see Powell*, 891 F.2d at 1457 ("The plaintiff must do more than identify in the abstract a clearly established right and allege that the defendant has violated it." (cleaned up)). On the flipside, Defendants have cited binding Tenth Circuit caselaw showing that it is permissible to terminate an employee after a brief face-to-face meeting when the employee admits the facts forming the basis

for the termination. *See Powell*, 891 F.2d 1454. Plaintiff has also failed to cite any on point Supreme Court or Tenth Circuit case showing that the delay in initiating the State Personnel Board process violated a clearly established due process right. *See Columbian Fin. Corp. v. Stork*, 811 F.3d 390, 402 (10th Cir. 2016) (setting out factors for determining whether delay in providing post-deprivation hearing violated due process and observing that "the balancing of these factors is fact intensive, and a rule of law determined by a balancing of interests is inevitably difficult to clearly anticipate" (cleaned up)). Accordingly, Defendant is entitled to qualified immunity.

## IV.    Proper remedy

Should this Court determine Plaintiff is entitled to injunctive relief, it should not blindly grant Plaintiff's requested relief. Plaintiff requests a permanent injunction:

> (1) fully reinstating Plaintiff to her position, (2) ordering Defendant's continued compliance with constitutional, statutory, and administrative requirements for the duration of Plaintiff's five-year term of employment as a WCJ, and (3) ordering that Defendant provide back pay to Plaintiff for the period beginning with the first day of Plaintiff's termination through her reinstatement.

(Doc. 36 at 14) However, the proper injunctive remedy in this case (if Defendant had not already provided it) is to simply require Defendant to provide Plaintiff with adequate due process before deciding whether to terminate her—not fully reinstate her and allow her to evade any accountability for her actions. *See Brady v. Gebbie*, 859 F.2d 1543, 1551 (9th Cir. 1988) ("[T]he Supreme Court ha[s] repeatedly held that the appropriate remedy for deprivation of a liberty and/or property interest without due process is to order the process that was due and any attendant damages which directly resulted from the failure to give the proper procedure."); *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 616 (6th Cir. 2006) (vacating injunction and ordering hearing to remedy due process violation), *abrogated on other grounds by Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215 (2022); *see generally Citizen Band Potawatomi Indian Tribe of*

*Oklahoma v. Oklahoma Tax Comm'n*, 969 F.2d 943, 948 (10th Cir. 1992) (stating that it is a "well-settled principle that an injunction must be narrowly tailored to remedy the harm shown."); *Brewer v. Chauvin*, 938 F.2d 860, 863 (8th Cir. 1991) (en banc) ("The constitutional injury plaintiff has shown in this case is not the loss of his job, but rather his termination without procedural due process." (cleaned up)). Additionally, the Eleventh Amendment clearly prohibits Plaintiff's request for an injunction ordering backpay. *See Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1232 (10th Cir. 2004) (affirming state's Eleventh Amendment immunity from claim for backpay). The same goes for Plaintiff's request for an injunction requiring compliance with state "statutory[] and administrative requirements." *See Johns v. Stewart*, 57 F.3d 1544, 1553 (10th Cir. 1995) ("[T]he Eleventh Amendment bars suits brought in federal court seeking to enjoin a state official from violating state law"). Accordingly, even if the Court finds in Plaintiff's favor, it should only order that Defendant provide Plaintiff with adequate due process before deciding whether to terminate her—which is already being done (and hence unnecessary).

<u>Conclusion</u>

For the foregoing reasons, Defendant respectfully requests that this Court deny Plaintiff's Motion for Partial Summary Judgment as to Counts I and IV (Doc. 36).

Respectfully submitted,

**SERPE | ANDREWS, PLLC**

By *<u>/s/ Blade M. Allen</u>*
Cody R. Rogers
Blade M. Allen
2540 El Paseo Road, Suite D
Las Cruces, NM 88001
Tel. (575) 288-1453
crogers@serpeandrews.com
ballen@serpeandrews.com
***Attorneys for Defendant***

## <u>CERTIFICATE OF SERVICE</u>

   I hereby certify that on this 20h day of June, 2025, I filed the foregoing through this Court's CM/ECF e-filing system and caused a true and correct copy of the same to be served upon all parties of record as reflected more fully in the electronic Notification of Service.

        Respectfully submitted,

        */s/ Blade M. Allen*
        Blade M. Allen