IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

SHANON S. RILEY,

    Plaintiff,

v.                                                                                      No. 1:25-cv-00044-KWR-KK

HEATHER JORDAN, in her individual
and official capacities as the Director
of the New Mexico Workers'
Compensation Administration,

    Defendant.

## DECLARATION OF HEATHER JORDAN

I, Heather Jordan, declare under penalty of perjury that the foregoing is true and correct:

1. I am the current Director of the New Mexico Workers' Compensation Administration ("WCA").

2. I am over eighteen years of age.

3. I am competent to testify to the statements set forth in this affidavit and make same on my personal knowledge.

4. Plaintiff Shanon S. Riley served as a workers' compensation judge for the WCA.

5. On November 5, 2024, Plaintiff submitted a pre-approval request for two hours of administrative leave for the purpose of voting.

6. Plaintiff subsequently "certified" that the time sheet she submitted, which included the voting leave, was "true and accurate."

7. Plaintiff never amended her time sheet to remove the two hours of voting leave.

1

# EXHIBIT A

8. New Mexico State Personnel Office Interpretive Memorandum 2024-001 (the "Memorandum"), which interprets the State Personnel Board rules and the New Mexico Administrative Code provisions governing the granting of administrative leave for voting, provides that "[e]mployees who are registered voters may absent themselves from work for two hours for the purpose of voting[.]"

9. The Memorandum further states that "[u]se of administrative leave for voting may be audited. Employees who abuse administrative leave for voting may be disciplined, up to and including dismissal."

10. On November 12, 2024, I was informed that a review of public records showed that Plaintiff did not vote in the November 5, 2024, election.

11. On November 13, 2024, WCA general counsel Michael Holt and I met with Plaintiff and asked her if she voted on Election Day. Plaintiff initially responded that she left Election Day at 3 p.m. to vote. I then asked Plaintiff if she could provide any proof of voting. Plaintiff asked if video footage from the voting location would work. I responded that Plaintiff would have to provide proof from the County Clerk's office. Plaintiff then asked what would happen if she could not show such proof. I informed her that she would be dismissed if she could not provide proof from the County Clerk's office. Plaintiff thought for a second and then told me to go ahead and give her the termination letter. I then handed her the letter, we ended the meeting, and we walked her to the exit door without further discussion or questions.

12. The letter stated that Plaintiff "entered two (2) hours of Voting leave for purposes of voting" into her timesheet but "did not vote." The letter also stated: "Such conduct is a violation of the code of judicial conduct, which requires [Plaintiff] to promote integrity and to 'avoid impropriety and the appearance of impropriety.'"

**EXHIBIT A**

13. The meeting with Plaintiff lasted approximately fifteen to twenty minutes.

14. Plaintiff did not ask me or anyone at the WCA if we would submit a complaint so the State Personnel Board would have jurisdiction prior to filing the instant federal lawsuit.

15. On February 4, 2025, the WCA filed a complaint regarding Plaintiff's false reporting of voting leave and corresponding violation of the code of judicial conduct to the State Personnel Board. The State Personnel Board dismissed the complaint due to lack of jurisdiction on March 4, 2025, as Plaintiff was no longer employed by the WCA.

16. On February 6, 2025, the WCA offered to reinstate Plaintiff and place her on paid administrative leave pending the outcome of the State Personnel Board proceedings. The offer contained "governor exempt" language typically contained in similar forms that provided: "as an at-will exempt employee, you will serve at the pleasure of the Office of the Governor." It also specified that Plaintiff was "not to contact any member of the [WCA] staff, other than Cathy Farrell, while [she is] on paid administrative leave."

17. On February 26, 2025, the WCA sent Plaintiff an updated offer of reinstatement. The updated offer of reinstatement was substantively identical to the first except that the "at-will" language was replaced with: "As a Workers Compensation Judge, and pursuant to NMSA 1978, Section 52-5-2(C), you are subject to dismissal prior to the expiration of your term of appointment for violations of the Code of Judicial Conduct, except canon 21-900." The updated offer of reinstatement also clarified that Plaintiff was "not to contact any member of the [WCA] staff, other than Cathy Farrell, while you are on paid administrative leave regarding matters related to your employment or the State Personnel Board investigation."

18. Following the Court's May 9, 2025, preliminary injunction (Doc. 26), the WCA reinstated Plaintiff.

**EXHIBIT A**

19. Following the Court's June 16, 2025, order (Doc. 42) partially granting Defendant's motion to clarify that the Court's preliminary injunction, the WCA placed Plaintiff on paid administrative leave.

20. On June 20, 2025, the WCA submitted an amended complaint regarding Plaintiff's false reporting of voting leave and corresponding violation of the code of judicial conduct to the State Personnel Board to initiate the process set out in 1.7.12.25 NMAC.

21. I will not act on Plaintiff's employment with the WCA or her status of being on paid administrative leave as it relates to the instant dispute until further order of the court or conclusion of the State Personnel Board complaint process.

Executed on June 20, 2025.

*Heather Jordan* (signature)
Heather Jordan, WCA Director

**EXHIBIT A**