IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**SHANON S. RILEY,**

        **Plaintiff,**

v.                                   No. 1:25-cv-00044-KWR-KK

**HEATHER JORDAN, in her individual
and official capacities as the Director
of the New Mexico Workers'
Compensation Administration,**

        **Defendant.**

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Shanon S. Riley, by and through her counsel of record, Kennedy, Hernandez & Harrison, P.C., submits this Response in opposition to Defendant's Motion for Summary Judgment (Doc. 45), filed June 20, 2025 ("MSJ"). To avoid accountability for her textbook procedural due process violation, Defendant alleges new facts to support her qualified immunity defense. Nevertheless, Plaintiff has alleged sufficient facts to overcome qualified immunity and defeat Defendant's MSJ.

### PLAINTIFF'S STATEMENT OF DISPUTED MATERIAL FACTS

Pursuant to D.N.M. LR-Civ. 56.1(b), Plaintiff asserts that the following facts alleged by Defendant are disputed for purposes of summary judgment:

1. Regarding Defendant's UMF No. 7, Plaintiff disputes that she intentionally certified her time sheet as "true and accurate." *See* (Doc. 2), filed Jan. 14, 2025, at 2 ("As a result of the closure, Plaintiff's numerous administrative responsibilities, and lack of technological resources at home, Plaintiff simply forgot to edit her timesheet.").

2. Regarding Defendant's UMF No. 8, Plaintiff does not dispute that she "never amended her time sheet to remove the two hours of voting leave." However, Plaintiff states that she intended to correct her time entry to reflect that she was unable to vote on November 5, 2024, but she inadvertently failed to do so before the processing date for that payroll period. *See* (Doc. 2), at 2.

3. Regarding Defendant's UMF No. 12, Plaintiff disputes Defendant's recollection of their meeting to the extent it differs from Plaintiff's recollection of the brief meeting that day. *See* Declaration of Shanon S. Riley, attached hereto as Exhibit 1.

4. Regarding Defendant's UMF No. 14, Plaintiff does not recall the meeting lasting 20 minutes.

5. Regarding Defendant's UMF No. 20, Plaintiff does not dispute that the WCA submitted a complaint to the State Personnel Board, but Plaintiff does dispute that Plaintiff falsely reported voting leave or violated the code of judicial conduct. *See* (Doc. 2), at 2 ("At the time, Plaintiff had over 200 hours of annual leave and over 240 hours of sick leave which she could have used to substitute the two hours of administrative voting leave.").

6. Regarding Defendant's UMF No. 29, Plaintiff does not dispute that the WCA re-submitted its complaint to the State Personnel Board, but Plaintiff does dispute that Plaintiff falsely reported voting leave or violated the code of judicial conduct. *See* (Doc. 2), at 2.

**PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS**

A. In August of 2011, Plaintiff was appointed to an initial one-year term as a WCJ. (Doc. 7-1), filed Feb. 6, 2025, at 1.

B. Plaintiff was reappointed to subsequent five-year terms in August 2012 and August 2017. *Id.*

C.  Based on a "review of [her] performance," Plaintiff was appointed to her most current five-year term in August of 2022. *Id.* at 3.

D.  At the time of her termination, Plaintiff had accrued over 200 hours of annual leave and over 240 hours of sick leave that she could have used to substitute the two hours of administrative voting leave that she entered on her timesheet. See Joint Status Report and Provisional Discovery Plan (Doc. 19), filed Apr. 14, 2025, at 3, ¶ 4.

E.  On November 13, 2024, Defendant and WCA General Counsel Michael Holt walked into Plaintiff's office and closed the door. Ex. 1, ¶ 5. Shortly after, Defendant asked Plaintiff whether she had left to vote on November 5, 2024. *Id.* ¶ 6. Plaintiff responded "yes, I left around 3:00 PM." *Id.* Defendant asked whether Plaintiff could prove it, and Plaintiff asked if she could use video footage to do so. *Id.* Defendant indicated that Plaintiff would need to use the Secretary of State voting records to show that she voted. *Id.* ¶ 7.

F.  Defendant told Plaintiff that if she could not prove that she voted, she would be dismissed from her employment with the WCA. *Id.* ¶ 8. Plaintiff responded that the Secretary of State records would not show that Plaintiff voted because she did not vote. *Id.* ¶ 9.

G.  Shortly after stating that she did not vote, Ms. Jordan stood up and delivered Plaintiff's termination letter. *Id.* ¶ 10. Plaintiff read the letter as Defendant was standing in front of her. Plaintiff does not recall asking Defendant to "give her the termination letter." *Id.*; *contra* MSJ, at 3, ¶ 12.

H.  At no point during the conversation did Ms. Jordan or Mr. Holt ask, or give Plaintiff an opportunity to explain, why she had not voted or why she had not simply amended her timesheet in SHARE given that Plaintiff had accumulated such large leave balances. Ex. 1, ¶ 11.

  I.  Either just before she handed Plaintiff the letter or as Plaintiff was reading the letter, Defendant said, specifically, "I don't want there to be any drama." *Id.* ¶ 12.

  J.  Plaintiff asked if there was anyone she could speak with to explain the situation. *Id.* ¶ 13. At that point, Mr. Holt wrote down the name and number of Governor Michelle Lujan Grisham's General Counsel and gave the note to Plaintiff. *Id.* ¶ 14; *see also* Ex. 1, at 4. While Mr. Holt was writing this information, Defendant responded, "You can try, but it is not going to change anything. The decision has already been made." *Id.* ¶ 15.

  K.  Prior to delivering the termination letter, Defendant did not submit a complaint to the State Personnel Board, Defendant did not provide Plaintiff with a hearing, and Defendant did not comply with any other required procedure under the New Mexico Administrative Code. *See* (Doc. 19), at 3, ¶ 6.

  L.  On the date she was terminated and the following day, Plaintiff attempted to secure a meeting with the Office of the Governor, but Plaintiff's requests were denied. Ex. 1, ¶ 17.

## LEGAL ARGUMENT

  To succeed on a motion for summary judgment, the movant must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material only where it can influence the outcome of the lawsuit. *Mauldin v. Driscoll*, 136 F.4th 984, 993 (10th Cir. 2025). And a dispute is genuine only where "a rational jury could find in favor of the nonmovant on the evidence presented." *Id.* "A court must view the evidence in the light most favorable to the opposing party." *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (citation modified).

I.      **The Court should deny summary judgment and qualified immunity.**

As an initial clarification, Plaintiff maintains that, under any set of facts—including Defendant's newly alleged facts—her claim is strong enough that this Court should grant summary judgment in her favor. *See generally*, Plaintiff's Motion for Partial Summary Judgment (Doc. 36), filed June 2, 2025 ("MPSJ"). However, if the Court is inclined to deny Plaintiff's MPSJ due to the existence of genuine issues of material fact, it should likewise deny Defendant's MSJ. Plaintiff's declaration shows that there are disputes regarding the content of her meeting with Defendant. If the Court finds these disputes to be genuine and material, it should deny Defendant's MSJ and the defense of qualified immunity.

To overcome the defense of qualified immunity, a "plaintiff must show that (1) a reasonable jury could find facts supporting that the defendant violated his or her constitutional right and (2) that the right was clearly established at the time of the violation." *Works v. Byers*, 128 F.4th 1156, 1163 (10th Cir. 2025). "Although there need not be a case directly on point, the clearly established law must be particularized to the facts of the case." *Tachias v. Sanders*, 130 F.4th 836, 844 (10th Cir. 2025) (citation modified). In the absence of a case on point, "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has not previously been held unlawful." *United States v. Lanier*, 520 U.S. 259, 271 (1997) (citation modified).  Even though the burden is shifted, the court must view the "facts in the light most favorable to the nonmoving party." *Works*, 128 F.4th at 1163. Most importantly, "[i]n qualified immunity cases, this usually means adopting the plaintiff's version of the facts." *Id.*

> **A.  Defendant is not entitled to qualified immunity on Plaintiff's procedural due process claim.**
>
> > **i.  Plaintiff had a clearly established property interest in her continued employment.**

In *Cleveland Board of Education v. Loudermill*—the seminal procedural due process case frequently studied by first-year law students—the Supreme Court held that an Ohio state employee held a protected property interest in continued employment where an Ohio statute entitled employees to retain their positions during good behavior and efficient service, unless the employee committed misfeasance, malfeasance, or nonfeasance in office. 470 U.S. 532, 538–39 (1985).

Just like Ohio law in *Loudermill*, New Mexico law states that "[v]iolation of th[e] canons [of judicial conduct] shall be exclusive grounds for dismissal [of a WCJ] prior to the expiration of his term." NMSA 1978, § 52-5-2(C). That language conferred upon Plaintiff a constitutionally protected property interest. Many cases after *Loudermill* show that this point of law has been clearly established for decades. *See Perry v. Sindermann*, 408 U.S. 593, 600 (1972) (finding professor had protected property interest where handbook provided de facto tenure if professor's "teaching services are satisfactory and as long as he displays a cooperative attitude toward his co-workers"); *Teigen v. Renfrow*, 511 F.3d 1072, 1078 (10th Cir. 2007) (finding property interest where state constitution limited state's ability to dismiss employees to instances of "failure to comply with standard of efficient service . . . willful misconduct . . . or final conviction of a felony[.]"); *Hennigh v. City of Shawnee*, 155 F.3d 1249, 1253 (10th Cir. 1998) ("This court has held that if state statutes or regulations place substantive restrictions on a government actor's ability to make personnel decisions, then the employee has a protected property interest.").

Despite comprehensive authority to the contrary, Defendant argues that "it is unclear whether New Mexico law created a protected property interest in Plaintiff's continued

6

employment" because nothing in Section 52-5-2(C) "clearly requires a hearing before the director can dismiss a [WCJ][.]" MSJ, at 14–15. This is incorrect. The statute, when read in conjunction with the administrative code, clearly guarantees WCJs a hearing prior to termination. *Compare* § 52-5-2(C) (discussing violations of the code of judicial conduct and "complaints against a workers' compensation judge"), *with* 1.7.12.25 NMAC (detailing complaint process and specifying that board shall "make its findings as to whether there was a violation of the code"). But more importantly, Plaintiff's entitlement to a hearing before termination is not determinative of whether she held a constitutionally protected property interest. Rather, based on the authorities discussed above, she held a clearly established property interest because state law limits the grounds for her termination to just cause (violations of the code of judicial conduct).

> ii. **Plaintiff has alleged facts showing that she did not receive an adequate hearing, contrary to clearly established law.**

Under *Loudermill*, a "tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." 470 U.S. at 546. "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (citation modified). "This requirement includes three elements: 1) an impartial tribunal; 2) notice of charges given a reasonable time before the hearing; and 3) a pretermination hearing except in emergency situations."[1] *Langley v. Adams Cty., Colo.*, 987 F.2d 1473, 1480 (10th Cir. 1993) (quoting *Patrick v. Miller*, 953 F.2d 1240, 1244 (10th Cir. 1992)). Adopting Plaintiff's version of the facts, *see Works*, 128 F.4th at 1163, her pretermination "hearing" was not conducted

---

[1] Defendant does not allege that there was an emergency situation justifying the absence of a pretermination hearing.

before an impartial tribunal, Plaintiff did not receive adequate notice of the charges against her, and she did not get to explain her side of the story.

For more than 40 years, the Tenth Circuit has held that those with a property interest at stake are entitled to an unbiased pretermination decision-maker. *See, e.g.*, *Cypert v. Indep. Sch. Dist. No. I–050*, 661 F.3d 477, 481 (10th Cir. 2011); *McClure v. Indep. Sch. Dist. No. 16*, 228 F.3d 1205, 1214–16 (10th Cir. 2000); *Langley*, 987 F.2d at 1480 ("[E]ven if plaintiff did receive a reasonable opportunity for a pre-termination hearing, that hearing by itself would not appear to have satisfied the county's due process obligation [because] the person terminating plaintiff . . . was not an unbiased decision-maker."); *Patrick*, 953 F.2d at 1245–46; *Miller v. City of Mission*, 705 F.2d 368, 372 (10th Cir. 1983)

"Personal bias may be shown by prior statements going to the merits or animus that establish the decisionmaker cannot be fair." *Riggins v. Goodman*, 572 F.3d 1101, 1113 (10th Cir. 2009). For example, in *McClure*, 228 F.3d at 1215–16, the Tenth Circuit held that bias was established where decisionmakers "publicly stated their intent to terminate the plaintiff's employment prior to the hearing at which the matter of her termination was to be decided." *Id.* (citation modified). Similarly, in *Staton v. Mayes*, 552 F.2d 908, 914 (10th Cir. 1977), bias was shown when three of five school board members made statements prior to the hearing that the superintendent should be fired. Here too, there is strong evidence that Defendant was already biased against Plaintiff. First, when Plaintiff asked whether she could explain the situation, Defendant stated, "The decision has already been made." Ex. 1 ¶ 15. The finality of Plaintiff's termination was corroborated when Plaintiff attempted to call the Governor's Office. *Id.* ¶ 17. Second, the letter that Defendant delivered to Ms. Riley had already been drafted and *signed* by

Defendant. (Doc. 35-1). These facts suggest that the decision had already been made before Defendant walked into Plaintiff's office to conduct what she now calls "a hearing."

Which leads to the next point: Plaintiff was not given reasonable notice of the charges against her before the "hearing." Plaintiff's failure to vote, without more, does not reflect that she intentionally committed timesheet fraud or violated the code of judicial conduct, and it did not provide Defendant with a valid basis to terminate Plaintiff. The problem is, prior to her termination, Plaintiff never received notice of Defendant's charge that she committed timesheet fraud or violated the code of judicial conduct. It was Plaintiff's termination letter that gave her notice of her alleged breach of the code of judicial conduct. This was insufficient, because "*Loudermill* requires the employer to provide—*before the termination*—notice of the charges, a summary of the employer's evidence, and an opportunity to respond." *Montgomery v. City of Ardmore*, 365 F.3d 926, 936 (10th Cir. 2004); *see also Hulen v. Yates*, 322 F.3d 1229, 1247 (10th Cir. 2003) (stating that, in *Loudermill*, "the Court held that constitutional due process required the school board to provide a hearing before terminating a tenured school employee") (emphasis added); *Powell v. Mikulecky*, 891 F.2d 1454, 1458 (10th Cir.1989) (same).

In *Montgomery*, for example, the Tenth Circuit rejected the district court's finding that the plaintiff's brief telephone conversations with his supervisors provided the plaintiff with an adequate pretermination hearing because the plaintiff had already been terminated at the time of the conversation. 365 F.3d at 936. More specifically, the plaintiff's termination letter indicated that he had been officially terminated several days before the call. *Id.* Here too, Plaintiff's termination letter had already been signed by Defendant, and Defendant confirmed that "[t]he decision had already been made." Ex. 1, ¶ 15. Thus, the letter's charge against Plaintiff did not

9

adequately notify her before her termination, and given that the termination decision had already been made, Plaintiff could not adequately respond to the allegations.

In support of her arguments, Defendant analogizes to *Powell*. 891 F.2d at 1459. But *Powell* is distinguishable in four respects. First, the plaintiff in *Powell* was adequately notified of the charges against him. He was fired for "an improper attempt to interfere with the City of Bartlesville's authority to establish a mutual aid policy, endangering the safety of the citizens of Bartlesville." *Id.* at 1455. At his pretermination hearing, he responded in the affirmative when asked by his supervisor whether he had asked neighboring fire chiefs not to sign a mutual aid agreement, thereby proving his interference with the mutual aid policy. *Id.* at 1459. He admitted directly to the basis of his termination. Here, however, Plaintiff was never notified that she committed timesheet fraud or violated the code of judicial conduct, nor did she ever admit to intentionally committing timesheet fraud or violating the code of judicial conduct.

This leads to the next factual distinction. In *Powell*, the court emphasized that "once Powell admitted to asking the other Fire Chiefs not to sign the proposed agreement, an opportunity for further explanation would not have contributed to the prevention of an erroneous termination." *Id.* at 1459. Here, however, an opportunity for further explanation would have certainly prevented Plaintiff's erroneous termination. Had Plaintiff known she was being fired for her failure to "avoid impropriety and the appearance of impropriety[,]" (Doc. 35-1), filed June 2, 2025, she could have explained that she had accrued over 200 hours of annual leave and over 240 hours of sick leave to replace the voting leave. *See **Add'l Mat. Fact D***. In other words, Plaintiff could have explained that she had absolutely no motive to steal time from the state and that her failure to amend her timesheet was not a violation of the code of judicial conduct.

Of course, this argument assumes Defendant was an unbiased decision maker—the next distinguishing factor between this case and *Powell*. The plaintiff in *Powell* was terminated, *after* he admitted to the charges at issue. 891 F.2d at 1459. Here however, viewing the facts in the light most favorable to the Defendant, Plaintiff's termination letter had already been prepared and signed by Defendant. And as Defendant stated, Plaintiffs efforts were "not going to change anything. The decision had already been made." Ex. 1, ¶ 15.

Finally, unlike the plaintiff in *Powell*, who received a full-fledged post-termination hearing, 891 F.2d at 1456, Plaintiff received nothing. Even when she attempted to explain the circumstances to the Governor's Office, Plaintiff was denied the opportunity to do so. Ex. 1, ¶ 17. As discussed below, Defendant's attempts to refute this point fail.

> iii. **The absence of a post-termination hearing is further evidence of Defendant's due process violation.**

Even assuming the pretermination "hearing" did not violate clearly established law, the total absence of a post-termination hearing surely did. "The procedural requisites and formality of pre-termination procedures vary depending on the importance of the interests involved and the nature of post-termination proceedings." *Langley*, 987 F.2d at 1480. "When the pre-termination process offers little or no opportunity for the employee to present his side of the case, the procedures in the post-termination hearing become much more important." *Benavidez v. City of Albuquerque*, 101 F.3d 620, 626 (10th Cir. 1996). "[T]he termination of a permanent state employee requires the opportunity for a post-termination hearing and appeal." *Copelin-Brown v. N.M. State Personnel Office*, 399 F.3d 1248, 1256 (10th Cir. 2005). In *Copelin-Brown*, a state employee with a protected property interest in her employment was terminated by the State Personnel Office (SPO) with "no post-termination hearing or opportunity to appeal the SPO's

decision to terminate her." *Id.* at 1255. The court held that SPO's failure to provide any post-termination hearing violated the plaintiff's constitutional right to procedural due process. *Id.*

Here too, Plaintiff was provided with no post-termination hearing. It is undisputed that after her termination, "Plaintiff filed a notice of appeal of termination with the State Personnel Board regarding her dismissal from the WCA[,]" but "[a]s no complaint had been filed, the appeal was dismissed for lack of jurisdiction." MSJ, at 4, ¶¶ 16–17. Not only was Plaintiff denied the opportunity for review by the Board, she was also denied the opportunity for judicial review because the New Mexico Administrative Procedures Act does not cover decisions of the WCA. *Bryant v. Lear Siegler Mgmt. Servs. Corp.*, 1993-NMCA-052, ¶ 31, 115 N.M. 502, 853 P.2d 753 ("[T]he APA applies only to those state agencies that are 'specifically placed by law under the Administrative Procedures Act.'") (quoting NMSA 1978, § 12-8-2(A)).

In a last-ditch effort, Defendant argues that "Plaintiff never asked Defendant to submit a complaint before filing the instant action." MSJ, at 14 n.4. With absolutely no supporting authority, Defendant would have this Court believe that Plaintiff is responsible for requesting the procedures she was entitled to under state and federal law. In any event, Plaintiff likely did not ask for Defendant to submit a complaint because she quickly left the office in compliance with Defendant's request to avoid "drama." Ex. 1, ¶¶ 12, 16. Defendant failed to fulfill her duty to file a complaint with the Board, and this action deprived Plaintiff of any possibility for a post-termination hearing or judicial review.[2] Plaintiff made the best attempt she could to speak with the Governor's Office, but her requests were denied. *See id.* ¶ 17.

---

[2] Defendant also relies on out-of-circuit authority to argue that Plaintiff had an adequate post-termination remedy through a mandamus action. MSJ, at 14. Defendant cites no Tenth Circuit or New Mexico authority showing that a defendant's failure to provide a post-termination hearing is remedied by the plaintiff's pursuit of a mandamus action. In fact, the Tenth Circuit's decision in *Copelin-Brown* suggests the opposite. *See* 399 F.3d at 1256–57 (finding due process violation without considering plaintiff's pursuit of mandamus action).

As she has done throughout this litigation, Defendant maintains that her reinstatement of Plaintiff and submission of a complaint to the Board now provide Plaintiff with an adequate post-termination hearing. Defendant cites no case permitting the government to deny an employee a post-termination hearing and later remedy that constitutional violation by providing a hearing after a lawsuit has been filed. No case exists, and for good reason: the government could indefinitely avoid liability for due process violations by providing a hearing as soon as a lawsuit has been filed.

**B.     The Court should deny summary judgment and qualified immunity on Plaintiff's substantive due process claim.**

Despite this Court's reservations in recognizing "whether a property interest in continued employment is protected by substantive due process[,]" *Riley v. Jordan*, No. 1:25-cv-44, 2025 WL 1375005, at *5 (D.N.M. May 9, 2025), the Tenth Circuit has definitively stated that "[a]n arbitrary deprivation of an individual's property right can violate the substantive component of the Due Process Clause." *Camuglia v. City of Albuquerque*, 448 F.3d 1214, 1223 (10th Cir. 2006) (quoting *Clark v. City of Draper*, 168 F.3d 1185, 1190 (10th Cir. 1999)). Here, Plaintiff has alleged facts that the deprivation of Plaintiff's employment was both arbitrary and outrageous.

Defendant's termination letter asserted that Plaintiff failed to "promote integrity" and to "avoid impropriety and the appearance of impropriety." (Doc. 35-1). Yet Plaintiff has alleged that she accrued significant leave balances that would have eliminated her motive to steal time from the state. ***Add'l Mat. Fact D***. Throughout this litigation, Plaintiff has maintained that her failure to amend her time sheet was a simple mistake, far from improper conduct. Based on these facts, a reasonable factfinder could certainly conclude that Defendant's arbitrary termination of Plaintiff's livelihood and source of income constitutes "a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." *Camuglia*, 448 F.3d at 1222–23.

Accordingly, the Court should deny summary judgment and permit this claim to proceed for further discovery on these issues.

## II. Permanent injunctive relief is appropriate.

Aside from implicitly addressing the first factor (success on the merits), Defendant's MSJ fails to address any of the permanent injunction factors. Instead, Defendant argues that Plaintiff's request for a permanent injunction has become moot, depriving Plaintiff of standing to seek the injunction. MSJ, at 7–9. In support of this argument, Defendant states that she "will not act on Plaintiff's employment with the WCA or her status of being on paid administrative leave as it relates to the instant dispute until the conclusion of the State Personnel Board complaint process." *Id.* at 8. But Defendant's word is not sufficient. Even if the due process violation has been completed, the harm from that violation continues until Plaintiff receives the process she is due. *See Fuentes v. Shevin*, 407 U.S. 67, 82 (1972) (when there has been no pretermination hearing, "no later hearing and no damage award can undo the fact that the arbitrary taking that was subject to the right of procedural due process has already occurred"). Injunctive relief is necessary to ensure that the Board conducts a proper hearing.

More importantly, given the unique circumstances of Defendant's authority, injunctive relief is also necessary after the Board has made its findings. New Mexico law clarifies that the Director has final authority to terminate Plaintiff, even where the Board finds that Plaintiff has not violated the code of judicial conduct. *See* § 52-5-2(C) (stating that SPO "shall report its findings to the director."). At this point, Defendant has every incentive to wrongfully terminate Plaintiff regardless of the Board's findings. Continuing injunctive relief ensures that Defendant not only provides Plaintiff with the process she is due, but that Defendant continues to honor Plaintiff's constitutional rights during the SPO hearing and for the duration of her term of employment.

What's more, even if Defendant's belated provision of process could somehow moot Plaintiff's request for injunctive relief, this case would still fall within the confines of the voluntary cessation exception. Under this exception, "a defendant cannot automatically moot a case simply by ending its unlawful conduct once sued." *Prison Legal News v. Fed. Bureau of Prisons*, 944 F.3d 868, 880 (10th Cir. 2019) (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013)). The exception applies unless "the defendant carries the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* at 889 (citation modified). "To carry its burden, a defendant must do more than offer a mere informal promise or assurance that the challenged practice will cease or announce an intention to change." *Id.* (citation modified). "Instead, a defendant must undertake changes that are permanent in nature and foreclose a reasonable chance of recurrence of the challenged conduct." *Id.* (citation modified). Importantly, "a defendant's corrective actions that do not fully comport with the relief sought are also insufficient." *Id.* (citation modified).

Defendant's Motion and declaration do not demonstrate that she will respect Plaintiff's constitutional rights. For example, Defendant promised that she "will not act on Plaintiff's employment with the WCA or her status of being on paid administrative leave as it relates to the instant dispute until further order of the court or conclusion of the State Personnel Board complaint process." (Doc. 44-1), filed June 20, 2025, at 4, ¶ 21. Defendant *should* have promised to honor Plaintiff's constitutional rights for the duration of the SPO hearing and the duration of Plaintiff's term of employment. Rather than rely on Defendant's word, the Court should issue a permanent injunction ordering Defendant to honor Plaintiff's constitutional rights during the SPO hearing and for the duration of Plaintiff's term as a WCJ.

## CONCLUSION

For the reasons argued above, Plaintiff respectfully moves this Court to deny summary judgment.

Respectfully submitted,

KENNEDY, HERNANDEZ & HARRISON, P.C.

*/s/ Jeffrey D. Vescovi*
Jessica M. Hernandez
Paul J. Kennedy
Elizabeth A. Harrison
Jeffrey D. Vescovi
201 Twelfth Street Northwest
Albuquerque, New Mexico 87102
(505) 842-8662

*Attorneys for Plaintiff*

I hereby certify that a true copy of the foregoing was served electronically on July 14, 2025, through the CM/ECF system, which caused all parties or counsel of record to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

 */s/ Jeffrey D. Vescovi*
Jeffrey D. Vescovi