IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

SHANON S. RILEY,

        Plaintiff,

v.                                  No. 1:25-cv-00044-KWR-KK

HEATHER JORDAN, in her individual
and official capacities as the Director
of the New Mexico Workers'
Compensation Administration,

        Defendant.

## DECLARATION OF SHANON S. RILEY

I, Shanon S. Riley, declare under penalty of perjury that the foregoing is true and correct:

1.      I am currently employed as a Workers' Compensation Judge (WCJ) at the Workers' Compensation Administration (WCA).

2.      I am over eighteen years of age.

3.      I am competent to testify to the statements set forth in this declaration, and I make these statements on the basis of my personal knowledge.

4.      To clarify the factual record, I provide the following facts as the account of my meeting with Defendant Heather Jordan on the date of my termination from the WCA to the best of my recollection.

5.      On November 13, 2024, I was in my office at the WCA when Director Heather Jordan and General Counsel Michael Holt walked into my office and closed the door.

6.      After a brief prefatory interaction, Ms. Jordan asked me whether I had left to vote on November 5, 2024. I responded, "yes, I left around 3:00 PM." She asked whether or not I could prove it. I asked whether I could prove it by using video footage.

**EXHIBIT**

**1**

7.    Ms. Jordan indicated that I would need to use the Secretary of State records to prove that I voted. At that point, I realized that she was referring to whether I had voted that day, not whether I had left the building with the intention of voting.

8.    Ms. Jordan stated that if I could not prove that I voted, I would be dismissed from my employment with the WCA.

9.    I then clarified that the Secretary of State records would not show I voted because I did not vote.

10.    Shortly after stating that I did not vote, Ms. Jordan stood up and delivered my termination letter. I read the letter as she was standing in front of me. I do not recall asking for the termination letter.

11.    At no point during the conversation did Ms. Jordan or Mr. Holt ask, or give me the opportunity to explain, why I had not voted or why I had not simply amended my timesheet in SHARE given that I had accumulated such large leave balances.

12.    Either just before she handed me the letter or as I was reading the letter, Ms. Jordan said, specifically, "I don't want there to be any drama."

13.    I asked if there was someone I could speak with to explain the situation.

14.    At that point, Mr. Holt stood up, wrote down the name and number of the General Counsel for Governor Michelle Lujan Grisham's Office (the "Governor's Office"). The note is attached to this declaration, and it contains additional personal notes I made in the weeks following the meeting regarding unrelated personal matters.

15.    While Mr. Holt was writing this information, Ms. Jordan responded to my question: "You can try, but it is not going to change anything. The decision has already been made."

16.    To avoid "drama," I stood up, gathered my purse, my lunch, and the note, and walked quietly from my office to the back entrance of the building.

17.    Upon arriving home, I called the Governor's Office, using the contact information that Mr. Holt provided, to request an opportunity to explain the events surrounding my failure to change my timesheet in SHARE. The next day I called the Governor's Office again to request a meeting. On both occasions, my request was denied.

Executed on July 14, 2025.

Shanon S. Riley



