IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

SHANON S. RILEY,

        Plaintiff,

v.                                                                                  No. 1:25-cv-00044-KWR-KK

HEATHER JORDAN, in her individual
and official capacities as the Director
of the New Mexico Workers'
Compensation Administration,

        Defendant.

## PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO COUNTS I AND IV

Plaintiff Shanon S. Riley, by and through her counsel of record, Kennedy, Hernandez & Harrison, P.C., submits this Reply in Support of her Motion for Partial Summary Judgment as to Counts I and IV (Doc. 36), filed June 2, 2025 ("MPSJ"). To avoid accountability for her textbook procedural due process violation, Defendant alleges new facts in support of her qualified immunity defense. Nevertheless, under any set of facts, Defendant failed to afford Plaintiff with adequate due process. The Court should grant Plaintiff's Motion for Partial Summary Judgment.

## PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF ADDITIONAL UNDISPUTED MATERIAL FACTS

A.    In reference to Defendant's Statement of ("allegedly") Additional Undisputed Material Facts Nos. 1–5, Plaintiff does not dispute these facts, but states that they do not defeat Plaintiff's claim for summary judgment and are immaterial.

B.    In reference to Fact No. 6, Plaintiff disputes Defendant's account to the extent it differs from her own. *See generally* (Doc. 50-1). Nevertheless, these disputes do not defeat Plaintiff's claim for summary judgment and are immaterial.

C.  In reference to Fact No. 7, Plaintiff does not believe that the meeting with Defendant and Michael Holt lasted "fifteen to twenty minutes." Nevertheless, this dispute does not defeat Plaintiff's claim for summary judgment and is immaterial.

D.  In reference to Fact No. 10, Plaintiff does not dispute this fact, but states that it does not defeat Plaintiff's claim for summary judgment and is immaterial.[1]

E.  In reference to Fact No. 11, Plaintiff does not dispute this fact, but states that it does not defeat Plaintiff's claim for summary judgment and is immaterial.

F.  In reference to Fact No. 12, Plaintiff does not dispute that the WCA submitted a complaint to the State Personnel Board (the "Board"), but Plaintiff does dispute that Plaintiff falsely reported voting leave or violated the code of judicial conduct. *See* (Doc. 2), at 2 ("At the time, Plaintiff had over 200 hours of annual leave and over 240 hours of sick leave which she could have used to substitute the two hours of administrative voting leave.").

G.  In reference to Fact Nos. 13–20, Plaintiff does not dispute these facts, but states that they do not defeat Plaintiff's claim for summary judgment and are immaterial.

H.  In reference to Fact No. 21, Plaintiff does not dispute that the WCA re-submitted its complaint to the State Personnel Board, but Plaintiff does dispute that Plaintiff falsely reported voting leave or violated the code of judicial conduct. *See* (Doc. 2), at 2.

## LEGAL ARGUMENT

**I.  Summary judgment is appropriate as to Count I.**

To succeed on a motion for summary judgment, the movant must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material only where it can influence the outcome of the lawsuit.

---

[1] It appears Defendant erroneously mislabeled fact number 10 as fact number 13. Plaintiff treats this fact as number 10 and relabels all remaining numbers sequentially.

*Mauldin v. Driscoll*, 136 F.4th 984, 993 (10th Cir. 2025). And a dispute is genuine only where "a rational jury could find in favor of the nonmovant on the evidence presented." *Id.* "A court must view the evidence in the light most favorable to the opposing party." *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (citation modified).

### A. Defendant does not dispute the majority of Plaintiff's material facts.[2]

The only remaining "disputes" Defendant has identified in her Response are with UMF Nos. 10 and 12. Response, at 2–3. But these disputed facts are immaterial. Defendant is merely attempting to manufacture a triable issue to avoid summary judgment against her. Viewing the facts in the light most favorable to Defendant, the events that transpired in Plaintiff's office do not demonstrate that Defendant provided Plaintiff with the process required by *Loudermill*. Defendant does not dispute that: she met with Plaintiff and asked her if she voted; Plaintiff acknowledged she did not vote; and Defendant handed Plaintiff a termination letter. *See* Response, at 11. While Defendant claims that Plaintiff "told Defendant to go ahead and give her the termination letter"— a fact Plaintiff contests—that statement (even if made) would not establish that Plaintiff admitted to timesheet fraud or violated the code of judicial conduct. Such an alleged admission is also clearly belied by Plaintiff's appeal to the Board several days after her termination. *See id.* at 4–5, ¶¶ 8–9. The only fact that matters for purposes of summary judgment is that Defendant delivered a letter immediately terminating Plaintiff without providing her the appropriate notice and opportunity to respond.

---

[2] As an initial matter, Plaintiff clarifies a factual inaccuracy in her MPSJ. Plaintiff initially stated that she informed Defendant "that she simply forgot to edit her timesheet." **UMF No. 9**. This was mistaken. While Plaintiff admitted her failure to vote during her meeting with Defendant, she did not state during that same meeting that she forgot to edit her timesheet. This fact does not change the outcome and is therefore immaterial.

3

That the letter was already signed proves that Defendant made the decision before walking into Plaintiff's office. Once the letter was delivered, Defendant's opportunity to provide the requisite process ended. "Defendant then handed her the letter, they ended the meeting, and walked [Plaintiff] to the exit door without further discussion or questions." (Doc. 45-1), ¶ 11. This meeting, which allegedly "lasted approximately fifteen to twenty minutes," *id.* ¶ 13, does not meet constitutional requirements. As discussed in more detail below, Defendant's meeting with Plaintiff deprived her of constitutionally adequate due process.

### B. Defendant is not entitled to qualified immunity.

To overcome the defense of qualified immunity, a "plaintiff must show that (1) a reasonable jury could find facts supporting that the defendant violated his or her constitutional right and (2) that the right was clearly established at the time of the violation." *Works v. Byers*, 128 F.4th 1156, 1163 (10th Cir. 2025). "Although there need not be a case directly on point, the clearly established law must be particularized to the facts of the case." *Tachias v. Sanders*, 130 F.4th 836, 844 (10th Cir. 2025) (citation modified). In the absence of a case on point, "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has not previously been held unlawful[.]" *United States v. Lanier*, 520 U.S. 259, 271 (1997) (citation modified).

### i. Plaintiff held a property interest in her continued employment and that interest was clearly established.

In *Cleveland Board of Education v. Loudermill*—the seminal procedural due process case frequently studied by first-year law students—the Supreme Court held that an Ohio state employee held a protected property interest in continued employment where an Ohio statute entitled employees to retain their positions during good behavior and efficient service, unless the employee committed misfeasance, malfeasance, or nonfeasance in office. 470 U.S. 532, 538–39 (1985).

Just like Ohio law in *Loudermill*, New Mexico law states that "[v]iolation of th[e] canons [of judicial conduct] shall be exclusive grounds for dismissal [of a WCJ] prior to the expiration of his term." NMSA 1978, § 52-5-2(C). That language conferred upon Plaintiff a constitutionally protected property interest. Many cases after *Loudermill* show that this point of law is clearly established. *E.g.*, *Perry v. Sindermann*, 408 U.S. 593, 600 (1972) (finding professor had property interest where handbook provided de facto tenure if professor's "services are satisfactory and as long as he displays a cooperative attitude"); *Teigen v. Renfrow*, 511 F.3d 1072, 1078 (10th Cir. 2007) (finding property interest where constitution limited state's ability to dismiss to instances of "failure to comply with standard of efficient service . . . willful misconduct . . . or final conviction of a felony[.]"); *Hennigh v. City of Shawnee*, 155 F.3d 1249, 1253 (10th Cir. 1998) ("This court has held that if state statutes or regulations place substantive restrictions on a government actor's ability to make personnel decisions, then the employee has a protected property interest.").

Despite comprehensive authority to the contrary, Defendant argues that "it is unclear whether New Mexico law created a protected property interest in Plaintiff's continued employment" because nothing in Section 52-5-2(C) "clearly requires a hearing before the director can dismiss a [WCJ][.]" Response, at 15–16. This is incorrect. The statute, when read in conjunction with the administrative code, clearly guarantees WCJs a hearing prior to termination. *Compare* § 52-5-2(C) (discussing violations of the code of judicial conduct and "complaints against a workers' compensation judge"), *with* 1.7.12.25 NMAC (detailing complaint process and specifying that board shall "make its findings as to whether there was a violation of the code"). But more importantly, Plaintiff's entitlement to a hearing before termination is not determinative of whether she held a constitutionally protected property interest. Rather, based on the authorities

5

discussed above, she held a clearly established property interest because state law limits the grounds for her termination to just cause (violations of the code of judicial conduct).

### ii. Plaintiff did not receive an adequate pretermination hearing in violation of clearly established law.

"The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (citation modified). "This requirement includes three elements: 1) an impartial tribunal; 2) notice of charges given a reasonable time before the hearing; and 3) a pretermination hearing except in emergency situations."[3] *Langley v. Adams Cty., Colo.*, 987 F.2d 1473, 1480 (10th Cir. 1993) (citation omitted). Even viewing Defendant's newly alleged facts most favorably to Defendant, Plaintiff's pretermination "hearing" was not conducted before an impartial tribunal, and Plaintiff did not receive adequate notice of the charges against her.

For more than 40 years, the Tenth Circuit has held that those with a property interest at stake are entitled to an unbiased pretermination decision-maker. *See, e.g.*, *Cypert v. Indep. Sch. Dist. No. I–050*, 661 F.3d 477, 481 (10th Cir. 2011); *McClure v. Indep. Sch. Dist. No. 16*, 228 F.3d 1205, 1214–16 (10th Cir. 2000); *Langley*, 987 F.2d at 1480 ("[E]ven if plaintiff did receive a reasonable opportunity for a pre-termination hearing, that hearing by itself would not appear to have satisfied the county's due process obligation [because] the person terminating plaintiff . . . was not an unbiased decision-maker."); *Patrick*, 953 F.2d at 1245–46; *Miller v. City of Mission*, 705 F.2d 368, 372 (10th Cir. 1983).

"Personal bias may be shown by prior statements going to the merits or animus that establish the decisionmaker cannot be fair." *Riggins v. Goodman*, 572 F.3d 1101, 1113 (10th Cir.

---

[3] Defendant does not allege that there was an emergency situation justifying the absence of a pretermination hearing.

6

2009). For example, in *McClure*, 228 F.3d at 1215–16, the Tenth Circuit held that bias was established where decisionmakers "publicly stated their intent to terminate the plaintiff's employment prior to the hearing at which the matter of her termination was to be decided." *Id.* (citation modified). Similarly, in *Staton v. Mayes*, 552 F.2d 908, 914 (10th Cir. 1977), bias was shown when three of five school board members made statements prior to the hearing that the superintendent should be fired. Here too, viewing the facts in the light most favorable to Defendant, there is strong evidence that she was biased against Plaintiff. The letter that Defendant delivered to Ms. Riley had already been drafted and *signed*, suggesting that the decision had already been made before Defendant walked into Plaintiff's office to conduct what she now calls "a hearing."

This conclusion leads to the next point: Plaintiff was not given reasonable notice of the charges against her before the "hearing." Plaintiff's failure to vote, without more, does not reflect that she violated the code of judicial conduct and was an insufficient basis to terminate Plaintiff. The problem is, prior to her termination, Plaintiff never received notice of Defendant's charge that she committed time sheet fraud and violated the code of judicial conduct. It was Plaintiff's termination letter that asserted a violation of the code of judicial conduct. This was insufficient, because "*Loudermill* requires the employer to provide—*before the termination*—notice of the charges, a summary of the employer's evidence, and an opportunity to respond." *Montgomery v. City of Ardmore*, 365 F.3d 926, 936 (10th Cir. 2004); *see also Hulen v. Yates*, 322 F.3d 1229, 1247 (10th Cir. 2003) (stating that *Loudermill* court "held that constitutional due process required the school board to provide a hearing before terminating a tenured school employee").

In *Montgomery*, for example, the Tenth Circuit rejected the district court's finding that the plaintiff's brief telephone conversations with his supervisors provided the plaintiff with an adequate pretermination hearing because the plaintiff had already been terminated at the time of

7

the conversation. 365 F.3d at 936. In particular, the plaintiff's termination letter indicated that he had been officially terminated several days before the call. *Id.* Here too, Plaintiff's termination letter had already been signed by Defendant before she walked into Plaintiff's office, and the letter's charge against Plaintiff did not adequately notify her before her termination or provide her with an adequate opportunity to respond.

In support of her arguments, Defendant analogizes to *Powell*. 891 F.2d at 1459. But *Powell* is distinguishable in four respects. First, the plaintiff in *Powell* was adequately notified of the charges against him. He was fired for "an improper attempt to interfere with the City of Bartlesville's authority to establish a mutual aid policy, endangering the safety of the citizens of Bartlesville." *Id.* at 1455. At his pretermination hearing, he admitted that he asked neighboring fire chiefs not to sign a mutual aid agreement, thereby proving his interference with the mutual aid policy. *Id.* at 1459. Here, however, prior to receiving the termination letter, Defendant did not notify Plaintiff that she was charged with timesheet fraud and violating the code of judicial conduct, nor did Plaintiff admit to these allegations.

This leads to the next factual distinction. In *Powell*, the court emphasized that "once Powell admitted to asking the other Fire Chiefs not to sign the proposed agreement, an opportunity for further explanation would not have contributed to the prevention of an erroneous termination." *Id.* at 1459. Here, however, an opportunity for further explanation would have certainly prevented Plaintiff's erroneous termination. Had Plaintiff known she was being fired for her failure to "avoid impropriety and the appearance of impropriety[,]" (Doc. 35-1), filed June 2, 2025, she could have explained that she had accrued over 200 hours of annual leave and over 240 hours of sick leave to replace the voting leave. *See **UMF No. 7***. In other words, Plaintiff could have explained that she

8

had absolutely no motive whatsoever to steal time from the state and that her failure to amend her timesheet was not a violation of the code of judicial conduct.

Of course, this argument assumes Defendant was an unbiased decision maker—the next distinguishing factor between this case and *Powell*. The plaintiff in *Powell* was terminated, *after* he admitted to the charges at issue. 891 F.2d at 1459. Here however, viewing the facts in the light most favorable to the Defendant, Plaintiff's termination letter had already been signed by Defendant. Defendant had already made the decision before she walked into Plaintiff's office. Finally, unlike the plaintiff in *Powell*, who received a full-fledged post-termination hearing, *id.* at 1456, Plaintiff received nothing. As discussed below, Defendant's attempts to refute this point fail.

### iii. The absence of a post-termination hearing is further evidence of Defendant's due process violation.

Even assuming Defendant's version of the pretermination "hearing" did not violate clearly established law, the total absence of a post-termination hearing surely did. "The procedural requisites and formality of pre-termination procedures vary depending on the importance of the interests involved and the nature of post-termination proceedings." *Langley*, 987 F.2d at 1480. "[T]he termination of a permanent state employee requires the opportunity for a post-termination hearing and appeal." *Copelin-Brown v. N.M. State Personnel Office*, 399 F.3d 1248, 1256 (10th Cir. 2005). In *Copelin-Brown*, a state employee with a protected property interest in her employment was terminated by the State Personnel Office (SPO) with "no post-termination hearing or opportunity to appeal the SPO's decision to terminate her." *Id.* at 1255. The court held that SPO's failure to provide any post-termination hearing violated the plaintiff's constitutional right to procedural due process. *Id.*

Here too, Plaintiff was provided with no post-termination hearing. It is undisputed that after her termination, "Plaintiff filed a notice of appeal of termination with the State Personnel

Board regarding her dismissal from the WCA[,]" but "[a]s no complaint had been filed, the appeal was dismissed for lack of jurisdiction." Response, at 4–5, ¶¶ 8–9. Not only was Plaintiff denied the opportunity for review by the Board, she was also denied the opportunity for judicial review because the New Mexico Administrative Procedures Act does not cover decisions of the WCA. *Bryant v. Lear Siegler Mgmt. Servs. Corp.*, 1993-NMCA-052, ¶ 31, 115 N.M. 502, 853 P.2d 753 ("[T]he APA applies only to those state agencies that are 'specifically placed by law under the Administrative Procedures Act.'") (quoting NMSA 1978, § 12-8-2(A)).

In a last-ditch effort, Defendant argues that "Plaintiff never asked Defendant to submit a complaint before filing the instant action." Response, at 14 n.6. With absolutely no supporting authority, Defendant would have this Court believe that Plaintiff is responsible for requesting the procedures she was entitled to under state and federal law. The truth is, Defendant failed to fulfill her duty to file a complaint with the Board, which deprived Plaintiff of any possibility for a post-termination hearing or judicial review.[4]

Defendant maintains that her reinstatement of Plaintiff and submission of a complaint to the Board now provide Plaintiff with an adequate post-termination hearing. Defendant cites no case permitting the government to deny an employee a post-termination hearing and later remedy that constitutional violation by providing a hearing after a lawsuit has been filed. No case exists, and for good reason: the government could indefinitely avoid liability for due process violations by providing a hearing as soon as a lawsuit has been filed.

## II.     Permanent injunctive relief is appropriate.

---

[4] Defendant also relies on out-of-circuit authority to argue that Plaintiff had an adequate post-termination remedy through a mandamus action. Response, at 14–15. Defendant cites no Tenth Circuit or New Mexico authority showing that a defendant's failure to provide a post-termination hearing is remedied by the plaintiff's pursuit of a mandamus action. In fact, the Tenth Circuit's decision in *Copelin-Brown* suggests the opposite. *See* 399 F.3d at 1256–57 (finding due process violation without considering plaintiff's pursuit of mandamus action).

In her MPSJ, Plaintiff provided an exhaustive analysis of each permanent injunction factor, showing her entitlement to that remedy. *See* MPSJ, at 10–13. Aside from implicitly addressing the first factor (success on the merits), Defendant fails to address any of the remaining factors in her Response. Instead, Defendant argues that Plaintiff's request for a permanent injunction has become moot, depriving Plaintiff of standing to seek the injunction. Response, at 7–9. In support of this argument, Defendant states that she "will not act on Plaintiff's employment with the WCA or her status of being on paid administrative leave as it relates to the instant dispute until the conclusion of the State Personnel Board complaint process." *Id.* at 8. But Defendant's word is not sufficient. Even if the due process violation has been completed, the harm from that violation continues at least until Plaintiff receives the process she is due. *See Fuentes v. Shevin*, 407 U.S. 67, 82 (1972) (when there has been no pretermination hearing, "no later hearing and no damage award can undo the fact that the arbitrary taking that was subject to the right of procedural due process has already occurred"). Injunctive relief is necessary to ensure that the Board conducts a proper hearing.

More importantly, given the unique circumstances of Defendant's authority, injunctive relief is also necessary to avoid retaliation. New Mexico law clarifies that the Director has final authority to terminate Plaintiff, even where the Board finds that Plaintiff has not violated the code of judicial conduct. *See* § 52-5-2(C) (stating that SPO "shall report its findings to the director."). At this point, Defendant has every incentive to wrongfully terminate Plaintiff regardless of the Board's findings. Continuing injunctive relief ensures that Defendant not only provides Plaintiff with the process she is due, but that Defendant continues to honor Plaintiff's constitutional rights for the duration of her term of employment.

What's more, even if Defendant's belated provision of process could somehow moot Plaintiff's request for injunctive relief, this case would still fall within the confines of the voluntary

11

cessation exception. Under this exception, "a defendant cannot automatically moot a case simply by ending its unlawful conduct once sued." *Prison Legal News v. Fed. Bureau of Prisons*, 944 F.3d 868, 880 (10th Cir. 2019) (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013)). The exception applies unless "the defendant carries the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* at 889 (citation modified). "To carry its burden, a defendant must do more than offer a mere informal promise or assurance that the challenged practice will cease or announce an intention to change." *Id.* (citation modified). "Instead, a defendant must undertake changes that are permanent in nature and foreclose a reasonable chance of recurrence of the challenged conduct." *Id.* (citation modified). Importantly, "a defendant's corrective actions that do not fully comport with the relief sought are also insufficient." *Id.* (citation modified).

Defendant's current declaration does not demonstrate that she will honor Plaintiff's constitutional rights for the duration of her term. For example, Defendant promised that she "will not act on Plaintiff's employment with the WCA or her status of being on paid administrative leave as it relates to the instant dispute until further order of the court or conclusion of the State Personnel Board complaint process." (Doc. 44-1), filed June 20, 2025, at 4, ¶ 21. That is insufficient. Rather than rely on Defendant's word, the Court should issue a permanent injunction ordering Defendant to honor Plaintiff's constitutional rights for the duration of her term as a WCJ.

## CONCLUSION

Plaintiff respectfully moves this Court to enter judgment on Count I in favor of Plaintiff. Upon the Court's entry of judgment as to Count I, Plaintiff respectfully requests that the Court enter permanent injunctive relief in accordance with Plaintiff's MPSJ.[5]

---

[5] Plaintiff acknowledges that this Court cannot instruct Defendant to conform her conduct to follow state and administrative procedures.

>Respectfully submitted,
>
>KENNEDY, HERNANDEZ & HARRISON, P.C.
>
>*/s/ Jeffrey D. Vescovi*
>Jessica M. Hernandez
>Paul J. Kennedy
>Elizabeth A. Harrison
>Jeffrey D. Vescovi
>201 Twelfth Street Northwest
>Albuquerque, New Mexico 87102
>(505) 842-8662
>
>*Attorneys for Plaintiff*

I hereby certify that a true copy of the foregoing was served electronically on July 14, 2025, through the CM/ECF system, which caused all parties or counsel of record to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

 */s/ Jeffrey D. Vescovi*
Jeffrey D. Vescovi