IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

SHANON S. RILEY,

    Plaintiff,

v.                                                             No. 1:25-cv-00044-KWR-KK

HEATHER JORDAN, in her individual
and official capacities as the Director
of the New Mexico Workers'
Compensation Administration,

    Defendant.

## DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendant Heather Jordan, in her individual and official capacities, by and through her counsel of record, hereby files her reply in support of her motion for summary judgment (Doc. 45).

### Introduction

Plaintiff continues to try to paint Defendant as a nefarious actor who is only offering Plaintiff the opportunity to go through the State Personnel Board proceedings to "avoid accountability" and "liability," (Doc. 50 at 1, 10), but nothing could be further from the truth. From the very beginning of this case, Defendant has acted in good faith and tried to give Plaintiff the very process she desired. Rather than resolve the underlying issue, Plaintiff has rejected the remedy she initially asked for, confused the issues, and requested (and received) unnecessary injunctive relief. Regardless, it is clear that Defendant is entitled to summary judgment. Taking the facts in the light most favorable to Plaintiff, Defendant provided her with sufficient pre-deprivation due process. Even if this was not the case, Plaintiff failed to allege or show that she did not have any

meaningful post-deprivation remedies. Plaintiff also failed to cite any similar Supreme Court or Tenth Circuit case demonstrating that Defendant violated a *clearly established* procedural or substantive due process right. And Plaintiff cannot show that any injunctive relief is necessary given Defendant's actions and sworn statements.

**Response to Plaintiff's Statement of Additional Material Facts**

A. Defendant does not dispute Plaintiff's statement of additional material facts in paragraph A.

B. Defendant does not dispute Plaintiff's statement of additional material facts in paragraph B.

C. Defendant does not dispute Plaintiff's statement of additional material facts in paragraph C.

D. Defendant does not dispute Plaintiff's statement of additional material facts in paragraph D.

E. Defendant does not dispute that she and WCA General Counsel Michael Holt met with Plaintiff on November 13, 2024. However, Defendant disputes Plaintiff's recollection of the meeting to the extent it differs from hers. (Doc. 45 ¶ 11); Supplemental Declaration of Heather Jordan, attached as Exhibit A at ¶¶ 5-7.

F. Defendant does not dispute Plaintiff's statement of additional material facts in paragraph F.

G. Defendant does not dispute delivering Plaintiff's termination letter shortly after Plaintiff admitted to not voting and Plaintiff reading the letter. However, Defendant disputes Plaintiff's recollection of the meeting to the extent it differs from hers. (Doc. 45 ¶ 11); Exhibit A at ¶¶ 5-7.

H.       Defendant disputes that she did not give Plaintiff an opportunity to explain why she had not voted or amended her timesheet in SHARE. *See* Exhibit A at ¶¶ 5-7.

1.       Defendant disputes that she told Plaintiff "I don't want there to be any drama." *See id.* at ¶ 6. Defendant recalls being concerned about Plaintiff's dignity at being terminated during work hours and not wanting Plaintiff to be seen as she was escorted from her office to the nearby exit door. *See id.* Because other employees were present and working in the vicinity of her office, it was agreed that arrangements would be made after November 13 for Plaintiff to pick up on another day her considerable personal effects located in her office. *See id.*

I.       Defendant does not dispute that Plaintiff asked if there was anyone she could "speak to," that WCA General Counsel Michael Holt wrote down the Governor's chief general counsel's contact information and gave it to Plaintiff. However, Defendant disputes that she told Plaintiff "you can try, but it is not going to change anything" and "the decision has already been made," in response to her request to speak to someone at the Governor's Office. *See id.* at ¶ 7. Defendant also disputes that Plaintiff did not have an opportunity to provide further explanation during their meeting. *See id.* at ¶ 5.

J.       Defendant does not dispute that prior to delivering the termination letter, Defendant did not submit a complaint to the State Personnel Board, did not provide Plaintiff with a State Personnel Board hearing, and did not undertake any other procedure under the New Mexico Administrative Code. Defendant disputes whether any of these actions were necessary under New Mexico law or the constitution, but this is a question of law.

K.       Defendant does not dispute that Plaintiff contacted the Governor's Office after her termination. However, Defendant disputes that Plaintiff was not able to have a telephone meeting with the Governor's Chief General Counsel. *See* Exhibit A at ¶ 7.

## Argument & Authorities

**I.    Defendant's meeting with Plaintiff provided sufficient pre-deprivation due process**

Even taking the facts in the light most favorable to Plaintiff, Defendant's meeting satisfied pre-deprivation due process. It is undisputed that, at a minimum: (1) Defendant met with Plaintiff and asked her if she voted; (2) Plaintiff eventually admitted she did not vote and had the opportunity to provide an explanation for her actions;[1] (3) Defendant handed Plaintiff a letter informing her that actions constituted a violation of the code of judicial conduct and grounds for her termination; (4) Plaintiff did not ask any further questions at that time or ask to speak with Defendant more; (5) Plaintiff asked that Defendant give her the termination letter;[2] (6) Plaintiff has had the opportunity to go through the State Personnel Board hearing process since February 4, 2025—which will provide robust procedural due process protections. (Doc. 45 at 3-4, ¶ 12-14, 20; Doc. 50 at 1-4); Exhibit A at ¶¶ 5-7. As explained in Defendant's motion, this constituted sufficient pre-deprivation procedural due process. (Doc. 45 at 10-13)

The Court should reject Plaintiff's arguments to the contrary. Plaintiff first argues that she was entitled to a pre-termination hearing in front of an "impartial decision-maker." (Doc. 50 at 7-8) Plaintiff does not claim (or provide any evidence) that Defendant had any animus against Plaintiff or that she made any "prior statements going to the merits" of Plaintiff's termination;

---

[1] Plaintiff now claims she did not explain that she simply forgot to edit her timesheet in this meeting. (*Compare* Doc. 51 at 2 n.1, *with* Doc. 36 at 2) But Plaintiff at least had the *opportunity* to explain this (or anything else) during the meeting, as there is no evidence that Defendant *prevented* her from speaking or providing a more detailed explanation in response to her questions. *See* Exhibit A at ¶¶ 5-7. It is undisputed Defendant asked Plaintiff open-ended questions and did not interrupt Plaintiff. (*See generally* Doc. 51; Doc. 44-1); Exhibit A at ¶¶ 5-7.

[2] Plaintiff's response that she "does not recall" this is insufficient to raise a dispute of material fact. *See Smith v. Am. Nat'l Prop. & Cas. Co.*, 508 F. Supp. 3d 1048, 1059 n.4 (N.D. Okla. 2020) (finding that lack of memory is insufficient to create a genuine issue of material fact and collecting cases).

rather, she argues that Defendant was not impartial because Defendant has allegedly already made the decision to terminate Plaintiff prior to the meeting, as supposedly evidenced by the fact that Defendant went to the meeting with a pre-signed termination letter. (Doc. 50 at 8-9)[3] But, as clarified in Defendant's supplemental declaration attached hereto and marked as Exhibit A, Defendant did *not* make the decision to terminate Plaintiff prior to the meeting—unlike the decisionmakers in the cases cited by Plaintiff. *See* Exhibit A at 4. She simply had the letter signed and ready to deliver if Plaintiff *if* she admitted to the conduct constituting a violation of the code of judicial conduct—which she did. *See id.* There is nothing improper about this. As the First Circuit has explained: "Instituting termination proceedings and preparing the necessary documentation in advance of the final pre-termination hearing are not deprivations of due process rights." *O'Neill v. Baker*, 210 F.3d 41, 49 (1st Cir. 2000); *accord Sutton v. Bailey*, 702 F.3d 444, 448 (8th Cir. 2012) (rejecting similar argument and stating that "[d]ue process does not require *predecision* hearings. It only requires an opportunity to be heard prior to the termination of benefits" (cleaned up)); *Riggins*, 572 F.3d at 1110 ("[N]othing requires a municipal employer to hold a hearing prior to the initial decision to terminate a position; rather, a hearing is required before employees are actually deprived of their jobs.").

Plaintiff next argues she was not given reasonable notice that her conduct (i.e., certifying that her use of voting leave was "true and accurate" when she did not actually vote) amounted to time fraud and a violation of the code of judicial conduct. (Doc. 50 at 9) But Plaintiff was on notice

---

[3] Plaintiff also points to Defendant's alleged response that "the decision has already been made" after Plaintiff asked to speak to someone in the Governor's Office. (Doc. 50 at 8) Defendant denies making this statement. *See* Exhibit A at ¶ 7. But even if she did, Plaintiff asserts Defendant made it *after* Defendant handed her the termination letter, and therefore, it cannot serve as evidence of any *pre-judged* bias. *See Riggins v. Goodman*, 572 F.3d 1101, 1113 (10th Cir. 2009) ("Personal bias may be shown by *prior* statements going to the merits[.]" (emphasis added)).

prior to the meeting that taking time off to vote without voting was not allowed and would be a basis for termination. (Doc. 45 at 2-3 ¶¶ 9-10; *see also* Doc. 2 at 2 (verified statement that "Plaintiff realized that . . . she needed to make corrections to her timesheet")) And, just like the firefighter in *Powell*, Plaintiff had sufficient notice when Defendant asked her if she voted and she admitted she did not. *See Powell v. Mikulecky*, 891 F.2d 1454, 1459 (10th Cir. 1989) ("[W]e believe that Oates' questions to Powell provided Powell with sufficient notice of the allegations against him[.]"); *see also Roberts v. Winder*, 16 F.4th 1367, 1380 (10th Cir. 2021) (finding no procedural due process violation when employer informed employee his rank and pay would be reduced and subsequently sent letter to employee's counsel rejecting his grievance and explaining termination); *Sutton*, 702 F.3d at 448 (finding no procedural due process violation when employer informally met with employee and read employee's alleged Facebook post to him, which the employee admitted posting but claimed was a joke). Plaintiff had an opportunity to expand on her answers or ask questions during the meeting, but she decided not to. *See* Exhibit A at ¶¶ 5-7. Indeed, Plaintiff apparently understood the consequences of her actions when she asked Defendant to go ahead and give her the termination letter—which definitively connected the obvious dots for Plaintiff. (Doc. 45 at 3 ¶ 12) Thus, as explained in Defendant's motion, this case is nearly identical to *Powell*, where a firefighter was terminated once he admitted to the conduct that the fire chief believed were grounds for termination. (Doc. 45 at 10-13)

Plaintiff's attempts to distinguish *Powell* are unavailing. First Plaintiff claims the firefighter in *Powell* was adequately notified of the charges against him because he "admitted directly to the basis for his termination" (i.e. he admitted to "an improper attempt to interfere with the City of Bartlesville's authority to establish a mutual aid policy, endangering the safety of the citizens of Bartlesville.") (Doc. 50 at 10 (quoting at *Powell*, 891 F.2d at 1455)) But that is exactly

6

what happened here. The firefighter did *not* admit to "an improper attempt to interfere with the City of Bartlesville's authority to establish a mutual aid policy." *Powell*, 891 F.2d at 1455. Rather, the firefighter simply admitted he "had asked them not to sign a mutual aid agreement." *Id.* It was the *fire chief* who "considered" this to be improper conduct. *Id.* While this conduct was eventually determined to have been permissible, *id.* at 1456, the Tenth Circuit still held that the fire chief's question and the firefighter's admission to the underlying conduct alone provided sufficient notice, *id.* at 1459. That is the exact situation here: while Plaintiff may not have admitted to "violating the code of judicial conduct" or "committing time fraud" (after all, what employee would?), she admitted she took voting leave without voting—conduct that Defendant considered constituted time fraud and a violation of the code of judicial conduct.

Next, Plaintiff claims that, unlike the situation in *Powell*, "an opportunity for further explanation would have certainly prevented Plaintiff's erroneous termination." (Doc. 50 at 10) According to Plaintiff, she could have explained that she had accrued other time off she could have used instead, which Plaintiff asserts would show that she had "absolutely no motive" to commit time fraud. *Id.* This argument misses the mark. First, it ignores the fact that Plaintiff *did* have an opportunity to provide more explanation. *See* Exhibit A at ¶¶ 5-7. But even if she did not have such an opportunity, it would not have "certainly prevented Plaintiff's erroneous termination." Plaintiff's explanation that she had other time would not have changed anything because an employee with accrued time still has a motive to commit time fraud so he or she can preserve his or her leave balance for other uses. Indeed, employees who regularly commit time fraud would likely have more time accrued because they are not reporting their time off or they are using other forms of leave improperly. Regardless, Plaintiff's argument is really an attack on the merits of Defendant's decision—not on the adequacy of the pre-termination procedure—and is therefore

irrelevant. *See Sutton*, 702 F.3d at 448 (rejecting argument that it was unreasonable for employer to believe that Facebook post was not a joke" and stating that such an argument "is an attack on the merits of the decision to terminate, not on the adequacy of the pre-termination procedure").

Plaintiff also claims *Powell* is distinguishable because the fire chief was supposedly unbiased and the firefighter received a "full-fledged post-termination hearing." (Doc. 50 at 11) But, as explained earlier, Plaintiff has provided zero evidence that Defendant was biased and would have terminated Plaintiff regardless of her answer. Likewise, Plaintiff has also had the opportunity to go through a "full-fledged post-termination hearing" since early February. (Doc. 45 at 4, ¶ 20) As explained below, the fact that this was not available until shortly after Plaintiff sued is of no moment. Accordingly, the Court should find *Powell* persuasive and conclude that Defendant's meeting with Plaintiff provided sufficient pre-deprivation due process.

## II. Plaintiff had meaningful post-deprivation state law remedies

Even if Defendant's meeting with Plaintiff was insufficient to satisfy pre-deprivation due process, the availability of meaningful post-deprivation state law remedies defeats her procedural due process claim. As explained in Defendant's motion, Plaintiff failed to allege or show that she did not have any meaningful post-deprivation remedies under state law. (Doc. 45 at 13-14) Plaintiff attempts to argue otherwise simply because she was unable to go through the State Personnel Board process until after she filed suit. (Doc. 50 at 11-13) However, Plaintiff provides absolutely no authority for the proposition that the state is barred from providing a post-deprivation hearing once a plaintiff files suit shortly after her termination.[4] For good reason: such a rule would

---

[4] Plaintiff cites *Copelin-Brown v. New Mexico State Pers. Office*, 399 F.3d 1248 (10th Cir. 2005), but it was undisputed in that case that the plaintiff was afforded no post-termination hearing—before or after the lawsuit had been filed. *Id.* at 1252, 55. Nor did the defendants in that case raise any argument that the plaintiff had other post-deprivation state law remedies. Accordingly, *Copelin-Brown* does not help Plaintiff. *See Friends of the Floridas v. United States Bureau of Land*

incentivize plaintiffs to rush to federal court to collect damages and attorneys' fees rather than try to actually resolve the purported due process violation.

Even assuming this Court becomes the first to adopt such a rule, Plaintiff still had other avenues for meaningful relief available to her prior to filing suit. For example, while the State Personnel Board dismissed Plaintiff's appeal because the WCA had not submitted a complaint at the time, she could have asked the WCA to do so any time before filing suit. (Doc. 45 at 4 ¶ 18) Alternatively, Plaintiff could have appealed the State Personnel Board's dismissal pursuant to state district court pursuant to NMSA 1978, § 10-9-18(G) or Rule 1-075 NMRA. *See Tri-State Generation & Transmission Ass'n, Inc. v. D'Antonio*, 2011-NMCA-014, ¶ 9, 149 N.M. 386, 389, 249 P.3d 924 ("Rule 1-075 governs writs of certiorari to administrative officers and agencies pursuant to the New Mexico Constitution when there is no statutory right to an appeal or other statutory right of review." (cleaned up)); *see generally Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 526 (10th Cir. 1998) (finding the fact that employee had ability to seek judicial review "germane to our inquiry into what process the state afforded him" "regardless of whether he exercised this right"). Or she could have filed a mandamus action against Defendant requiring her to either reinstate Plaintiff or file a complaint with the State Personnel Board since Defendant allegedly "failed to fulfill her duty to file a complaint with the Board." (Doc. 50 at 12); *See Amdor v. Lujan Grisham*, 2025-NMSC-___, ¶ 20, --- P.3d --- (N.M. Mar. 6, 2025) ("Mandamus may be used either to compel the performance of an affirmative act where the duty to perform the act is clearly enjoined by law."); *Cleven v. Soglin*, 903 F.3d 614, 618 (7th Cir. 2018) (Barrett, J.) ("In this situation, a meaningful postdeprivation hearing satisfies due process, and the State provided one

---

*Mgmt.*, 746 F. Supp. 3d 1039, 1166 (D.N.M. 2024) (Browning, J.) ("[C]ases are not authority for propositions not considered." (quoting *Sloan v. State Farm Mut. Auto. Ins. Co.*, 360 F.3d 1220, 1231 (10th Cir. 2004)).

here[: mandamus]." (cleaned up)).[5] Either way you cut it, Plaintiff has failed to plead or show that she did not have meaningful post-deprivation remedies she could have pursued prior to bringing this action. Therefore, Plaintiff's due process claim fails regardless of whether she was afforded adequate pre-deprivation due process. *See Requena*, 893 F.3d at 1212.

### III. Plaintiff failed to demonstrate a violation of a clearly established right

Even if the facts taken in the light most favorable to Plaintiff show that she was not provided sufficient pre-deprivation due process, she has not demonstrated that Defendant violated a *clearly established right*—which is required to overcome Defendant's qualified immunity. *See Greene v. Barrett*, 174 F.3d 1136, 1142 (10th Cir. 1999). Notably, Plaintiff has provided no Supreme Court or Tenth Circuit case addressing a similar situation where a public employee was terminated after meeting with their supervisor and admitting to the conduct constituting grounds for termination. Nor has Plaintiff provided any binding caselaw finding that the availability of a robust hearing shortly after the plaintiff filed a lawsuit cannot constitute a meaningful post-deprivation remedy for the loss—especially when other remedies like administrative appeals and mandamus were available prior to the suit being filed. Rather, she has merely relied on general statements of law. But this is plainly insufficient. As the Supreme Court has cautioned:

> [C]learly established law should not be defined at a high level of generality. As this Court explained decades ago, the clearly established law must be particularized to the facts of the case. Otherwise, plaintiffs would be able to convert the rule of qualified immunity into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights.

---

[5] Plaintiff summarily claims this Court should not rely on this out-of-circuit caselaw finding that mandamus actions provide an adequate post-deprivation remedy under state law. But this caselaw (approved by a now current Supreme Court justice) is persuasive and is consistent with Tenth Circuit precedent. *See Requena v. Roberts*, 893 F.3d 1195, 1212 (10th Cir. 2018) stating that a plaintiff "must plead facts showing that his state post-deprivation remedy was inadequate" (cleaned up)). Nor is it contrary to *Copelin-Brown*, 399 F.3d 1248, which did not consider such an argument. *See Friends of the Floridas*, 746 F. Supp. 3d at 1166.

*White v. Pauly*, 580 U.S. 73, 79 (2017) (cleaned up); *accord Powell*, 891 F.2d at 1457 ("The plaintiff must do more than identify in the abstract a clearly established right and allege that the defendant has violated it." (cleaned up)). Accordingly, Defendant is entitled to qualified immunity even if the Court determines Plaintiff's procedural due process rights were violated. *See Britton v. Keller*, 2020 WL 1889017, at *7 (D.N.M. Apr. 16, 2020) (Riggs, J.) (finding defendants entitled to qualified immunity when plaintiffs failed to cite anything other than general caselaw), *aff'd*, 851 Fed. Appx. 821 (10th Cir. 2021).

IV. **Plaintiff failed to demonstrate a substantive due process violation, let alone a violation of a clearly established substantive due process right**

As this Court has already concluded, Defendant's decision to terminate a workers' compensation judge for time fraud and a violation of the code of judicial conduct does not shock the judicial conscious. *See Riley v. Jordan*, 2025 WL 1375005, at **5-6 (D.N.M. May 9, 2025). Plaintiff's cursory arguments that Defendant's decision to terminate her was supposedly "arbitrary" are insufficient. *See Camuglia v. The City of Albuquerque*, 448 F.3d 1214, 1222 (10th Cir. 2006) (stating that while an arbitrary decision can violate substantive due process, the "arbitrariness must be extreme" and that the plaintiff "must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power" (cleaned up)). But even if Defendant's decision somehow rose to the level of "conscious shocking" behavior, Plaintiff has failed to show that Defendant violated any *clearly established* substantive due process right by failing to cite a similar case from the Supreme Court or Tenth Circuit. *See White*, 580 U.S. at 79; *Britton*, 2020 WL 1889017, at *7 (Riggs, J.). Accordingly, the Court should grant summary judgment in Defendant's favor.

## V.      Plaintiff's claim for injunctive relief is moot and barred by sovereign immunity

The Court should soundly reject Plaintiff's claims that she is still entitled to injunctive relief. As previously explained, any continuing harm from the alleged due process violation has been remedied by the provision of the State Personnel Board proceedings—which are currently ongoing. (Doc. 45 at 7-9); State Personnel Board Scheduling Order, attached as Exhibit B. Even Plaintiff agrees this is true. (Doc. 50 at 14 ("[T]he harm from that violation continues until Plaintiff receives the process she is due.")) Nonetheless, Plaintiff still thinks a permanent injunction is necessary simply because New Mexico law requires that Defendant make the ultimate decision to act on Plaintiff's termination after the State Personnel Board process has concluded. *Id.*[6] Plaintiff claims—*without any supporting evidence whatsoever*—that "Defendant has every incentive to wrongfully terminate Plaintiff regardless of the Board's findings." *Id.* This is pure speculation, and it is contradicted by Defendant's sworn statements. *See* Exhibit A at ¶¶ 5, 8-9. This is plainly insufficient to require the extraordinary equitable relief of a permanent injunction. *See Facio v. Jones*, 929 F.2d 541, 544 (10th Cir. 1991) ("[A] plaintiff cannot maintain a[n] injunctive action unless he or she can demonstrate a good chance of being likewise injured in the future."). Plus, it is unclear what injunctive remedy would even be appropriate under these circumstances. What would the Court order? Require Defendant to "not be biased"? Require someone else to make the decision, in violation of New Mexico law? Enjoin Defendant to quit so another director would make the decision in compliance with state law? Plaintiff does not say. And this Court need not guess.

---

[6] Plaintiff also summarily claims "Injunctive relief is necessary to ensure that *the Board* conducts a proper hearing." (Doc. 50 at 14 (emphasis added) But the State Personnel Board is not a party hereto and therefore cannot be enjoined.

12

Relatedly, Plaintiff claims her request for injunctive relief is not moot under the voluntary cessation doctrine. (Doc. 50 at 15) However, Defendant has clearly shown that the challenged conduct (i.e., terminating Plaintiff without providing due process) is not reasonably expected to reoccur. She has initiated the State Personnel Board process Plaintiff desired, and she has stated under oath that she has "no ill will towards Plaintiff, and [she] will make [her] decision regarding [Plaintiff's] potential termination in good faith after thoroughly reviewing the State Personnel Board's findings." Exhibit A at ¶ 8. This is more than a "mere informal promise or assurance that the challenged practice will cease." *Prison Legal News v. Fed. Bureau of Prisons*, 944 F.3d 868, 881, 86 (10th Cir. 2019) (cleaned up) (finding official's declaration that he would provide procedural protections going forward "satisfy its formidable burden to show no reasonable expectation of recurrence exists and that the voluntary cessation exception does not apply"). As the Tenth Circuit has explained, "[G]overnment self-correction provides a secure foundation for mootness so long as it seems genuine. And absent evidence the voluntary cessation is a sham, the mere possibility a successor official may shift course does not necessarily keep a case live." *Id.* at 882 (cleaned up).

Despite this, Plaintiff still faults Defendant for not expressly "promis[ing] to honor Plaintiff's constitutional rights for the duration of the SPO [sic] hearing and the duration of Plaintiff's term of employment," and she requests an injunction "ordering Defendant to honor Plaintiff's constitutional rights during the SPO [sic] hearing and for the duration of Plaintiff's term as a WCJ." (Doc. 50 at 15) Essentially, Plaintiff just wants an injunction to "obey the law." Such a request is both vague and improper. *See Shook v. Bd. of Cnty. Commissioners of Cnty. of El Paso*, 543 F.3d 597, 604 (10th Cir. 2008) ("[I]njunctions simply requiring the defendant to obey the law are too vague to satisfy Rule 65."); *see, e.g.*, *Burns v. Rovella*, 2020 WL 12863774, at *12 (D.

13

Conn. Feb. 21, 2020) (finding request to prohibit defendant from "denying [the plaintiff] his rights under the Fourteenth Amendment Due Process clause of the United states Constitution" improper (cleaned up)); *Randolph v. E. Baton Rouge Par. Sch. Bd.*, 2016 WL 3579224, at *3 (M.D. La. June 28, 2016) ("The request to enjoin Defendants from bullying, harassing, intimidating, or depriving administrators of due process is essentially an 'obey the law' injunction. Such broad injunctive relief is improper and will not be ordered."). At bottom, Plaintiff is receiving the very remedy she initially requested, and there is no indication that Defendant will do anything to deprive Plaintiff of due process or terminate her again without providing sufficient procedural due process. Left with nothing more than speculation and a request to order Defendant to simply "obey the law," this Court should reject Plaintiff's requested injunction.

## Conclusion

For the foregoing reasons, Defendant respectfully requests that this Court grant summary judgment in her favor on each of Plaintiff's claims pursuant to Fed. R. Civ. P. 56.

Respectfully submitted,

**SERPE | ANDREWS, PLLC**

By */s/ Cody R. Rogers*
Cody R. Rogers
Blade M. Allen
2540 El Paseo Road, Suite D
Las Cruces, NM 88001
Tel. (575) 288-1453
crogers@serpeandrews.com
ballen@serpeandrews.com
***Attorneys for Defendant***

**CERTIFICATE OF SERVICE**

      I hereby certify that on this 29th day of July, 2025, I filed the foregoing through this Court's CM/ECF e-filing system and caused a true and correct copy of the same to be served upon all parties of record as reflected more fully in the electronic Notification of Service.

      Respectfully submitted,

      */s/ Cody R. Rogers*
      Cody R. Rogers