## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

———————————

SHANON S. RILEY,

       Plaintiff,

v.                              No. 1:25-cv-00044-KWR-KK

HEATHER JORDAN *in her individual
and official capacities as the
Director of the New Mexico Workers'
Compensation Administration*,

       Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on Plaintiff's Motion for Partial Summary Judgment (**Doc. 36**) and Defendant's Motion for Summary Judgment (**Doc. 45**).

This case arises from a Workers' Compensation Judge's ("Plaintiff") termination during a meeting with her supervisor ("Defendant"). Defendant terminated Plaintiff despite a formal pretermination hearing process provided by state law. After her termination, Plaintiff did not receive a post-termination hearing, and she was ineligible for a hearing available to other career employees. Subsequently, Plaintiff filed this current action, seeking legal and equitable relief.

Following the Court's preliminary injunctive order, the parties filed cross-motions for summary judgment. Having reviewed the parties' briefing, exhibits, and the relevant law, the Court finds that each motion is well-taken in part. Defendant is not entitled to qualified immunity on Count I but is entitled to qualified immunity on Count II. Plaintiff is entitled to judgment as a matter of law on Count I. And, although Plaintiff's request for equitable relief is not moot, a preliminary injunction is not appropriate at this time. Therefore, Plaintiff's and Defendant's Motions are both **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND

Plaintiff challenges the termination of her employment as a Workers' Compensation Judge ("WCJ") for the New Mexico Workers' Compensation Administration ("WCA"). **Doc. 1**. (Complaint). Plaintiff argues that she was denied due process under the Fourteenth Amendment for the WCA's failure to follow the pretermination procedures required under state law. Plaintiff asserted the following claims in her Complaint:

Count I: Procedural Due Process Violation Against Defendant in Individual Capacity

Count II: Substantive Due Process Violation Against Defendant in Individual Capacity

Count III: Request for Preliminary Injunction Against Defendant in Official Capacity

Count IV: Request for Permanent Injunction Against Defendant in Official Capacity

*Id.* In May 2025, the Court granted Plaintiff a preliminary injunction, ordering Defendant to reinstate Plaintiff to her pretermination status as a WCJ. **Doc. 27**. In June 2025, the Court modified the injunction by allowing Defendant to place Plaintiff on administrative leave. **Doc. 42**. Defendant has appealed the Court's injunctive order, which is pending before the Tenth Circuit. *See* **Doc. 31** (Notice of Appeal). Therefore, only Counts I, II, and IV remain before the Court.

## FACTS

Plaintiff Shanon S. Riley served as a WCJ from her appointment on August 20, 2011, to her termination by WCA Director Heather Jordan ("Defendant") on November 13, 2024. **Doc. 2 at 1–2**. This action primarily arises from the events leading up to Plaintiff's employment termination.

On November 5, 2024, Plaintiff requested and received two hours of administrative leave for the purpose of voting on Election Day. **Doc. 7-1 at 8** (Signed Leave Request Form). Although Plaintiff left work early to vote and arrived at the polling location, she ultimately did not vote.

**Doc. 19 at 19** (Joint Status Report Stipulations).  According to Plaintiff, she mistakenly forgot to amend her timesheet before submitting it.  **Doc. 36 ¶ 9**.  As a result, Plaintiff submitted a timesheet with the voting leave.  **Doc. 50-1 ¶ 7**; **Doc. 7-1 at 9** (Timesheet).  At the time, Plaintiff had accrued over 200 hours of annual leave and 240 hours of sick leave. **Doc. 19 at 3**.

On November 12, Defendant was informed that public records did not show that Plaintiff voted on Election Day. **Doc. 44-1 ¶ 10** (Defendant's Declaration).  The next day, Defendant and WCA General Counsel went to Plaintiff's office. *Id.* **¶ 11; Doc. 50-1 ¶ 5** (Plaintiff's Declaration). Although the parties disagree over the exact words said, the parties do not dispute the essential conversation points.

The relevant conversation was brief.  *See* **Doc. 44-1 ¶ 11; Doc. 50-1 ¶ 6–10**.  Defendant asked Plaintiff a couple of questions about Plaintiff's voting on Election Day.  **Doc. 44-1 ¶ 11; Doc. 50-1 ¶ 6–8**.  Plaintiff told Defendant she had left to vote and asked if she could provide video footage of the polling location as proof. **Doc. 44-1 ¶ 11; Doc. 50-1 ¶ 6**.  Defendant told Plaintiff that her employment would be terminated if she could not provide proof of a vote.  **Doc. 44-1 ¶ 11; Doc. 50-1 ¶ 7**.  When Plaintiff replied that she could not provide a voting record because she did not vote, Defendant handed Plaintiff a signed termination letter.  **Doc. 44-1 ¶ 11; Doc. 50-1 ¶¶ 9–10**.  According to the letter, "[s]uch conduct is a violation of the code of judicial conduct, which requires you to promote integrity and to 'avoid impropriety and the appearance of impropriety.'" **Doc. 35-1** (Termination Letter).  The letter further stated that Plaintiff's termination was effective immediately. *Id.*

When Plaintiff asked if she could speak to someone, WCA General Counsel provided Plaintiff with the contact information of someone in the Governor's office. **Doc. 50-1 ¶ 14; Doc. 53 at 3**. The meeting ended shortly after, and Plaintiff left. **Doc. 50-1 ¶ 16; Doc. 44-1 ¶ 11**.

Although Plaintiff attempted to meet with the governor's office, she was unable to secure an in-person meeting. **Doc. 50-1 ¶ 17; Doc. 53-1 ¶ 7**.

Prior to terminating Plaintiff, Defendant did not submit a complaint to the State Personnel Board ("Board"), provide Plaintiff with a hearing, or otherwise comply with the pretermination procedures required by New Mexico law.  **Doc. 50 at 4; Doc. 53 at 3**.

Plaintiff filed suit on January 14, 2025, seeking injunctive relief and damages under 42 U.S.C. §1983 for deprivation of her property interest in employment without due process of law. **Doc. 1**.  On the date it was filed, Defendant had taken no action to provide Plaintiff with post-termination procedures.  *See* **Doc. 44-1 ¶ 14**.  In early February 2025, the WCA subsequently submitted a complaint to the State Personnel Board.  **Doc. 44-1 ¶ 15; Doc. 7-1 at 1**.  In March 2025, the Board dismissed the WCA's complaint for lack of jurisdiction since Plaintiff was no longer a judge. **Doc. 14-1**.

In February 2025, Defendant made Plaintiff two offers of reinstatement.  **Doc. 10-1; Doc. 18-1**.  Plaintiff rejected both offers, stating that they did not restore the status quo and violated her First Amendment right to freedom of speech.  **Doc. 10-2; Doc. 18-2**.  After the Court granted Plaintiff a preliminary injunction, both parties moved for summary judgment.  Plaintiff seeks a partial summary judgment as to Counts I and IV.  **Doc. 36**. Meanwhile, Defendant seeks summary judgment as to Counts I, II, and IV. **Doc. 45**.

## LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is a fact that could affect the outcome of the suit.  *Smothers v. Solvay Chems., Inc.*, 740 F.3d 530, 538 (10th Cir. 2014).  A genuine dispute over a material fact exists if a rational jury

could find in favor of the nonmoving party. *Id.*; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.").

Initially, the movant bears the burden of demonstrating "the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Savant Homes, Inc. v. Collins*, 809 F.3d 1133, 1137 (10th Cir. 2016). If the movant meets her initial burden, the burden shifts to the nonmovant to "set forth specific facts from which a rational trier of fact could find for the nonmovant." *Id.* (quoting *Libertarian Party of N.M. v. Herrera*, 506 F.3d 1303, 1309 (10th Cir. 2007)). "For dispositive issues on which the plaintiff will bear the burden of proof at trial, he must 'go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to [his] case in order to survive summary judgment.'" *Cardoso v. Calbone*, 490 F.3d 1194, 1197 (10th Cir. 2007) (quoting *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000)).

Inferences drawn from the underlying facts must be construed in the light most favorable to the nonmovant. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam). The proffered evidence "must be based on more than mere speculation, conjecture, or surmise." *Cardoso*, 490 F.3d at 1197 (quoting *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006)). At the summary judgment stage, a court's function is to "determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

In analyzing cross-motions for summary judgment, a court "must view each motion separately, in the light most favorable to the non-moving party, and draw all reasonable inferences in that party's favor." *United States v. Sup. Ct. of N.M.*, 839 F.3d 888, 906–07 (10th Cir. 2016).

"Cross motions for summary judgment are to be treated separately; the denial of one does not require the grant of another." *Christian Heritage Acad. v. Okla. Secondary Sch. Activities Ass'n*, 483 F.3d 1025, 1030 (10th Cir. 2007).

## DISCUSSION

Plaintiff seeks a partial summary judgment as to her 42 U.S.C. § 1983 procedural due process claim (Count I) and her request for permanent injunctive relief (Count IV), arguing that there is no genuine dispute of material fact and permanent, injunctive relief is now appropriate and necessary. **Doc. 36**. Meanwhile, Defendant seeks summary judgment as to Counts I, II, and IV. **Doc. 45**. Defendant argues that Plaintiff's § 1983 claims for violations of her procedural and substantive due process rights (Counts I and II) are barred by qualified immunity. *Id.* Further, Defendant argues that Plaintiff's request for permanent injunctive relief is now moot. *Id.*

For the reasons stated below, the Court will deny Defendant's Motion and grant Plaintiff's Motion as to Count I. Defendant is not entitled to qualified immunity and Plaintiff has met her burden that there is no genuine disputed of material fact. As to Count II, Defendant is entitled to qualified immunity, and the Court will grant Defendant's Motion. Finally, although Plaintiff's claim for prospective relief is not moot, the issue of damages remains. Therefore, the Court will deny both Motions as to Count IV.

I. **Jurisdiction of the Court to decide the case on the merits.**

Before turning to the Motions, the Court first determines that it has jurisdiction over the merits of this action.

"Although the filing of a notice of appeal ordinarily divests the district court of jurisdiction, in an appeal from an order granting or denying a preliminary injunction, a district court may nevertheless proceed to determine the action on the merits." *Free Speech v. Fed. Election Comm'n*,

720 F.3d 788, 791 (10th Cir. 2013) (quoting *United States v. Price*, 688 F.2d 204, 215 (3d Cir. 1982)); *see also Colorado v. Idarado Mining Co.*, 916 F.2d 1486, 1490 n.2 (10th Cir. 1990).

The Tenth Circuit has not expressly extended the above rule to summary judgment motions. Yet, this Court is persuaded by the other circuit courts' holdings that district courts may grant or deny summary judgment motions while an interlocutory injunction appeal is pending. *See, e.g.*, *Moltan Co. v. Eagle-Picher Indus., Inc.*, 55 F.3d 1171, 1174 (6th Cir. 1995) (finding that district court had jurisdiction to grant or deny summary judgment but should not have entered permanent injunction because plaintiff also sought legal remedies and triable issues remained). Extending *Free Speech*'s holding to summary judgment is also consistent with the Tenth Circuit's rationale that a district court should act promptly to determine a case's merits in injunction cases. *See* 720 F.3d at 791–92 (citing 16 *Wright & Miller's Federal Practice & Procedure* § 3921.2 (3d ed. 2025)).

Further, in granting or denying summary judgment, the Court is acting consistently with at least one other district court within the Tenth Circuit. *See Ortiz y Pino v. Toulouse Oliver*, 763 F. Supp. 3d 1328, 1335 (D.N.M. 2025) (finding jurisdiction to rule on summary judgment motion during pendency of interlocutory injunctive appeal), *quashed in part*, No. 1:24-CV-00240-MIS-JFR, 2025 WL 672884 (D.N.M. Mar. 3, 2025).

Accordingly, the Court will now turn to the parties' cross-motions for summary judgment.

## II.  **Cross-Motions for Summary Judgment as to Count I.**

First, both parties seek summary judgment on Count I: Plaintiff's § 1983 claim for violation of her constitutional right to procedural due process. Plaintiff asserts that the material facts demonstrate that Defendant violated her constitutional rights when Defendant did not provide her with adequate process before terminating her employment as a WCJ. **Doc. 36 at 7**. Meanwhile,

Defendant argues that summary judgment should be granted in her favor because she is entitled to qualified immunity; Plaintiff has failed to show that Defendant violated a clearly established federal right. **Doc. 45 at 14**.

For the reasons discussed below, the Court finds that Defendant is not entitled to qualified immunity. Plaintiff has shown that Defendant violated her clearly established rights such that a reasonable official in Defendant's position would have known that Defendant's conduct violated those rights. Further, Plaintiff has met her burden of showing that no genuine issue of material fact exists. Plaintiff is entitled to a judgment as a matter of law on Count I.

### A.    Defendant's defense of qualified immunity and summary judgment.

First, Defendant asserts the defense of qualified immunity, which shields government officials from liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

To overcome a qualified immunity defense, a plaintiff must show: (1) that the defendant's actions violated a federal constitutional or statutory right and (2) that the right was clearly established at the time of the defendant's unlawful conduct. *Davis v. Clifford*, 825 F.3d 1131, 1135 (10th Cir. 2016). A court has discretion to address either prong first. *Pearson*, 555 U.S. 223 at 236.

For a right to be clearly established, "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Mocek v. City of Albuquerque*, 813 F.3d 912, 922 (10th Cir. 2015) (quoting *Morris v. Noe*, 672 F.3d 1185, 1196 (10th Cir. 2012)). A case need not be

8

directly on point, "but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

In determining whether the plaintiff has met her burden of overcoming qualified immunity at the summary judgment stage, a court considers the facts, supported on the record, in a light most favorable to the plaintiff. *A.M. v. Holmes*, 830 F.3d 1123, 1136 (10th Cir. 2016). A plaintiff's version of the facts as alleged, however, "must find support in the record." *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir.2009). Just with any motion for summary judgment, a court should not adopt a party's version of the facts that is "blatantly" contradicted by the record, such that no reasonable jury could believe it. *Scott v. Harris*, 550 U.S. 372, 380 (2007). At its core, a court's "principal purpose is to determine whether plaintiff's factual allegations are sufficiently grounded in the record such that they may permissibly comprise the universe of facts that will serve as the foundation for answering the legal question before the court." *Cox v. Glanz*, 800 F.3d at 1243 (quoting *Thomson*, 584 F.3d at 1326 (Holmes, J., concurring)).

If a plaintiff meets qualified immunity's strict two-part test, then a defendant, like any other movant for summary judgment, must show that there are no genuine issues of material fact and that she is entitled to judgment as a matter of law. *Nelson v. McMullen*, 207 F.3d 1202, 1206 (10th Cir. 2000).

Based on the facts in this case, the Court first considers whether, viewed in the light most favorable to Plaintiff, Defendant's conduct violated Plaintiff's constitutional rights.

### 1.    Defendant violated Plaintiff's right to procedural due process.

"The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (internal quotation marks omitted). To determine whether an individual's right to procedural due process was violated, a court engages in a two-step inquiry. First, the Court asks whether the individual

possesses a protected property or liberty interest to which due process applies. *Camuglia v. City of Albuquerque*, 448 F.3d 1214, 1219 (10th Cir. 2006). If the party possesses an interest, the Court then asks if the individual was afforded an adequate level of process. *Id.* The existence of a property interest is a matter of state law; the adequacy of process is a matter of federal constitutional law. *Hulen v. Yates*, 322 F. 1229, at 1247 (10th Cir. 2003).

> i.    *Plaintiff held a protected property interest.*

To have a property interest in employment, a plaintiff must have "a legitimate expectation of continued employment." *Hennigh v. City of Shawnee*, 155 F.3d 1249, 1253 (10th Cir. 1998); *see also Garcia v. City of Albuquerque*, 232 F.3d 760, 769 (10th Cir. 2000). Public employees who can be discharged only for cause retain a constitutionally protected property interest in their continued employment and cannot be fired without due process. *Gilbert v. Homar*, 520 U.S. 924, 928–29 (1997).

Here, neither party disputes that Plaintiff was a public employee whose five-year term had been renewed in August 2022. *See* **Doc. 7-1 at 3** (Reappointment Letter). The parties also do not dispute that Plaintiff could only be fired for violation of the judicial code of conduct. *See* NMSA 1978, § 52-5-2(C) (2004) ("A workers' compensation judge shall be required to conform to all canons of the code of judicial conduct as adopted by the supreme court, . . . . Violation of those canons shall be exclusive grounds for dismissal prior to the expiration of his term." (emphasis added)). Yet, Defendant argues that, despite the clear language of Section 52-5-2(C), state law did not confer Plaintiff with the expectation of continued employment until the end of her five-year term. **Doc. 45 at 15**. The Court disagrees.

To make this argument, Defendant points to WCJs' exemption from the protections of the Personnel Act.[1]  *Id.*  Defendant then states that a protected interest should not be read into the statute because the language does not "clearly require" a hearing before termination by the director.[2]  *Id.*  In response, Plaintiff points out that, when read together, the provisions of Section 52-5-2(C) and 1.7.12.25 NMAC (2005) contemplate that a WCJ may only be removed for cause. **Doc. 50 at 6–7**.  Therefore, she possessed a protected property interest.  *Id.*  The Court agrees with Plaintiff.  Section 52-5-2(C) states that all complaints against WCJs must be filed with the Board, which reports its findings to the WCA director, and 1.7.12.25 NMAC outlines the procedures the Board will follow to effectuate the purpose of Section 52-5-2(C).  Coupled together, state law intended to restrict the government's ability to terminate WCJs.

Therefore, the Court finds that Plaintiff has proven that she retained a constitutionally protected property interest in her continued employment and was entitled to due process.

>                    *ii.    Plaintiff was not afforded adequate due process.*

Next, the Court considers whether Plaintiff was afforded the appropriate level of process. Plaintiff argues that she was deprived of adequate due process because she did not have a pretermination hearing, she was not given adequate notice before the hearing, and Defendant was biased against Plaintiff.  **Doc. 50 at 7–13**.

---

[1] As discussed in the next subsection, Defendant later overlooks this exemption by arguing that Plaintiff had the opportunity to appeal her termination decision under the Personnel Act. *See* **Doc. 53 at 9**.

[2] The Court notes that *State ex rel. Duran v. Anaya*, 1985-NMSC-044, 102 N.M. 609, 698 P.2d 882, cited by Defendant, does not apply here.  There, the New Mexico statute at issue provided for removal of the plaintiffs' employment by the governor.  *Id.* ¶ 10. The plaintiffs' argument failed because of the governor's authority to appoint and remove officials under the state constitution. *Id.*  These cases are readily distinguishable since the WCA director, not the governor, appoints WCJs under Section 52-5-2(B).

What constitutes adequate procedural due process "is flexible and calls for such procedural protections as the particular situation demands." *Mathews*, 424 U.S. at 334. Generally, "[a]n essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950)). In the public employment context, due process requires: (1) an impartial tribune, (2) reasonable notice, and (3) a pretermination hearing, absent exigent circumstances. *Patrick v. Miller*, 953 F.2d 1240, 1245 (10th Cir. 1992).

The sufficiency of pretermination procedures depends on the availability of post-termination procedures. *Calhoun v. Gaines*, 982 F.2d 1470, 14 (10th Cir. 1992). If the state only provides the employee with minimal pretermination procedures, the post-termination procedures become "much more important" as "the employee's fate may depend entirely upon the post-termination hearing." *Benavidez v. City of Albuquerque*, 101 F.3d 620, 626 (10th Cir. 1996). Conversely, if a plaintiff has a meaningful pretermination proceeding, the state may simply need to give an employee "some opportunity" to present her side of the case at a post-termination hearing—the post-termination hearing is no longer of great importance. *Id.*

If state law provides for a meaningful post-termination hearing, the pretermination hearing need not be formal or elaborate. *Powell v. Mikulecky*, 891 F.2d 1454, 1458 (10th Cir. 1989) (citing *Loudermill*, 470 U.S. at 545); *see also West v. Grand Cnty.*, 967 F.2d 362, 367 (10th Cir. 1992) ("The standards for a pretermination hearing are not stringent because of the expectation that a more formal post-termination hearing will remedy any resulting deficiencies."). Rather, in this context, a pretermination hearing is "an initial check against mistaken decisions—essentially a determination of whether there are reasonable grounds to believe that the charges against the

12

employee are true and support the proposed action." *Powell*, 891 F.2d at 1458 (quoting *Loudermill*, 470 U.S. at 545–46). A pretermination hearing "is intended to supplement, not duplicate, the more elaborate post-termination hearing." *Id.*

In short, adequacy of the pretermination process depends on the interests of the parties and the nature of post-termination proceedings. *Langley v. Adams Cnty.*, 987 F.2d 1473, 1480 (10th Cir. 1993); *see also Calhoun*, 982 F.2d at 1476 (citing *Loudermill*, 470 U.S. 532). At a minimum, "a tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story" at a pretermination hearing, provided that it is followed by a post-termination hearing. *Loudermill*, 470 U.S. at 546–48.

Here, Plaintiff has met her burden that Defendant violated her right to procedural due process. Specifically, Plaintiff has shown that the pretermination procedures were constitutionally inadequate because she did not receive a formal hearing or adequate notice of the charges against her before a hearing.[3]

In making this determination, the Court first considers the availability of a "full" post-termination hearing. *See id.* at 546; *see also Powell*, 891 F.2d at 1459–60 (recognizing that *Loudermill*'s holding rested in part on state law provisions for a full post-termination hearing and briefly evaluating available procedures in the case). In New Mexico, the termination procedures for WCJs are generally created by statute, with specific procedural requirements outlined in the

---

[3] In Plaintiff's Response to Defendant's Motion, she seems to allege that Defendant violated her rights for failure to provide her with post-termination process. *See* **Doc. 50 at 11–12**. After reviewing Plaintiff's Complaint, the Joint Status Report, and Plaintiff's Motion, the Court concludes that Plaintiff is simply raising the lack of post-termination process to demonstrate that Defendant's pretermination procedure was inadequate, not to separately challenge her post-termination process.

administrative code. *See* Section 52-5-2; 1.7.12.3 NMAC (2002) (stating that it is authorized, in part, by Section 52-5-2(B)–(C)). However, nothing in the Workers' Compensation Administration Act ("WCAA"), NMSA 1978, § 52-5-1 to -22 (1978, as amended 2013), outlines a post-termination hearing provided to WCJs. And, unlike career employees, WCJs cannot appeal their termination to the Board to receive a post-termination hearing under the Personnel Act, NMSA 1978, § 10-9-18 (2009). The WCAA excludes WCJs from the Personnel Act in Section 52-5-2(B).[4] No other state law appears to provide WCJs with a full post-termination hearing.[5]

Instead, state law affords WCJs with a formal pretermination hearing. WCJs can only be removed for violation of the judicial code of conduct, as adopted by the New Mexico Supreme Court. Section 52-5-2(C). To determine whether a violation of the code has occurred, the state

---

[4] Neither party disputes that Plaintiff attempted to appeal her termination decision to the Board in November 2024. *See* **Doc. 50 at 12; Doc. 53 at 9**. Instead of proceeding with Plaintiff's appeal under Section 10-9-18, the Board dismissed the appeal under Section 51-5-2(C) because the WCA had not filed a complaint. Later, the Board dismissed WCA's February 2025 complaint for lack of jurisdiction because Plaintiff was not employed as a WCJ on the complaint's filing date. *See* **Doc. 14-1** (Board's Order of Dismissal). These actions by the Board support the Court's interpretation of the WCAA and the Personnel Act.

[5] Defendant raises the option of Rule 1-075 NMRA and a writ of mandamus, NMSA 1978, §§ 44-2-1 to -14 (1884), as available post-termination remedies to Plaintiff. The Court declines to consider them as post-termination hearings for this narrow inquiry into whether a post-termination hearing was available to Plaintiff under *Loudermill* and *Powell*. First, Rule 1-075 likely would not apply since there is no administrative decision (an adjudicatory hearing) for a judicial body to review. Second, a writ of mandamus is limited to compelling "the performance of an act which the law specially enjoins as a duty resulting from an office, trust or station." Section 44-2-4. State law only affords Plaintiff with a pretermination hearing. *See* Section 52-5-2(C). Therefore, a judicial body would have considered whether to compel Defendant to reinstate Plaintiff to provide her with the complaint and hearing process required under state law. *See Nat'l Educ. Ass'n of N.M. v. Santa Fe Pub. Schs.*, 2016-NMCA-009, ¶ 17, 365 P.3d 1 (writ of mandamus was proper to compel mandatory, ministerial duty to hold a hearing under state law); *see also Brown v. Romero*, 1967-NMSC-057, ¶ 8, 425 P.2d 310 (mandamus was available to test whether plaintiff had right to a hearing under state law). Although the Court acknowledges that these were possible post-termination procedures available to Plaintiff, she has not challenged the sufficiency of her post-termination process.

has promulgated the administrative procedures outlined in 1.7.12.25 NMAC. Under these pretermination procedures, a Personnel Board hearing officer presides over a formal, evidentiary hearing before preparing a report for the Board, which makes its findings to the director of the WCA. 1.7.12.25 NMAC. During the administratively prescribed process, a WCJ has a right to file an answer to the complaint, and "right and reasonable opportunity to defend against the charges by the introduction of evidence, to be represented by counsel and to examine and cross-examine witnesses." *Id.* at 1.7.12.25(D), (G)(4) NMAC.

Based on the above, the Court concludes that Plaintiff did not have access to a full post-termination hearing under state law.[6] Further, Plaintiff was unable to meaningfully appeal the termination decision using the phone number provided to her by WCA counsel. *See* **Doc. 50-1 ¶ 17; Doc. 53-1 ¶ 7**. And even if she was able to secure a meeting with the governor's office, it is unclear whether the office had the authority to consider the merits of Plaintiff's termination under state law. *See Calhoun*, 982 F.2d at 1472 n.1.

---

[6] The Court rejects Defendant's attempt to paint the scheduled hearing before the Board—available to Plaintiff now that she has been reinstated—as a post-termination hearing. *See* **Doc. 45 at 13–14**. In addition to the points discussed, the Court notes that state law only allows the Board to consider whether a sitting WCJ violated the judicial conduct code, not whether a terminated WCJ was terminated for just cause. *Compare* 1.7.12.25(K) NMAC, *with* Section 10-9-18(F). Nor does the Board have the authority to recommend or order the modification of disciplinary action, reinstatement, or back pay to a WCJ. *Compare* 1.7.12.25(K) NMAC, *with* Section 10-9-18(F). For these reasons, the Court disagrees with Defendant that 1.7.12.25 NMAC, in accordance with Section 52-5-2(C), could ever provide Plaintiff with a post-termination hearing.
Even if the upcoming hearing before the Board qualified as a post-termination hearing, the Court would not find that Plaintiff waived her right to an adequate pretermination hearing by waiving a post-termination hearing. *See Seibert v. State of Okla., ex rel. Univ. of Okla. Health Scis. Ctr.*, 867 F.2d 591, 598 (10th Cir. 1989), *abrogated on other grounds by*, *Fed. Lands Legal Consortium ex rel. Robart Est. v. United States*, 195 F.3d 1190 (10th Cir. 1999) (plaintiff's waiver of post-termination process was not relevant to issue of whether plaintiff received adequate pretermination procedures); *cf. Koessel v. Sublette Cnty. Sheriff's Dep't*, 717 F.3d 736, 749 (10th Cir. 2013) (plaintiff waived right to challenge post-termination procedures by failing to request a post-termination hearing).

With the unavailability of a post-termination hearing in mind, the Court turns the adequacy of the pretermination procedure provided to Plaintiff. To evaluate its adequacy, the Court only considers what is required under the U.S. Constitution, not whether Defendant complied with procedures required under New Mexico law. *See Hulen*, 322 F.3d at 1247.

Here, Defendant contends that the November 13 conversation served as a constitutionally adequate pretermination hearing. **Doc. 45 at 16**. Plaintiff disagrees. *See* **Doc. 50 at 9**. For the reasons below, the Court agrees with Plaintiff; she has met her burden that her right to procedural due process was violated for lack of a constitutionally adequate pretermination hearing.

First, the pretermination "hearing" that occurred between Defendant and Plaintiff was far from adequate because Plaintiff should have received a formal hearing. Defendant does not argue, and the record does not support, that there were exigent circumstances warranting Plaintiff's quick termination without a hearing. And since a finding of cause "often involves factual disputes," Plaintiff should have been able to call and cross examine witnesses. *See Goldberg v. Kelly*, 397 U.S. 254, 269 (1970) ("In almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses."). Plaintiff should have been given the opportunity to retain counsel. *See id.* at 270–71. And Plaintiff should have been able to present evidence to defend the charges against her that her conduct rose to violation of the judicial code of conduct, warranting termination. *See id.* at 268.

Defendant argues that the conversation on November 13, providing notice with an opportunity to respond, was constitutionally adequate under *Loudermill* and *Powell*. **Doc. 45 at 16**. In *Powell*, the Tenth Circuit held that a brief conversation between a firefighter and his supervisor—where the firefighter received oral notice of the charges against him and admitted to them—was constitutionally adequate under *Loudermill*'s pretermination hearing requirement. 891

F.2d at 1459.   There, the firefighter had a post-termination hearing available in the form of arbitration proceedings that allowed for the call of witnesses and introduction of evidence.   *Id.* at 1459–60.   Here, as determined above, Plaintiff did not have a post-termination hearing.   Thus, Court rejects Defendant's assertion that Plaintiff's case is "nearly identical" to *Powell*.   *See* **Doc. 45 at 12**.   This was not a situation where a pretermination hearing was simply an initial check against a mistaken decision that would be fully adjudicated later.   Rather, this was a situation where the "hearing" was the *only* check against a mistaken decision. The holdings in *Loudermill* and *Powell* partially relied upon a subsequent, full post-termination hearing that would guard against mistaken decisions.   *See Powell*, 891 F.2d at 1459–60 (citing *Loudermill*, 470 U.S. at 546). Therefore, the Court finds that these cases are not analogous to Plaintiff's case, and Plaintiff should have received a formal pretermination hearing.

Even if Defendant was not required to provide Plaintiff with a formal pretermination hearing under the Constitution, the meeting between Defendant and Plaintiff was constitutionally inadequate.   Looking to the three-part balancing test articulated in *Mathews* and applied in *Loudermill*, the Court finds that Plaintiff should have been afforded more due process.

The first factor of the *Mathews* test considers the "private interest that will be affected by official action."   424 U.S. at 335.   Here, Plaintiff had a significant interest in retaining her employment as a WCJ and avoiding the "severity of depriving [her] of the means of livelihood." *Loudermill*, 470 U.S. at 543 ("While a fired worker may find employment elsewhere, doing so will take some time and is likely to be burdened by the questionable circumstances under which he left his previous job.").

The second factor of the *Mathews* test considers "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute

procedural safeguards." 424 U.S. at 335. Here, there was risk of erroneous deprivation as this was the only meeting between Plaintiff and Defendant, the ultimate decisionmaker under Section 52-5-2(C). And the probative value of additional procedural safeguards was high. Unlike in *Loudermill* and *Powell*, there was not a post-termination safeguard against a mistaken decision. As discussed above, Plaintiff could have built a defense against the charges if Defendant had provided more additional procedures. *See* **Doc. 50 at 10**. She could have used her accrued leave, reasons for her timesheet mistake, and disciplinary opinions on judicial misconduct to "invoke the discretion of the decisionmaker." *See Loudermill*, 470 U.S. at 543. And, unlike in *Powell*, further safeguards could have made a difference. Although Plaintiff admitted to not voting, she did not admit to the exact charges that she abused the leave policy, committed timesheet fraud, and violated the judicial code of conduct such that it would require immediate termination. *See* **Doc. 50 at 10**; *see also Powell*, 891 F.2d at 1459 (relying in part on plaintiff's choice to admit instead of rebut the charges against him). There were arguable issues at play, and Plaintiff's right to more procedures did not "depend on a demonstration of certain success." *See Loudermill*, 470 U.S. at 1494 (citing *Carey v. Piphus*, 435 U.S. 247, 266 (1978)).

And finally, the third factor of the *Mathews* test considers "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335. Here, the Court finds that WCA's interests do not outweigh the first two factors. Although more due process, like a formal hearing, would burden Defendant and require a delay in termination, the record does not demonstrate that the situation warranted Plaintiff's immediate termination during the November 13 meeting. Even if this was an emergency situation, which this situation was not, Defendant could have suspended Plaintiff instead of terminating her. *See Powell*, 891 F.2d at 1455. Finally,

the WCA has an interest in "avoiding disruption and erroneous decisions," and in a WCJ's continued work until the matter is settled.  *See Loudermill*, 470 U.S. at 1494.

Since the first two *Mathews* factors weigh heavily in favor of the need for more process, the Court finds that Defendant did not provide Plaintiff with adequate process under the Constitution.

Next, Plaintiff has met her burden of showing that her rights were violated because she was not given adequate notice prior to a hearing.  Due process requires that "one be given notice of the charges against him a reasonable time before the hearing is to take place."  *Miller v. City of Mission, Kan.*, 705 F.2d 368, 372 (10th Cir. 1983); *see also Mullane*, 339 U.S. at 314 ("An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.").  Importantly, adequate notice needs to inform an employee that her employment is in jeopardy. *Calhoun*, 982 F.2d at 1476.

Based on the undisputed facts, Plaintiff was not adequately notified prior to the November 13 meeting that her employment was in jeopardy. *See* **Doc. 50 at 10**; *see also West*, 967 F.2d at 368. Her five-year term had been renewed again due to her good performance. It was her third renewal for good performance.  *See* **Doc. 7-1 at 1** (February 2025 WCA Complaint). The record does not show any concerns about Plaintiff's judicial conduct.  Further, Defendant had not filed a complaint against her.  *See* 1.7.12.25 NMAC(C) (requiring hearing officer to serve copy of complaint to WCJ).  Based on the facts on the record, Plaintiff was unaware that she faced possible termination before Defendant's arrival in her office on November 13.

At the start and during the meeting, Defendant did not notify Plaintiff that the meeting could result in termination. *See Calhoun*, 982 F.2d at 1476.  No one disputes that, before handing the letter, Defendant asked Plaintiff about voting. Plaintiff responded that she had taken two hours of leave for the purpose of voting. Defendant asked a clarifying question about whether Plaintiff could prove she had voted, to which Plaintiff asked if video footage could provide proof.  At that point, Defendant indicated that Plaintiff would need to provide a voting record.

Once Plaintiff asked what would happen if she could not provide a voting record, Defendant informed Plaintiff that she would be terminated. *See id.*  Up until that point, Plaintiff would not have reasonably inferred that her employment was in jeopardy of termination. Defendant's line of questioning would notify Plaintiff that something was wrong with her timesheet, but not that she would be immediately terminated for her mistake.  And once Defendant notified Plaintiff that her employment was on the line, Defendant simultaneously indicated to Plaintiff that she could only retain her job if she had voted.  Because Plaintiff had not voted, Defendant handed her the signed letter immediately terminating Plaintiff.  Only then did Plaintiff read the full charge: that her actions had violated the judicial code of conduct.

As the only pretermination "hearing" afforded to Plaintiff, who did not have a post-termination available to her, the notice provided to Plaintiff was constitutionally inadequate.  Due to the lack of notice, Plaintiff was unable to prepare a defense to the charges against her.

Defendant points to the language in the voting leave policy and on the timesheet, as well as the email reminder about timesheets, as sufficient notice before Plaintiff's "hearing."  **Doc. 53 at 5–6**.  The Court disagrees.  Under the voting leave policy, registered voters "may absent themselves from work for two hours for the purpose of voting." **Doc. 7-1 at 5** (Interpretive Memo 2024-001).  As relevant here, the Memo's guidelines specify that "use of administrative leave for

voting may be audited.  Employees who abuse administrative leave for voting *may* be disciplined, *up to and including* dismissal." ***Id.* at 7** (emphasis added).  The Memo was emailed to WCA users, *see **id.* at 4**, and Plaintiff does not dispute receiving it.  The Memo would give a reasonable person notice that she may be disciplined for the failure to amend her timesheet if her conduct rose to abuse of the policy.  The Memo would also give a reasonable person notice that abuse of the policy could rise to conduct warranting termination. But nothing on the record shows that the Memo would have given a reasonable person, in Plaintiff's position, notice that her accidental failure to amend her timesheet would rise to conduct that would violate the judicial code, warranting immediate termination.

Similarly, the Court does not find that the timesheet-related email, which the parties do not dispute, provided sufficient notice that Plaintiff's employment was in jeopardy.  Sent on November 6, the email reminded employees to submit their timesheets and told employees to notify their supervisor if changes needed to be made as "soon as possible."  **Doc. 7-1 at 12**.  The notice does not specify that termination would result, regardless of the circumstances.  Further, the termination "hearing" took place on November 13, one week after Plaintiff submitted her timesheet.  Despite the notice within the email, a person could reasonably infer that she still had time to notify her supervisor and request to adjust her leave allocation.

Therefore, viewing the supported facts in favor of Plaintiff, the Court finds that she was not given adequate notice of the charges against her in violation of her right to procedural due process. Plaintiff has met her burden of showing that Defendant violated her rights for failure to provide notice before a hearing.

Based on the above discussion, Plaintiff has met the first prong of the qualified immunity analysis.[7]

### 2.    The right was clearly established at the time.

To prevail against a qualified immunity defense, Plaintiff must also show that her right to due process was clearly established at the time. A plaintiff may fulfill this requirement "by identifying an on-point Supreme Court or published Tenth Circuit decision" or demonstrating that "the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Cox*, 800 F.3d at 1247 (quoting *Quinn v. Young*, 780 F.3d 998, 1005 (10th Cir. 2015). "[E]xisting precedent must have placed the statutory or constitutional question beyond debate." *Ellis v. Salt Lake City Corp.*, 147 F.4th 1206, 1228 (10th Cir. 2025) (quoting *Ashcroft*, 563 U.S. at 741). "At bottom, there must be some "substantial correspondence between *the conduct in question* and prior law allegedly establishing that the defendant's actions were clearly prohibited." *Ellis*, 147 F.4th at 1229 (quoting *Est. of Reat v. Rodriguez*, 824 F.3d 960, 965 (10th Cir. 2016)).

---

[7] Additionally, Plaintiff argues that Defendant violated Plaintiff's right to an impartial tribune because Defendant was biased. However, the Court will not reach the issue of qualified immunity as to bias because the Court finds that there is a genuine issue of material fact. The record does not show that Defendant held any personal animus towards Plaintiff, and Defendant did not make a statement about the merits before the November 13. *See Riggins v. Goodman*, 572 F.3d 1101, 1113 (10th Cir. 2009) (citing *McClure v. Indep. Sch. Dist. No. 16,* 228 F.3d 1205, 1215–16 (10th Cir. 2000)). Plaintiff presents the pre-signed letter and Defendant's dismissal of Plaintiff's request to show video footage of the polling location. However, considering the presumption that Defendant possessed honest and integrity, a rational trier of fact could find that Plaintiff has not made the necessary "substantial showing of personal bias" when viewing the facts in Defendant's favor. *See Riggins*, 572 F.3d at 1112. Therefore, the Court is unable to find that Plaintiff is entitled to judgment as a matter of law on the issue of whether Defendant was an impartial tribunal. Nevertheless, since the Court will grant summary judgment as to Plaintiff's other arguments as to Defendant's liability on Count I, this issue is moot.

Here, Plaintiff has met the second prong of the qualified immunity test. First, Plaintiff has shown that a reasonable official should have known of Plaintiff's protected property interest. As Plaintiff points out, *Loudermill*, which found a protected property interest in state employment, was decided in 1985. *See* 470 U.S. at 538–39; *see also* **Doc. 50 at 6**. And as the Tenth Circuit stated in 1992, "This Circuit has made it clear that when a person's employment can be terminated only for specified reasons, his or her expectation of continued employment is sufficient to invoke the protections of the Fourteenth Amendment." *West*, 967 F.2d at 366. Additionally, the Tenth Circuit has long considered both state statute and administrative code to determine whether a plaintiff held a protected property interest. *See Hennigh*, 155 F. 3d at 1253 ("This court has held that if state statutes or regulations place substantive restrictions on a government actor's ability to make personnel decisions, then the employee has a protected property interest."). Based on clear binding precedent, a reasonable official in Defendant's position would have known that Plaintiff possessed a protected property interest in her employment.

Next, Plaintiff has shown that a reasonable official would have known that Plaintiff received an inadequate pretermination hearing. As the Tenth Circuit stated in 1992, "Since *Roth*, it has been clear that a property interest in continued employment may not be terminated without a constitutionally adequate hearing." *Calhoun*, 982 F. 2d at 1476 (citing *Bd. of Regents v. Roth*, 408 U.S. 564 (1972)). "Additionally, *Loudermill* established that some form of pretermination hearing, plus a full-blown adversarial post-termination hearing (unless such was included as part of the pretermination proceedings) are required." *Id.* (citing 470 U.S. 532, 105 (1985)).

Since then, the Tenth Circuit has repeated the rule that pretermination hearings are meant to *supplement*, not duplicate, the formal post-termination hearing. *See, e.g.*, *Koessel*, 717 F.3d at 749; *Powell*, 891 F.2d at 1458. To supplement a formal post-termination hearing, a reasonable

official would understand that an employee must have such a formal post-termination hearing available to her. Further, since *Loudermill* and the many of Tenth Circuit opinions following it, a reasonable official would know that the adequacy of any pretermination hearing would be evaluated in conjunction with the availability of a post-termination hearing. *See, e.g.*, *Langley*, 987 F.2d at 1480 ("Under *Loudermill*, the adequacy of pretermination procedures must be examined in light of available post-termination procedures.").

Here, a reasonable official in Defendant's position would have known that the November 13 "hearing" was not constitutionally adequate. She would know that she needed to provide more pretermination procedures or provide Plaintiff with a formal post-termination hearing. As discussed above, state law did not afford Plaintiff with a post-termination hearing available to other career public employees. Therefore, the minimal hearing requirements of *Loudermill* and *Powell* did not apply unless someone in Defendant's position afforded Plaintiff with a formal post-termination hearing through another avenue. Despite Defendant's awareness that Plaintiff was only able to secure a phone call with the governor's office, and despite decades of Tenth Circuit precedent, Defendant made no attempts to comply with *Loudermill* in the months following Plaintiff's termination. Until Plaintiff filed this claim, Defendant seemed satisfied with the adequacy of the process provided to Plaintiff.

Second, since *Calhoun*, a reasonable official would know that notice requires that an employee "be made aware that his employment is in jeopardy of termination." 982 F.2d at 1476. There, the Tenth Circuit held that an appellant was not given adequate notice when no one advised appellant that the meeting was "for the purpose of considering a termination decision." *Id.* Here, Plaintiff was similarly not given such notice. Further, a reasonable official would have known that the minimal notice requirements in *Loudermill*, *Powell*, and their progeny were only sufficient if

a full-blown post-termination hearing followed an employee's termination. Without a full-blown post-termination hearing available to an employee, a reasonable official would understand that an employee in Plaintiff's position must be given reasonable notice of the charges against her in advance of a hearing so she has adequate time to respond. *See Miller*, 705 F.2d at 372; *see also Mullane*, 339 U.S. at 314.

Considering *Calhoun*'s factual similarities—and *Loudermill* and *Powell*'s factual dissimilarities—the Court finds that Plaintiff has shown that a reasonable official would have known that the notice afforded to Plaintiff was constitutionally inadequate.

Based on the above, the Court finds that Plaintiff has satisfied both prongs of the qualified immunity test. Therefore, Defendant is not entitled to qualified immunity. Accordingly, Defendant's Motion is denied.

### B.    Plaintiff's Motion for summary judgment on Count I.

Turning to Plaintiff's cross-motion for summary judgment, the Court finds that Plaintiff has demonstrated the absence of a genuine issue of material fact; she is entitlement to judgment as a matter of law.

Regarding whether Plaintiff had a right to due process, Defendant raised a legal issue, rather than a factual issue, involving Plaintiff's protected property interest. Therefore, the Court proceeds to consider any genuine issue of material fact regarding the adequacy of process. Viewing the facts described above, Plaintiff has met her initial burden as it relates to the violation of her right to a pretermination hearing and notice. *See Collins*, 809 F.3d at 1137.

Shifting to the Defendant's burden, Court finds that the remaining factual disputes raised by Defendant do not amount to a genuine dispute over material facts—even when viewed in favor of Defendant. Because Plaintiff should have received a formal pretermination process, a rational

trier of fact would not find for Defendant because Plaintiff admitted to the lack of vote during to the November 13 meeting, Plaintiff did not ask further questions or attempt to make her case after being told that only a vote would prevent termination, and that the meeting lasted 15 to 20 minutes. **Doc 44 at 11–13; Doc. 44-1 ¶¶ 11, 13**. Even if pretermination process amounting to a formal hearing was not due to Plaintiff, no rational trier of fact would be persuaded by these factual issues.

And, as previewed in the qualified immunity analysis, the Court does not find that the voting leave policy and timesheet reminder would have provided Plaintiff sufficient notice to respond to the charges during the November 13 "hearing," even when viewing the facts in favor of Defendant. Because the meeting was the only hearing afforded to Plaintiff before and after her termination, no rational trier of fact would find for Defendant considering on the other supported, undisputed facts on the record.

Therefore, the Court finds that Plaintiff is entitled to a judgment as a matter of law on Count I. Since, as the Court will discuss in Part IV of the opinion, triable issues remain as to damages, Plaintiff's Motion for summary judgment on Count I is granted only as it relates to Defendant's liability.

## III.    Defendant's Motion for summary judgment as to Count II.

Next, the Court considers whether Plaintiff has established that Defendant violated her clearly established right to substantive due process. Here, the Court finds that Plaintiff has failed to prove that her employment was "fundamental." Alternatively, Plaintiff has failed to prove that Defendant violated her clearly established right.

To prevail on a substantive due process claim, a plaintiff's property interest must be "fundamental." *Hennigh*, 155 F.3d at 1257. Yet, the Tenth Circuit "has not determined whether public employment is a fundamental liberty interest protected by substantive due process."

*Koessel*, 717 F.3d at 749; *see also Roberts v. Winder*, 16 F.4th 1367, 1375 (10th Cir. 2021). Plaintiff has not asserted that she had a fundamental property interest in her employment. *See* **Doc. 50 at 13**. For this reason alone, Defendant is entitled to qualified immunity.

Assuming Plaintiff possessed a fundamental property interest, the Court concludes that Plaintiff has failed to meet both prongs of the qualified immunity standard. "Substantive due process requires only that termination of that interest not be arbitrary, capricious, or without a rational basis. The Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions." *Curtis v. Okla. City Pub. Sch. Bd. of Educ.*, 147 F.3d 1200, 1215 (10th Cir. 1998) (citation modified) (citing *Bishop v. Wood*, 426 U.S. 341, 350 (1976)). To prevail, a plaintiff must show "a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." *Camuglia*, 448 F.3d at 1222–23 (quoting *Uhlrig v. Harder*, 64 F.3d 567, 574 (10th Cir.1995)).

As the Court has previously indicated, *see* **Doc. 26 at 10**, Plaintiff has not demonstrated that Defendant acted in a manner that was wholly arbitrary or conscience-shocking. Even if her actions were ill-advised, Defendant did not act with a degree of outrageousness and a magnitude of potential or actual harm that was truly conscience shocking. Defendant's reasoning for firing Plaintiff was not arbitrary; a possible violation of the judicial code of conduct is a serious charge. While the decision to fire Plaintiff over two hours of mislabeled time seems overblown, it does not surmount the high standard of being completely arbitrary or conscience-shocking.

Further, the Court finds that decision to terminate Plaintiff is rationally related to the judicial code of conduct's interest in preventing actions that adversely reflect on a judge's honesty. See Rule 21-003(B), (K) NMRA. Plaintiff admits that she ultimately submitted a timesheet that did not accurately reflect her time worked. Her conduct reflected on her capacity for honest

behavior. Therefore, her termination was rationally related to the interest of preventing impropriety.

Finally, even assuming that Plaintiff's substantive due process right was violated, Plaintiff does not meet the second prong of the qualified immunity test. She fails to argue that the law was clearly established when Defendant violated her right to substantive due process. *See* **Doc. 50 at 13–14**.

Accordingly, the Court finds that Defendant is entitled to qualified immunity because Plaintiff has not proved that Defendant violated her clearly established right to substantive due process. Therefore, the Court grants Defendant's Motion for summary judgment on Count II.

## IV.    Cross-motions for summary judgment as to Count IV.

Finally, the Court addresses Plaintiff's request for a permanent injunction. Specifically, Plaintiff asks that the Court: (1) fully reinstate Plaintiff to her position as a WCJ; (2) order Defendant to comply with constitutional, statutory, and administrative requirements until the expiration of Plaintiff's five-year term; and (3) order Defendant to pay Plaintiff back pay for the period between her termination and reinstatement. **Doc. 36 at 13**. In Defendant's cross-motion for summary judgment, Defendant responds by arguing that Plaintiff's request for a permanent injunction is moot, and her request is partially barred by sovereign immunity. **Doc. 45 at 7**.

Turning first to the issue of sovereign immunity, the Court agrees with Defendant to the extent that the Eleventh Amendment bars Plaintiff's claim for back pay under Count IV. *See Meiners v. Univ. of Kan.*, 359 F.3d 1222 (10th Cir. 2004); *see also Edelman v. Jordan*, 415 U.S. 651, 665 (1974). The Eleventh Amendment also bars the Court from ordering that Defendant comply with procedures required by state law. *See Johns v. Stewart*, 57 F.3d 1544 (10th Cir. 1995) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 104–06 (1984)).

As to the Plaintiff's remaining requests, Defendant argues that Plaintiff's claim for prospective relief is moot because Plaintiff is now receiving the pretermination process requested. Defendant has filed a complaint with the Board, and pretermination hearing is scheduled. *See* **Doc. 53-2**. In reply, Plaintiff contends that harm is ongoing until she receives adequate due process. **Doc. 51 at 11**.

A plaintiff must have standing for both legal and equitable claims of relief. *Collins v. Davis*, 916 F.3d 1302 (10th Cir. 2019). "When prospective equitable relief is requested, the requesting party must show an ongoing, personal stake in the outcome of the controversy, a likelihood of substantial and immediate irreparable injury, and the inadequacy of remedies at law." *Rezaq v. Nalley*, 677 F.3d 1001, 1008 (10th Cir. 2012). Prospective relief cannot be based on "speculative future harm." *Collins*, 916 F.3d at 1314. And "an action becomes moot if an intervening circumstance deprives the plaintiff of a personal stake at any point." *Prison Legal News v. Fed. Bureau of Prisons*, 944 F.3d 868, 880 (10th Cir. 2019) (citation modified) (quoting *Knox v. Serv. Emps. Int'l Union, Loc. 1000*, 567 U.S. 298, 307–08 (2012)). A defendant has the "heavy" burden of demonstrating mootness. *Rezaq*, 677 F.3d at 1008.

But if long-term consequences of the alleged due process violation remain—and prospective relief may eradicate the ongoing harm—a plaintiff's claim for prospective relief is not moot. *Id.* at 1009 (case was not moot because decisions made to remediate effects of past policy did not "completely and irrevocably eradicate" its effects); *see also* 13C *Wright & Miller's Federal Practice & Procedure* § 3533.7 (3d ed. 2025). "A case is not moot when there is some possible remedy, even a partial remedy or one not requested by the plaintiff." *Rezaq*, 677 F.3d at 1010. Ultimately, the question is: will the prospective relief have "some effect in the real world"? *Id.* at 1008.

Here, the Court finds that prospective relief may have some real-world effect on Plaintiff. Although she has been reinstated as a WCJ per the Court's preliminary injunction (**Doc. 38-1**), it is this Court's understanding that Plaintiff has been placed on administrative leave until the completion of the Board's hearing. **Doc. 44-1 ¶ 21**. Since Plaintiff has been unable to act in her capacity as a WCJ since her November 2024 termination, she is still experiencing ongoing harm because of Defendant's unlawful conduct. Further, some prospective relief remains available. For example, the Court could determine that Plaintiff should be restored to pretermination status before her hearing. *See Rezaq*, 677 F.3d at 1009–10.

Based on the above discussion, the Court does not have jurisdiction over Plaintiff's request for backpay and compliance with administrative procedure. However, the case is not moot because there is ongoing harm and prospective relief is available. Since Plaintiff's claim for compensatory and punitive damages under Count I also remains, *see* **Doc. 1 ¶ 46; Doc. 19 at 19**, the Court finds that Plaintiff has not yet demonstrated that she has inadequate remedy at law. Until the issue of damages is resolved, a permanent injunction is inappropriate.

Accordingly, Plaintiff's and Defendant's cross-motions for summary judgment as to Count IV are denied at this time.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for summary judgment (**Doc. 36**) is hereby **GRANTED in part and DENIED in part** for reasons described in this Memorandum Opinion and Order.

**IT IS FURTHER ORDERED** that Defendant's Motion for summary judgment (**Doc. 45**) is **GRANTED in part** and **DENIED in part**. Count II of Plaintiff's Complaint is dismissed with prejudice.

_____/S/_____
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE